John J. Edmonds (State Bar No. 274200)
    jedmonds@ip-lit.com
COLLINS EDMONDS
**COLLINS, EDMONDS & SCHLATHER, PLLC**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 973-7846
Facsimile: (213) 835-6996

Attorneys for Plaintiff,
CELLSPIN SOFT INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| | Case No. 4:17-cv-05928-YGR |
| CELLSPIN SOFT, INC., | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 31)** |
| Plaintiff, | |
| v. | |
| FITBIT, INC., | Oral Hearing: March 6, 2018, 2:00 p.m. |
| Defendant. | Courtroom: 1, 4th Floor |
| | Judge: Honorable Yvonne G. Rogers |
| | Case No. 4:17-cv-05929-YGR |
| | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 21)** |
| v. | |
| MOOV, INC., | |
| Defendant. | Oral Hearing: March 6, 2018, 2:00 p.m. |
| | Courtroom: 1, 4th Floor |
| | Judge: Honorable Yvonne G. Rogers |

| | |
|---|---|
| v.<br><br>FOSSIL GROUP, INC. ET AL.,<br><br>        Defendants. | Case No. 4:17-cv-05933-YGR<br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 41)**<br><br>Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>NIKE, INC.,<br><br>        Defendant. | Case No. 4:17-cv-05931-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 28)**<br><br>Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>CANON U.S.A., INC.,<br><br>        Defendant. | Case No. 4:17-cv-05938-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 30)**<br><br>Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>GOPRO, INC.,<br><br>        Defendant. | Case No. 4:17-cv-05939-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 31)** |

| | Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |
|---|---|
| v.<br><br>PANASONIC CORPORATION OF NORTH AMERICA,<br><br>        Defendant. | Case No. 4:17-cv-05941-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 34)**<br><br>Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>JK IMAGING, LTD.,<br><br>        Defendant. | Case No. 4:17-cv-06881-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. 24)**<br><br>Oral Hearing: March 6, 2018, 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Honorable Yvonne G. Rogers |

Plaintiff, Cellspin Soft, Inc. ("Cellspin"), hereby respectfully files this Response to the Omnibus § 101 Motion[1] asserting the patents-in-suit (U.S. Patent Nos. 8,738,794 (the "'794 patent"), 8,892,752 (the "'752 patent"), 9,749,847 (the "'847 patent"), and 9,258,698 (the "'698 patent")) are invalid under 35 U.S.C. § 101. This Response is based on the attached Memorandum of Points and Authorities, the Court's record in this action, including Cellspin's Complaint, as amended, the patents-in-suit, their prosecution histories, all matters of which the Court may take notice, and any other evidence and oral arguments presented at the hearing of the Motion or requested by the Court. Accordingly, Cellspin hereby respectfully requests this Court enter Orders denying Defendants' Omnibus § 101 Motion.

---

[1] The Motion was filed in each respective case as follows: Doc. 31, 4:17-cv-05928 ("*Fitbit* Case"); Doc. 21, 4:17-cv-05929; Doc. 28, 4:17-cv-05931; Doc. 41, 4:17-cv-05933; Doc. 30, 4:17-cv-05938; Doc. 31, 4:17-cv-05939; Doc. 34, 4:17-cv-05941; and Doc. 24, 4:17-cv-06881. Due to their size, the Exhibits to this motion are being filed in the *Fitbit* Case only.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM]

P a g e  **iv** | **ix**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ vii

    Cases ........................................................................................................................ vii

    Statutes ..................................................................................................................... ix

    Rules ......................................................................................................................... ix

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ............................................................................................ 1

II.    LEGAL STANDARDS ..................................................................................... 3

    A.    Patent Eligibility Under Section 101 .............................................. 3

        1.    Step One: Whether Claims Are "Directed to" a Patent-Ineligible Concept ................................................................. 4

        2.    Step Two: Whether the Claims Contain an "Inventive Concept" ........ 5

    B.    Motions Under Rule 12(b)(6) .......................................................... 5

III.   FACTUAL BACKGROUND ............................................................................ 6

    A.    The State of the Art and Problems Sought to be Solved by the Relevant Claimed Inventions .......................................................... 7

    B.    The Solutions Devised by the Relevant Claimed Inventions (i.e. What the Asserted Claims are Directed to) .................................... 11

    C.    The Claimed Inventions have multiple inventive aspects. ............. 12

IV.   ARGUMENT .................................................................................................... 16

    A.    The Claims At Issue Are Directed To Patent-Eligible Subject Matter ......... 16

    B.    The Asserted Claims Are Patent-Eligible Under Both Steps Of The Alice/Mayo Inquiry ................................................................. 17

        1.    Step One: The Asserted Claims Are Not Directed to an Abstract Idea ..................................................................... 17

        2.    Step Two: The Asserted Claims Contain an Inventive Concept ........ 19

C.  Defendants' Analysis Is Legally And Factually Erroneous..........................20

D.  CellSpin's Claims Pass Muster Under Section 101 .....................................24

V.  CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

*Cases*

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ....................................................................... 6

*Affinity Labs of Texas, LLC v. DIRECTTV, LLC*,
  137 S. Ct. 1596 (2017) ................................................................................... 22

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016), *cert. denied sub nom. Affinity Labs of Texas,*
  *LLC v. DIRECTTV, LLC*, 137 S. Ct. 1596 (2017) ........................................ 22

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .................................................... 2, 3, 4, 5, 17, 19, 21, 23, 24

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 12881 (Fed. Cir. 2016) ................................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 6

*Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 5, 6, 19

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ..................................................................... 23

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
  No. 15-CV-02177-SI, 2016 WL 283478 (N.D. Cal. Jan. 25, 2016) ................ 6

*Confident Techs., Inc. v. AXS Grp. LLC*,
  2018 WL 539166 (S.D. Cal. Jan. 23, 2018) ................................................... 19

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc. et al.*, Nos. 2016-2684,
  Doc. 64, 2017-1922, Doc. 7 (Fed. Cir. Jan. 25, 2018) ................................. 25

*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) ......................................................................... 6

*DDR Holdings, LLC v. Hotels.com L.P.*,

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM]

P a g e **vii** | ix

773 F.3d 1245 (Fed. Cir. 2014) ...........................................5, 16, 19, 20, 24

*EasyWeb Innovations, LLC v. Twitter, Inc.*,

689 F. App'x 969 (Fed. Cir. 2017) ...................................................21

*Elec. Power Grp., LLC v. Alstom S.A.*,

830 F.3d 1350 (Fed. Cir. 2016) ....................................................5, 18, 20

*Enfish, LLC v. Microsoft Corp.*,

822 F.3d 1327 (Fed. Cir. 2016) .............................................4, 16, 17, 18

*FairWarning IP, LLC v. Iatric Sys., Inc.*,

839 F.3d 1089 (Fed. Cir. 2016) ......................................................21

*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 2016-2520, 2018 WL 341882, at *3 (Fed.

Cir. Jan. 10, 2018)...............................................................5

*Fitbit, Inc. v. AliphCom*,

233 F. Supp. 3d 799 (N.D. Cal. 2017) ...............................................24

*Fleming v. Pickard*,

581 F.3d 922 (9th Cir. 2009) ........................................................6

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,

850 F.3d 1332 (Fed. Cir. 2017) ......................................................21

*Intellectual Ventures I LLC v. Symantec Corp.*,

838 F.3d 1307 (Fed. Cir. 2016) ......................................................23

*Mace v. Ocwen Loan Servicing, LLC*,

No. 16-CV-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018)..........................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

132 S. Ct. 1289 (2012).............................................2, 3, 4, 17, 19, 21, 24

*McRO v. Bandai*, 837 F.3d 1299 (Fed. Cir. 2016).........................................18, 19

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

521 F.3d 1097 (9th Cir. 2008) .......................................................6

*MySpace, Inc. v. GraphOn Corp.*,

672 F.3d 1250 (Fed. Cir. 2012) ......................................................23

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM]

*Procter & Gamble Co. v. QuantifiCare Inc.*, No. 17-CV-03061-LHK, 2017 WL
   6497629, at *25 (N.D. Cal. Dec. 19, 2017) ...................................................... 6

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016) ........................................................4, 19, 20

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ...................................................................... 21

*Smart Sys. Innovations, LLC v. Chicago Transit Authority*,
   873 F.3d 1364 (Fed. Cir. 2017) .............................................................21, 24

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
   226 F. Supp. 3d 1000 (N.D. Cal. 2016)......................................................... 24

*Trading Techs. Int'l, Inc. v. CQG, INC.*,
   675 F. App'x 1001 (Fed. Cir. 2017) .............................................................. 21

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .................................................................... 21

*UFRF, Inc. v. General Electric Co.*,
   No. 1:17-cv-171, 2017 WL 5502940 (N.D. Fla. Nov. 16, 2017) ................................ 22

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ........................................................................ 3

*W. View Research, LLC v. Audi AG*,
   685 F. App'x 923 (Fed.Cir. 2017) ................................................................ 21

**Statutes**

35 U.S.C. § 101 ............................................................................1, 2, 17

**Rules**

Fed. R. Civ. P. 12 ...........................................................................4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Each Cellspin Complaint for patent infringement challenged by the Motion(s) contains enough facts to state a claim that is plausible on its face. Defendants have not met their high burden, especially at the pleadings stage, of overcoming the presumption of validity and proving by clear and convincing evidence that claims 1-4, 7, 9 and 16-18, 20-21 from U.S. Patent No. 8,738,794 ("the '794 patent); claims 1, 2, 4, 5, and 12-14 from U.S. Patent No. 8,892,752 ("the '752 patent), claims 1-3 from U.S. Patent No. 9,749,847 (the '847 patent), and claims 1, 3-5, 7-8, 10-13, and 15-20 from U.S. Patent No. 9,258,698 ("the '698 patent) (collectively the "Asserted Claims" of the "Patents-in-Suit")[2] are directed to an ineligible abstract idea.[3] Likewise, Defendants have not met their high burden at the pleadings stage of overcoming the presumption of validity and proving by clear and convincing evidence, with mere unsworn argument, that the limitations of the Asserted Claims are somehow routine, well-understood, conventional, generic, pre-existing, commonly used, well known, previously known, typical, and the like, including when viewed by one of ordinary skill in the art as of the December 28, 2007 priority date for all four patents.

Defendants ignore important claim limitations, and they ignore the claims as a whole, including as an ordered combination when erroneously alleging that the claims are directed toward an abstract idea of "acquiring and transferring data for publication." Defendants cannot credibly argue there is an analogous practice as the claimed invention that existed prior to computers or electronic data capture devices.

Cellspin invented specific methods and systems whereby data capture devices communicate via short-range wireless communications, including in via Bluetooth[4] or Wi-Fi,

---

[2] True and correct copies of the Patents-in-Suit are at Exhs. 2-5 of this Response.
[3] To the extent that loose language in Defendants' Motion is interpreted as challenging non-asserted claims of the Patents-in-Suit, this Court lacks subject matter jurisdiction to invalidate non-asserted claims, and Defendants have likewise not met their high burden for invalidating these claims, especially without any meaningful argument or analysis relative to non-asserted claims, and further at least for the reasons noted herein for validity of the Asserted Claims.
[4] The '698 patent claims do not require a short-range wireless connection to be Bluetooth.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

P a g e  1 | 26

Case No.: 4:17-cv-05928-YGR

with a mobile device with an internet connection, that further publish, including in some instances via HTTP,[5] the captured data to web services. At the time of the invention of the asserted patents, publishing captured data from a data capture device to a web service was cumbersome and inefficient. Cellspin's patents address these and other issues, claiming concrete technological improvements, including in ways devices pair and wirelessly communicate. Cellspin's innovative systems and processes use less power and allow for multiple efficiencies resulting in a better user experience and reduced costs. Cellspin's patents improved technology, including for publishing directly to a web service from a capture device.

Defendants ignore technologically inventive aspects, and the actual claim limitations, of Cellspin's patents. Defendants mischaracterize the specification's discussion of the technological background while omitting discussion of the technologically systems and methods described in the specification. Further, instead of addressing all of the independent claims at issue, or even a single claim for some patents, Defendants assert a single claim, Claim 1 of the '794 patent, as allegedly representative of all Asserted Claims of all four the Patents-in-Suit. Defendants lack any support for their assertions here, and, given the limited record at this stage of the proceedings and the material disputes of fact underlying both steps of the *Mayo* analysis, Defendants cannot clearly establish entitlement to judgment as a matter of law.

Even if the Court deems the claimed invention set forth in each respective Asserted Claim to be too abstract (which they are not), there is undeniably an inventive concept in each that appropriately limits the claims.

Defendant's Motion should also be denied because the Asserted Claims are not unduly or improperly preemptive, including of any alleged ends or abstract ideas.

In short, including when viewed properly as a whole, the claims are not abstract; they constitute a concrete application of improved computer and network technology; and they have novel, meaningful, and significant limitations which preclude any finding of unpatentability.

Furthermore, and in the alternative, if the Court deems that a § 101 challenge is appropriate in this case, genuine issues of material fact exist—such as, for example, whether

---

[5] The '794 patent claims do not require the Internet publishing to be via HTTP.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

the claimed invention was "well known," "routine," or "conventional" over ten years ago; and whether the claims preempt any abstract ideas—that preclude granting a Rule 12(b) Motion especially at this early stage. At a minimum, a decision on a motion to dismiss on the pleadings is inappropriate when there are factual disputes to be resolved, including regarding whether the Asserted Claims have meaningful limitations and/or inventive concepts based upon the state of the art over a decade ago, and including whether the claimed limitations are routine, well-understood, conventional, generic, existing, commonly used, well known, previously known, typical, and the like over a decade ago.

## II.   LEGAL STANDARDS

### A.   *Patent Eligibility Under Section 101*

A patent may be obtained for "any new and useful improvement unless the claims are directed to patent are directed to "[l]aws of nature, natural phenomena, and abstract ideas." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). The concern driving these exceptions is one of pre-emption, or preventing "a monopoly over an abstract idea." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

The Supreme Court has cautioned, however, to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (*citing Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293-94 (2012)). Indeed, an invention "is not rendered ineligible for patent simply because it involves an abstract concept" because, "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (internal quotations omitted). Thus, courts must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Id.* Cellspin's patents describe and claim the latter; they integrate technological building blocks into something more – something patent-eligible.

Courts apply a two-step analysis laid out in *Mayo* and reaffirmed in *Alice* to determine whether patent claims are directed to ineligible subject matter. Under step one, the court must "determine whether the claims at issue are *directed to* a patent-ineligible abstract idea. *Alice*,

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

P a g e **3** | **26**

Case No.: 4:17-cv-05928-YGR

134 S. Ct. at 2355[6]. If the answer is "no," then the inquiry ends, and the claims are patent-eligible. *Id.* If the answer is "yes," then the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application,' or, in other words, whether the claims contain an "'inventive concept.'" *Id.*

## 1. Step One: Whether Claims Are "Directed to" a Patent-Ineligible Concept

The Federal Circuit has recently reiterated that the step one "directed to" inquiry is a "meaningful" one, focusing not on "whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon," but, rather, on whether the "character [of the claims] as a whole is *directed to* excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotations omitted). "It is not enough merely to *identify* a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048 (Fed. Cir. 2016). The Federal Circuit has further cautioned, in considering step one, to not "describ[e] the claims at such a high level of abstraction and untethered from the language of the claims [because doing so] all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Where computer technology is involved, it is "relevant to ask whether the claims are directed to an *improvement* to computer functionality versus being directed to an abstract idea." *Id.* at 1335. Accordingly, where "the focus of the claims is on the specific asserted *improvement* in computer capabilities," rather than "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," the claims will pass *Mayo* step one and be held patent-eligible. *Id.* at 1335-36. The Federal Circuit has similarly found that a claim that provides a "new and improved technique" that produces "tangible and useful result[s]" falls "squarely outside of those categories of inventions that are 'directed to' patent-ineligible concepts," and thus are patent-eligible at step one. *CellzDirect*, 827 F.3d at 1048; *see also*

---

[6] Unless otherwise noted, all emphasis within a quotation herein has been added.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that claims that focus "on a specific improvement…in how computers could carry out one of their basic functions" are patent-eligible);*Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 2016-2520, 2018 WL 341882, at *3 (Fed. Cir. Jan. 10, 2018) (same).

### 2. Step Two: Whether the Claims Contain an "Inventive Concept"

If, and only if, a court determines that the claims *as a whole* are "directed to" an abstract idea, then the court proceeds to step two, which is a "search for an 'inventive concept.'" *Alice*, 134 S. Ct. at 2355. Under step two, the court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. In other words, the court must determine whether the *entirety* of the *claim* amounts to a "patent upon the [ineligible concept] itself," or whether the claim covers a "patent-eligible application" of the ineligible concept. *Id*. The Federal Circuit has clarified, however, that "[t]he inventive concept inquiry requires more than recognizing that each element, by itself, was known in the art." *Bascom Global Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Indeed, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id*.

With respect to computer technology, an inventive concept will exist in claims that "recite a specific, discrete implementation of [an] abstract idea," where the "particular arrangement of elements is a technical improvement over prior art [methods]." *Id*. at 1351. In other words, claims directed to "a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way)…that overcome[] existing problems [in the art]" are patent-eligible under step two. *Id*. at 1350-1351; *see also DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1257, 1259 (Fed. Cir. 2014) (holding that claims "amount[ing] to an inventive concept for resolving [a] particular Internet-centric problem" were patent-eligible).

### B. Motions Under Rule 12(b)(6)

Defendants' Omnibus Motion is brought under Rule 12(b)(6). "Dismissal under Rule

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint 'need not contain detailed factual allegations' to survive a Rule 12(b)(6) motion, 'it must plead enough facts to state a claim to relief that is plausible on its face.'" *Mace v. Ocwen Loan Servicing, LLC*, No. 16-CV-05840-MEJ, 2018 WL 368601, *2 (N.D. Cal. Jan. 11, 2018) (*quoting Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted)). "A claim is facially plausible when it 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). Here, the court must accept "all factual allegations in the complaint as true and construe them in light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *see also Procter & Gamble Co. v. QuantifiCare Inc.*, No. 17-CV-03061-LHK, 2017 WL 6497629, at *25 (N.D. Cal. Dec. 19, 2017)(finding an "obligation to construe the pleadings in the light most favorable to Plaintiffs" when a claim presents an "extremely close call"). Because "issued patents are presumed to be valid[,]…an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2016 WL 283478, *2 (N.D. Cal. Jan. 25, 2016). Although patent-eligibility under § 101 is decided as a matter of law, "[t]his legal conclusion may contain underlying factual issues." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). Thus, given the "limited record" at this stage of the proceedings, early dismissal is premature, especially where the factual record lacks certainty. *See Bascom*, 2016 WL 3514158 at *6.

## III.     FACTUAL BACKGROUND

The parties agree that each of the four Asserted Patents shares the same title ("Automatic multimedia upload for publishing data and multimedia content") and the same specification. The claims of each Patent-in-Suit, which are the touchstone of Section 101 patentability, have significant differences, including as noted herein, which Defendants' Motion attempts to gloss

P a g e  **6** | 26

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

over with their alleged single "representative" claim. The Asserted Patents have examples of real-world embodiments, including as noted at p. 5 of Defendants' Motion.

### A.      The State of the Art and Problems Sought to be Solved by the Relevant Claimed Inventions

At the time of the Patents-In-Suits' priority date (December 2007), the same year the world's first prominent mobile "smartphone" was released, and 6 months before the world's first prominent mobile "app store,"[7] it was a cumbersome and time consuming process to use a data capture device to acquire data, send that data to a mobile device, and the mobile device upload wirelessly received that data to a website, especially for large data such as pictures or video data.

The most common and practical way to transfer large data was to physically plug a data capture device into, or transfer a memory card from a data capture device to, a computer, upload the data on the capture device or memory card to the computer, and further upload the data from the computer to a web service. *See* '794 at 1:37-54. In the case of using a 2007 mobile phone, the software on both the data capture device and mobile phone that established a paired connection and potentially transferred large data was extremely under developed and not the intended or foreseeable use of the mobile phone. Further, HTTP transfers of data received over the paired wireless connection to web services was non-existent. Mobile phones of that time exclusively used SMS[8], MMS[9], or email-based communication methods[10] to transfer data that was acquired by the mobile phone. It was not until 2009 or later when the leading tech companies, such as Facebook and Google, started releasing HTTP APIs for developers to utilize a HTTP transfer protocol for mobile devices.[11] Even in 2009 when

---

[7] *See* History of the iPhone on Wikipedia at https://en.wikipedia.org/wiki/History_of_iPhone & App Store (iOS) on Wikipedia at https://en.wikipedia.org/wiki/App_Store_(iOS)

[8] Short Message Service (SMS) is a text messaging service component of most telephone, World Wide Web, and mobile device systems. It uses standardized communication protocols to enable mobile devices to exchange short text messages. *See* https://en.wikipedia.org/wiki/SMS

[9] Multimedia Messaging Service (MMS) is a standard way to send messages that include multimedia content to and from a mobile phone over a cellular network. *See* https://en.wikipedia.org/wiki/Multimedia_Messaging_Service

[10] Such as POP3 or IMAP. *See* https://en.wikipedia.org/wiki/Email#Types

[11] *See* https://developers.facebook.com/docs/graph-api/changelog/archive; http://mashable.com/2009/05/19/twitter-share-images/#K9kEHwxammq0

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

Facebook and Google HTTP APIs were released, the released HTTP APIs were only used for data that was acquired by the mobile phone, and *not* for the data that was received wirelessly over the secure paired connection from a physically separate data capture device. Applying HTTP to a data in transit and on intermediary mobile device was not developed.

Defendants erroneously allege that the Asserted Claims are directed to "acquiring and transferring data for publication." Doc 31, passim. Including as of the priority date for the Patents-in-Suit, there have been many, albeit inferior, means outside of the claimed invention for achieving the ends of acquiring and transferring data for publication, including on the Internet. For example, as noted in the specification,

> Typically, the user would capture an image using a digital camera or a video camera, store the image on a memory device of the digital camera, and transfer the image to a computing device such as a personal computer (PC). In order to transfer the image to the PC, the user would transfer the image off-line to the PC, use a cable such as a universal serial bus (USB) or a memory stick and plug the cable into the PC. The user would then manually upload the image onto a website which takes time and may be inconvenient for the user.

'794/1:38-47. Another inferior method would be to have the capture device simply forward data to a mobile device as captured. This example is inferior including because, without a paired connection, there is no assurance that the mobile device is capable (*e.g.*, on and sufficiently near) of receiving the data. Such constant and inefficient broadcasting would quickly drain the battery of the capture device. Another inferior method for posting data from a capture device onto the Internet is to have a capture device with built in mobile wireless Internet, for example cellular, capability.[12] This example is inferior including because, especially at the time of the patent priority date in 2007 but also today, it makes the combined apparatus bulky, expensive in terms of hardware, and expensive in terms of requiring a user to purchase cellular service.

Inferior methods for posting data from a data capture device onto the Internet, including automatically and including via an intermediate device, were overcome during prosecution of the Patents-in-Suit and related patents. The most relevant state of the art at the time of the

---

[12] As is clear from all relevant claims and the specification, in the claimed invention, "[t]he digital data capture device is physically separated from the BT enabled mobile device." '794/2:2-3.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

invention is published U.S. Patent Application No. 2003/015,796 to Kennedy (Exh. 6), which the Applicant had originally cited to the Patent Office. The Kennedy '797 application was a primary section 103(a) (*i.e.*, obviousness) prior art reference cited by the Patent Examiner during prosecution of application nos. 12/333,303; 13/740,214; 13/922,219; 13/922,227; 14/109,972; 14/172,913; 14/295,352 (which issued as the '752 patent); 14/295,353; 14/503,401; and 14/533,104.[13] Kennedy is lacking much of the benefits and inventiveness of the claimed inventions of the Asserted Claims. Among other things, Kennedy does not disclose acquiring "new media" after establishing a short-range (e.g., Bluetooth) paired wireless connection. In fact, the word "pairing" is NOT disclosed in Kennedy. *See* Exh. 6. In Kennedy, the images are acquired first and stored in the memory of the digital capture device. When the accumulated data size of all the captured pictures taken by the camera *reaches a memory threshold* set by the user, the camera connects with the mobile device, sends the data that has already been acquired in the memory, and then disconnects the connection to the mobile device. *Id.,* para. [0021] and [0032]. Thus, Kennedy follows the following sequence to transfer data: (a) camera detects the memory to be full or nearly full, (b) initiates a connection to the cell phone, and (c) transfers data and then disconnects. *See, id.*

In Kennedy's "real time" mode, the camera transfers its data to a homebased server as soon as the data is acquired and as quickly as the wireless connection allows. *Id.* at para. [0010] and [0031]. In this "real-time" mode, the camera does not check if a paired connection is pre-

---

[13]The non-provisional closed applications in the chain of priority for the Patents-in-Suit are as follows: 12/333,303 (which issued as U.S. Patent No. 8,392,591); 13/740,214 (which issued as U.S. Patent No. 8,700,790; 13/922,219 (which issued as U.S. Patent No. ); 13/922,227 (which issued as the '794 patent); 14/109,972 (which issued as U.S. Patent No. 8,756,336); 14/172,913 (which issued as U.S. Patent No. 8,798,539); 14/273,546 (which issued as U.S. Patent No. 8,862,757); 14/295,352 (which issued as the '752 patent); 14/295,353 (which issued as U.S. Patent No. 8,904,030); 14/297616 (which issued as U.S. Patent No. 8,898,260); 14/503,401; 14/533,104 (which issued as the '698 patent); and 14/576,202 (which issued as the '847 patent). During prosecution of Application nos. 14/109,972, 14/273,546, and 14/297,616, the Examiner, who had already examined prior related applications, did not assert any additional allegedly invalidating prior art beyond the patentee's prior patents, which were overcome with a perfunctory "terminal disclaimer" of patent term. Application No. 14/503,401, which in part related to uploading data segments along with the segment identifiers and the user information, also involved an unrelated Bouet patent as a primary prior art reference for certain rejections. Relevant excerpts from the relevant applications involving prior art rejections based upon the Kennedy reference are at Exh. 7-15, respectively.

P a g e **9** | **26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

established with the mobile device. Rather, when the non-paired Bluetooth connection is unavailable, to make sure the pictures are sent "as quickly as the wireless connections allow", the camera has to save the pictures in its local memory until the non-paired connection between the mobile and data capture device is established and then send the pictures when "the wireless connection allows". *Id.* at para. [0031]. Kennedy also discloses a "manual mode," wherein an upload from the camera is initiated manually by the user from the camera and not from the mobile device. *Id.* at para. [0010] and [0033]. Kennedy also discloses a "hybrid mode" of data transfer. *Id.* at para. [0010] and [0034]. However, in this mode, the media transfer is not initiated by the mobile device and is performed by the camera device.

During prosecution of the '227 and '913 applications, the Patentee distinguished the non-paired connection of Kennedy and its "conventional wisdom," including as follows:

> …Conventional wisdom was to not have a constant BT connection between devices. On the contrary, conventional wisdom was to initiate the connection when required, use the connection and then terminate the connection to conserve battery charge on the devices…. However, applicant in his initial disclosure in 2007 took the opposing view i.e. to have the BT pairing connection between devices as a pre-requisite before the data is acquired by the data capture device, and maintain the BT paired connection on a continuous basis for the application. Furthermore, applicant in his disclosure decided not to disconnect the BT paired connection after the transfer of data…

Application no 13/922,227 at Exh. 10, p. 18; Application no 14/172,913 at Exh. 12, p. 12.

Back at the time of invention, capture devices such as cameras had only rudimentary wireless capabilities as exemplified by the Kennedy and ancillary prior art addressed extensively during prosecution of certain Patents-in-Suit and related patents. Although Kennedy disclosed methods for posting data from a capture device onto the Internet, including automatically and including via an intermediate device, the Kennedy reference was overcome over and over during prosecution of the Patents-in-Suit and related patents. Reasons the Kennedy reference was overcome include that the Asserted Claims do not claim all means for acquiring, transferring and publishing data, nor do they claim all means for posting data from a capture device onto the Internet, including automatically and/or via an intermediate device.

The inventors of the Patents-in-Suit wanted to post onto the Internet content captured

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

while a capture device, such a camera, was capturing data, for example photographs, in "real time" situations, for example, when the capture device was in remote areas, adverse conditions or on the move. As noted in the specification, "[a] user may need to capture and publish data and multimedia content on the Internet in real time." '794/1:37-38.[14] As further noted in the specification, "there is a need for a method and system to utilize a digital data capture device in conjunction with a mobile device for automatically detecting capture of data and multimedia content, transferring the captured data and multimedia content to the mobile device, and publishing the data and multimedia content on one or more websites automatically or with minimal user intervention." '794/1:48-54. But existing technology offered only unacceptably inferior solutions of posting to the Internet content captured from a capture device in "real time" situations.

**B.      *The Solutions Devised by the Relevant Claimed Inventions (i.e. What the Asserted Claims are Directed to)***

The Asserted Claims are directed to specific improvements in computer and networking functionality and capabilities. Among other things, the claimed inventions improve functionality of data capture devices and methods, systems and networks comprising those devices. Rather than being directed to abstract ideas, the Asserted Claims are directed to concrete applications of inventive concepts.

Independent asserted claim 1 of the '794 patent is directed to, inter alia, an improved method of hardware, software, network architecture and networked communications comprising transferring newly captured data from an Internet incapable data capture device to an Internet server via a separate intermediary Internet capable mobile device *by pushing event notifications* within an already paired Bluetooth connection between the data capture device and the mobile device.

Independent asserted claim 16 of the '794 patent is directed to, inter alia, an improved method of hardware, software, network architecture and networked communications comprising transferring newly captured data from an Internet incapable data capture device to

---

[14] "'794/1:48-54" refers to Column 1, lines 48-54 of the '794 Patent. For ease of reference, both sides' citations to the Asserted Patent specifications are the specification of the '794 Patent.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

an Internet server via a separate Internet capable mobile device *by polling* the data capture device for newly captured data within an already paired and Bluetooth connection between the data capture device and the mobile device.

Independent asserted claim 1 of the '752 patent is directed to, inter alia, an improved method of hardware, software, network architecture and networked communications comprising transferring newly captured data from an Internet incapable data capture device to an Internet server via a separate intermediary Internet capable mobile device *by pushing event notifications* within an already paired and encrypted Bluetooth connection between the data capture device and the mobile device.

Independent asserted claim 1 of the '847 patent is directed to, inter alia, an improved computer system and network architecture comprising an encrypted paired Bluetooth connection between an Internet incapable data capture device and a separate Internet, (i.e., HTTP) capable mobile device wherein *event notifications* are pushed within an already paired and encrypted Bluetooth connection between the data capture device and the mobile device.

Independent asserted claim 5 of the '698 patent is directed to, inter alia, an improved computer system and network architecture comprising an encrypted paired short-range wireless connection between an Internet incapable digital camera device and a separate Internet, (*i.e.*, HTTP) capable cellular phone wherein acquired new media is transferred to the cellular phone in response to a *request initiated by the software application on the cellular phone* over an already paired and encrypted short-range wireless connection between the digital camera device and the cellular phone. Independent asserted claim 1 of the '698 patent is directed to, inter alia, an improved method of network architecture and communications implemented by the system of claim 5.

## C.   *The Claimed Inventions have multiple inventive aspects.*

The Asserted Claims have multiple inventive and meaningful aspects. Without limitation, independent claims 1 and 16 of the '794 patent has meaningful and inventive aspects comprising transferring newly captured data from an Internet incapable data capture device to an Internet server via a separate intermediary Internet capable mobile device by

P a g e  **12 | 26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

pushing event notifications (claim 1), or via polling (claim 16) within an already paired Bluetooth connection. Including as noted herein, this use, including combined use, of an intermediate mobile device, event notifications, polling, and pre-existing paired Bluetooth connection are inventive and meaningful, and have substantial benefits. Also, without limitation, independent claim 1 of the '752 patent has meaningful and inventive aspects comprising transferring newly captured data from an Internet incapable data capture device to an Internet server via a separate intermediary Internet capable mobile device by pushing event notifications within an already paired encrypted Bluetooth connection. Including as noted herein, this use, including combined use, of an intermediate mobile device, event notifications, encryption, and pre-existing paired Bluetooth connection are inventive and meaningful, and they have substantial benefits. Further without limitation, independent claim 1 of the '847 patent has meaningful and inventive aspects comprising an encrypted paired Bluetooth connection between an Internet incapable data capture device and a separate Internet, (i.e., HTTP) capable mobile device wherein event notifications are pushed within an already paired and encrypted Bluetooth connection. Including as noted herein, this use, including combined use, of an intermediate mobile device, event notifications, encryption, and pre-existing paired Bluetooth connection are inventive and meaningful, and they have substantial benefits. Further without limitation, independent claim 5 of the '698 patent is has meaningful and inventive aspects comprising an encrypted paired short-range wireless connection between an Internet incapable digital camera device and a separate Internet, (*i.e.*, HTTP) [15] capable cellular phone

---

[15] During prosecution of the '698 patent, the Applicant successfully distinguished the prior art combination of Kennedy and U.S. Published Application No. 20050273592 to Prior. See Prosecution history at Exh. 16 and Pryor at Exh. 17.  As noted by the Applicant, in Pryor, the HTTP is applied to media data that is native to the intermediary device. Exh. 19, Para. [0008] and [0027].  In Pryor, the HTTP is not applied to data from the data capture device. Id. As the Applicant explained, "In every day scenario, the PC attaches a hypertext transfer protocol (HTTP) header and user ID to the Data generated by the PC (NATIVE data). The normal home wireless router DOES NOT apply website user information or apply HTTP to the data sent over the wireless from the PC to the home wireless router. In the applicant's case, the mobile device is configured to send a HTTP request comprising the website user information and the NON-NATIVE data. In the applicant's case, the mobile device is acting as more than just a normal home wireless router. The wireless pairing established is therefore VERY important for NON-Native data that is acquired by a physically separate device and then transferred to the mobile device over the trusted paired wireless connection." Ex. 168, 4/10/15 Office Action Response.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

wherein acquired new media is transferred to the cellular phone in response to a request initiated by the software application on the cellular phone over an already paired and encrypted short-range wireless connection. Independent asserted claim 1 of the '698 patent is directed to, inter alia, an improved method of network architecture and communications implemented by the system of claim 5. Including as noted herein, this use, including combined use, of an intermediate cellular phone, a request and response communication scheme, encryption, and pre-existing paired short-range wireless connection are inventive and meaningful, and they have substantial benefits.

A. **The Claimed Inventions have many concrete aspects.**

There is nothing abstract about the claimed inventions. For example, various Asserted Claims have concrete, non-abstract aspects such as short-range wireless, including Bluetooth, capable capture devices; mobile devices comprising short-range wireless, including Bluetooth, capabilities and Internet, including HTTP, capabilities, Internet servers, pushing event notifications, polling for data, mobile software initiated requests and responses for data; and paired short-range wireless, including Bluetooth connections, between the data capture device and the mobile device.

B. **The Claimed Inventions have many concrete benefits, including due to their inventiveness**.

Data capture devices pose a number of specific challenges associated with publishing data to a web service from a capture device using a mobile device. The process to transfer new data from a data capture device to a web service was cumbersome and time consuming for the user. Further, data capture devices typically house small batteries, so users would be obligated to constantly charge batteries. The technology embodied in the Cellspin patents aim to solve these and other problems. The claimed inventions comprise superior ways (*i.e.*, means) to achieve the ends of uploading data to the Internet via a mobile device. Claimed processes seamlessly transfer data from a data capture device to a web service with little to no user intervention using a mobile device as the center piece doing most of the heavy lifting. Making changes to the data in transit, at the mobile device, and not at the data capture device where

P a g e **14** | 26

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

the data originated from, results in a much-improved user experience making the process much easier on the user and improving data capture device battery life. The method of receiving the data at the mobile device, attaching user identifying information and HTTP methods to the data relieves the data capture device or web service of performing those steps which results in a seamless and improved user experience over the previous methods.

One benefit of the inventions of the Patents-In-Suit is the resulting battery consumption savings on the data capture device. Particularly applicable to wireless data capture devices small in size, such as petite fitness tracking devices, battery life plays a major role in the user experience. The Patents-in-Suit allow for a data capture device to be in a low power state to conserve battery life, and send an event notification to the mobile device to initiate a higher power consumption state during a brief communication period, and then revert back to the lower power consumption state. This saves a tremendous amount of power. *See* '794 at 4:66-5:1 ("A file event listener *in the client application* 203 listens for the signal from the digital data capture device 201." (emphasis added) [The application on the mobile device, or the Bluetooth client, is charged with the majority of listening rather than the data capture device, or the Bluetooth server, which results in much better battery life for the data capture device.]). The many other benefits from the inventiveness of the claimed technology comprise (1) the efficiencies of the claimed inventions, including over inferior alternative means for achieving the same or similar ends of uploading content; (2) leveraging Internet capabilities of mobile devices (through use of custom hardware and software) to greatly enhance the functionality of Internet incapable data capture devices;[16] (3) uploading captured data from data capture devices to the Internet while avoiding the cost, memory usage, complexity, hardware (e.g., cellular antenna), physical size, and battery consumption of an Internet accessible mobile device, including without the data capture device being capable of wireless Internet connections or being capable of communicating in Internet accessible protocols such as HTTP;

---

[16] Defendants argue, based upon a myopic interpretation of the specification, *see* '794/ 3:49-52 and 9:37-46, that the Claimed Inventions utilize only technology that was available at the time of the invention. Although this is incorrect, it still would not bar Section 101 patentability, and nonetheless Defendants' misconstrue leveraging and improving upon existing technology with merely using existing technology.

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

(4) minimizing power usage by the data capture device, including to minimize the need to change batteries or recharge the device; (5) using event notification, polling and request/return communication protocols over an already paired connection to have the benefits from an efficient or automated upload system while conserving resources such as batteries by avoiding the data capture device broadcasting captured data when an intermediate mobile device is unavailable (*e.g.*, off or out of Bluetooth range) or incapable of receiving captured data for uploading to the Internet; and (6) applying HTTP in transit and on intermediary device.

The claimed inventions also provide computer and network efficiency at least because they allow data capture devices to have the useful and improved claimed sharing functionality without the need to include expensive and battery consuming electronics and software on the capture device. The inventors did more than simply apply current technology to an existing problem, they leveraged a novel technology in its infancy to create an inventive, novel concept that was more than simply an improvement. It was a significant advancement in mobile data capture and sharing technology. The claimed inventions comprise utilization of the mobile Internet to create a novel architecture enabling data captured by non-Internet enabled capture devices to quickly, easily and automatically be uploaded to the Internet, and more specifically to what is referred to today as "the cloud" and "social media."

## IV.    ARGUMENT

### A.    *The Claims At Issue Are Directed To Patent-Eligible Subject Matter*

Cellspin's patents provide tangible innovative improvements to computer technology, including publishing data to a web service from a capture device, by, for example, minimizing user involvement and assimilating capabilities resident in accompanying mobile devices. Notably, the claims here do not simply use computers as a tool to accomplish an ordinary task or to solve a problem existing in the pen and paper world. Rather, the new and very specific data publishing technology claimed in Cellspin's patents provides solutions to recognized technological issues that are unique to mobile devices and networking. Including for these reasons, the Asserted Claims are patent-eligible under both steps of the *Alice/Mayo* inquiry. *See Enfish*, 822 F.3d at 1339; *DDR Holdings*, 773 F.3d at 1257.

P a g e  **16 | 26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

Defendants fail to meet their burden of clearly establishing that no material issues of fact remain and that they are entitled to judgment as a matter of law. Ultimately, as explained below, Defendants attempt to re-write the claims to ignore their true nature, including the specific improvements they provide over conventional data publishing processes at the time of the patent. Accordingly, there is no basis to find—especially given the limited record present at this stage of the proceedings—that the Asserted Claims are not patent-eligible.

**B.**  ***The Asserted Claims Are Patent-Eligible Under Both Steps Of The Alice/Mayo Inquiry***

### 1.  Step One: The Asserted Claims Are Not Directed to an Abstract Idea

The Asserted Claims are directed to patent-eligible subject matter—not abstract ideas—including because "the focus of the claims is on [a] specific improvement" to publishing data to a web service, not "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The Asserted Claims embody an improvement in the functioning of a data capture device, not an abstract idea implemented with conventional components. *See id.* at 1338.

The Asserted Claims here are analogous to those found patent-eligible in *Enfish*. In *Enfish*, the Federal Circuit explained that while the self-referential database stored the same information, it did so, unlike a relational database, using a single table with an additional row. *Id.* at 1332-33. The court further explained that the self-referential database provided multiple benefits, including "faster searching of data," "more effective storage of data," and "more flexibility in configuring the database." *Id.* In *Enfish,* the Federal Circuit criticized the district court for oversimplifying the claims as covering simply "the concept of organizing information using tabular formats." *Id.* at 1337. The Court cautioned that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id.* The Federal Circuit concluded that the claims were "directed to a specific improvement to the ways computers operate," not directed to an abstract idea or preempt *any* form of storing tabular data, and reversed the district court's summary judgment order. *Id.*

P a g e **17 | 26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

As in *Enfish*, there is nothing abstract about the Asserted Claims of Cellspin's patents. Just as the district court in *Enfish* inappropriately oversimplified the claims as covering "the concept of organizing information using tabular formats," Defendants inappropriately oversimplify the claims here as covering only the idea of acquiring, transferring and publishing data. *See id.* at 1337-39. To the contrary, the claims are not simply directed to *any* form of acquiring, transferring and publishing data but rather describe "specific improvements" comprising acquiring, transferring, and publishing new-data on the Internet and more. *See id.* at 1337. In other words, as in *Enfish*, the claims represent a "specific implementation of a solution in the arts." *Id.* at 1339. Thus, as the Federal Circuit recently reemphasized in *Elec. Power*, the claims here are not directed to an abstract idea because they focus "on a specific improvement…in how computers [*i.e.*, data capture devices and mobile devices] could carry out one of their basic functions [*i.e.*, publishing data to a web service]." 2016 WL 4073318 at *4. Cellspin's patents are thus not directed to an abstract idea.

In *McRO* decision, the Federal Circuit reversed the district court's finding of ineligibility for claims that "aim to automate a 3-D animator's tasks, specifically, determining when to set keyframes and setting those keyframes." *McRO v. Bandai*, 837 F.3d 1299, 1307 (Fed. Cir. 2016). In so holding, the Federal Circuit held, among other things, that (1) processes that automate tasks that humans are capable of performing are patent eligible if properly claimed. *Id.* at 1313; (2) Defendants have the burden of proving, using "record evidence," not just "attorney's argument," that preemption exists such that any process must use the claimed invention to achieve the desired result. *Id.* at 1315 (The "concern here is whether the claimed genus of rules preempts all techniques for automating 3–D animation that rely on rules"); (3) the abstract idea exception should only be applied to prevent patenting of claims that abstractly cover results where it matters not by what process or machinery the result is accomplished, and the inquiry is whether the claims at issue "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea…." *Id.* at 1314.; (4) claims directed to rules embodied in software processed by general purpose computers are patent eligible, such as claims that use limited rules in a process

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

specifically designed to achieve an improved technological result in conventional industry practice. *Id.* at 1312; (5) the automatic use of rules of a particular type was a specific asserted improvement in the relevant technology and thus patentable. *Id.* at 1314; (7) "The concern underlying the exceptions to § 101 is not tangibility, but preemption." *Id.* at 1315; and 8) courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims. *Id.*

Where, as here, the claimed invention is described narrowly enough, and focuses on solving a specific problem that exists only in the technical world, it supports a conclusion that Cellspin's asserted patents are not directed to an abstract idea. *See Id.; Confident Techs., Inc. v. AXS Grp. LLC*, 2018 WL 539166, *6 (S.D. Cal. Jan. 23, 2018).

## 2. Step Two: The Asserted Claims Contain an Inventive Concept

Because the Asserted Claims pass step one of the *Alice/Mayo* inquiry, an analysis the second step is not necessary. However, to the extent the Court erroneously finds the claims are directed to an abstract idea, the claims recite an "inventive concept" that provide "significantly more" than any alleged abstract idea and transform this idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357-58.

As the Federal Circuit explained in *Bascom*, an inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." 2016 WL 3514158 at *6. Here, the Asserted Claims evidence an inventive concept under both tests. Furthermore, the "ordered combination" of claim elements cover "significantly more" than the idea of transferring data to the Internet. As in *Bascom*, the claims as a whole represent a "non-conventional and non-generic arrangement" of communications between a data capture device and a Bluetooth enabled mobile device that is a "technical improvement" to the communications between the devices and web services. *Id*. The claims are directed to a "specific, discrete implementation" of publishing data to a web service from a data capture device using an intermediary Bluetooth enabled mobile device. *Id.* at *7.

The Asserted Claims, moreover, cover an inventive concept under the Federal Circuit's holdings in *DDR Holdings* and *CellzDirect,* including because they "improve[] an existing

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

P a g e **19 | 26**

Case No.: 4:17-cv-05928-YGR

technological process." *CellzDirect*, 2016 WL 3606624 at *6 ("Under step two, claims that are 'directed to' a patent-ineligible concept, yet also 'improve[] an existing technological process,' are sufficient to 'transform[] the process into an inventive application' of the patent-ineligible concept."). Like the claims found patent-eligible in *DDR Holdings*, the "claimed solution is necessarily rooted in computer [*i.e.*, portable monitoring device] technology in order to overcome a problem specifically arising in the realm of computer networks [*i.e.*, publishing captured data to the Internet]." *Id.* at 1257.

## C.    *Defendants' Analysis Is Legally And Factually Erroneous*

Defendants' motion devalues the inventions embodied in the claims and relies on an oversimplification of the claims to make them appear simple and abstract. Defendants' motion, moreover, offers unsupported attorney arguments complete with inapposite case law that fail to erase the fact that the Asserted Claims are directed to patent-eligible subject matter. Defendants exacerbate this error by ignoring key claim elements when oversimplifying what the Defendants assert the claims boil down to. Without limitation, Defendants fail to address that Cellspin's patents improve pairing identification, different ways to transfer of new-data between paired devices (event notification, polling, mobile initiated request response), and use of HTTP for wirelessly received new-data. An appreciation of the problem that the inventors solved is an important prerequisite to understanding what the claims are "directed to" during a § 101 inquiry. Notably, other than to repeat claim language, Defendants fail to discuss significant limitations in the claims.

Defendants repeatedly rely on case law that does not support their arguments and, if anything, often underscores the patent-eligibility of the Asserted Claims. For example, Defendants' Motion contains a list of seven different instances where courts have found claims directed to data acquisition and transfer to be abstract. *See* Motion at 9-10. The claims in each instance are easily differentiated from Cellspin's Asserted Claims. *See Elec. Power,* 830 F.3d at 1350, 1352 (monitoring and analyzing data from disparate sources); *In re TLI Comm'ns*, 823 F.3d 607, 613 (Fed. Cir. 2016) (classifying and storing digital images in an organized manner); *Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*, 874 F.3d 1329, 1337 (Fed.

P a g e  **20 | 26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

Cir. 2017) (sending information, directing the sent information, monitoring the receipt of the sent information, and accumulating records about receipt of the sent information); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016) (collecting information, including when limited to particular content; and analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911-12 (Fed. Cir. 2017) (a sender-generated identifier of a message); *Content Extraction and Transmission LLC*, 776 F.3d at 1347-48 (collecting data, recognizing certain data within the collected set, and storing that data); *Smart Sys. Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1372-1373 (Fed. Cir. 2017) (a collection and arrangement of data).

In contrast to the above cases cited by Defendants, Cellspin's Asserted Claims do not lack steps or limitations to solve the problems outlined herein or to improve the functioning of the technology, including as evidenced by the adoption of the Asserted Claims methods into Bluetooth standards. *See Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) ("ineligible claims generally lack steps or limitations specific to solution of a problem, or improvement in the functioning of technology."). Further, Cellspin reiterates that "at some level" any invention might arguably at some level "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S.Ct. at 2354 (*quoting Mayo,* 132 S.Ct. at 1293). But that does not mean that it is patent ineligible.

Defendants cite *Capital One*, *EasyWeb* and *Audi* with parentheticals that "patent claim 'directed to . . . collecting, displaying, and manipulating data' was abstract," "[a]s we have explained in a number of cases, claims involving data collection, analysis, and publication are directed to an abstract idea" and "[c]ollecting information, analyzing it, and displaying certain results of the collection and analysis are a familiar class of claims 'directed to' a patent-ineligible concept." Motion at 13 (*quoting Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017), *quoting EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) and *quoting W. View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed.Cir. 2017)). Defendant's reliance on these cases is

P a g e  **21** | **26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

misplaced, including because all three cases stand for the same generalized proposition that claims directed to data manipulation are generally patent ineligible. This generalized proposition does not fit the facts of the present case or apply to Cellspin's Asserted Claims. For example, none of the patents in Defendants' cited cases claim the use of a "Bluetooth enabled capture device" and a "Bluetooth enabled mobile device" that establish "a paired connection" to send data in the manners set forth in Cellspin's asserted patents. *See*, *e.g.*, '794/Claim 1.

Defendants cite *UFRF* for the proposition that abstract ideas with "technical-sounding verbosity" do not change the conclusion that the claims are patent ineligible. Motion at 13 (*citing UFRF, Inc. v. General Electric Co.*, No. 1:17-cv-171, 2017 WL 5502940, *6 (N.D. Fla. Nov. 16, 2017)). However, the claim at issue in *UFRF* bears no meaningful resemblance or analogy to Cellspin's claims, nor do Cellspin's claims have redundant claim elements.

Defendants argue that Cellspin's claims contain abstract concepts because "humans have always performed these functions," "the claim can be performed by the human mind or by using pen and paper" and the functions could all be performed by humans without a computer. Motion at 14 (citing *Contract Extraction* and *TLI*). Importantly, the claims in *Contract Extraction* and *TLI* were not directed to an improvement in computer functionality, which separates the claims in those cases from the claims in the current case. Further, Defendants attempt to identify a comparable situation within the analog world completely fails. The attempted pen and paper analogy fails to appreciate establishing a *wireless* paired connection, and receiving and transferring communications of activity or media data wirelessly over that paired connection.

Defendants cite *DIRECTV* with the parenthetical that the claims were directed to communication between two points which was a "broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it." Motion at 15 (*quoting Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Unlike the representative claim in *DIRECTV*, as explained herein, Cellspin's Asserted Claims are limited to specific technical implementations, including pushing

P a g e **22** | **26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

notification, polling communications, and request-response communication methods, among other things noted above. Further, the Asserted Claims do not recite "generic computer parts using conventional computer activity" as alleged by Defendants (Motion at 16), rather disclose innovative communication methods that solved deficiencies in short-range wireless communications in a previously unpracticed manor, distinguishable from the claims found in *buySAFE. See id.* (*citing buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)).

An inventive concept sufficient to confer patent eligibility is present where "components operate in an unconventional manner to achieve an improvement in computer functionality." Motion at 17 (*citing Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016)). Cellspin's claims recite methods and systems in which a data capture device operates in an unconventional manner to achieve an improvement in functionality, including enhancing the user experience of publishing data to a web service and battery life of the capture device. For example, as noted above, it was unconventional to leave open a paired connection for data capture devices.

Defendants attempt to argue that Cellspin's Patent-in-Suit do not become "nonabstract" merely because the claims are set in a "technological environment" consisting of conventional components and the use of standard technology. Motion at 18 (*citing Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016); *see also Alice*, 134 S. Ct. at 2358). Yet Cellspin's Asserted Claims are not merely set in a particular technological environment with that environments' usual suspects. Rather, Cellspin's claims encompass methods and systems which had never been used before.

Cellspin's claims do not cloak an otherwise abstract idea in the guise of computer-implemented claims as suggested by Defendants' parenthetical from *MySpace*. Motion at 18 (*quoting MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012)). Cellspin's claims provide a specific solution to short-range wireless communications with concrete elements implementing each step of the communication.

Defendants argue that grouping conventional steps and shifting of timing in steps or otherwise combine the steps in a novel way does not result in an inventive concept. Motion at

Page **23** | **26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF
INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

19. But Defendants cited cases, including *Smart Sys., In re: Bill of Lading* and *SkillSurvey* are inapposite because the patents were directed to an abstract idea under Step One of the *Alice/Mayo* inquiry and the claims recited conventional steps using conventional technology. Here, Cellspin's Asserted Claims are not abstract and recite unconventional steps to improve the functionality of communications with a data capture device. *See* '794/Claim 1.

### D.    Cellspin's Claims Pass Muster Under Section 101

Cellspin's claimed solution amounts to an inventive concept for resolving the particular problems and inefficiencies with publishing data from a data capture device to the Internet described above just as the claims in *DDR Holdings* were found to be patent-eligible. *See DDR Holdings*, 773 F.3d at 1259 ("the claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-eligible").

Two recent § 101 decisions from this District that Defendants fail to cite are instructive to the issue of whether the asserted patents' claims pass muster under § 101. *See Synchronoss Techs., Inc. v. Dropbox Inc.*, 226 F. Supp. 3d 1000 (N.D. Cal. 2016); *Fitbit, Inc. v. AliphCom*, 233 F. Supp. 3d 799 (N.D. Cal. 2017). The asserted claims in the *Dropbox* and *AliphCom* cases are analogous to Cellspin's Asserted Claims.

The claims in *Dropbox* were directed to an improvement to computer functionality: a more-efficient mechanism for synchronizing data between systems connected to a network by updating only changed data (or "difference information"), rather than recopying all information. Likewise, Cellspin's claims are directed to more-efficient mechanisms, including for publishing new data from a data capture device to the Internet. Ultimately, just as the claims in *Dropbox*, viewed as an ordered combination, were found to impose specific limitations sufficient to survive at the motion to dismiss stage, Cellspin's claims should similarly survive at the motion to dismiss stage. Further, just as the *Dropbox* court stated that it "must focus on the language of the asserted claims themselves" when performing this analysis, this Court should similarly focus on the claim language.

In the *AliphCom* case, this Court upheld similar device pairing claims. 233 F. Supp. 3d at 801 (finding "Fitbit's asserted patents relate to a specific approach to pairing a wireless

P a g e **24 | 26**

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF
INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

device" passed muster under § 101). Here, Cellspin's asserted patents relate to a specific and concrete approaches comprising, among other things, pairing, transferring, and publishing data to the Internet from a wireless data capture device.

Most recently, in *Core Wireless*, the Federal Circuit found claims that disclosed an improved display interface, particularly for devices with small screens, to be directed to a non-abstract improvement in computer functionality, and therefore to patent eligible subject matter under § 101. *See Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc. et al.*, Nos. 2016-2684, Doc. 64, 2017-1922, Doc. 7 (Fed. Cir. Jan. 25, 2018). The claims in *Core Wireless* covered computing devices that displayed an application summary window comprising a list of common functions and commonly accessed stored data which itself can be reached directly from the application summary window from a main menu that listed other applications. *Id.* at pp. 2-3. The Federal Circuit focused on the improved user interface, particularly for electronics with small screens, and the fact that the prior art interfaced had deficits relating to the efficient functioning of a computer, requiring users to scroll around and switch views many times to find the right data functionality. *Id.* at pp. 9-10. Analogous to the improved user interface for small screens, a byproduct of the claimed communication methods is better battery efficiency and therefore better battery life. Further, just like the prior art deficiencies in *Core Wireless*, the technology invented here aim to solve deficiencies of prior art of communication methods.

## V.        CONCLUSION

Including for the reasons noted herein, Defendants have not met their heavy burden of proving unpatentability. Defendants' Motion should be denied for lack of merit, or at a minimum, factual issues that cannot be resolved on a motion to dismiss preclude granting the motion.

Dated: January 30, 2018                   **COLLINS EDMONDS & SCHLATHER, PLLC**

By:   */s/ John J. Edmonds*
      JOHN J. EDMONDS

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

Case No.: 4:17-cv-05928-YGR

State Bar No. 274200

*Attorneys for Plaintiff,*
*CELLSPIN SOFT INC.*

Of counsel:

Shea N. Palavan (*pro hac vice* to be filed)
        spalavan@ip-lit.com
Brandon G. Moore (*pro hac vice*)
        bmoore@ip-lit.com
**COLLINS, EDMONDS &
SCHLATHER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 364-5291
Facsimile: (832) 415-2535

[PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS ON GROUNDS OF
INELIGIBILITY UNDER 35 U.S.C. § 101 AND SUPPORTING MEMORANDUM (DOC. ##)]

**Case No.: 4:17-cv-05928-YGR**