John J. Edmonds (State Bar No. 274200)
    jedmonds@ip-lit.com
COLLINS EDMONDS
Collins Edmonds Schlather & Tower, PLLC
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 973-7846
Facsimile: (213) 835-6996

Attorneys for Plaintiff,
CELLSPIN SOFT INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC., <br><br> Plaintiff, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | Case No. 4:17-cv-05928 <br><br> **AMENDED COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 8,738,794, 8,892,752, AND 9,749,847**[1] <br><br> **DEMAND FOR JURY TRIAL** <br><br> Original Complaint Filed: October 16, 2017 <br> Judge: Honorable Yvonne G. Rogers |

## NATURE OF THE ACTION

This is a patent infringement action to stop Defendant's infringement of United States Patent Nos. 8,738,794 entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content" (the "'794 patent"), 8,892,752 entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content" (the "'752 patent"), and 9,749,847 entitled "Automatic Multimedia Upload for Publishing Data and Multimedia Content" (the "'847

---

[1] Cellspin files this Amended Complaint pursuant to the Court's very recent February 27th Order approving the parties' stipulation that pleadings in this case may be "amended, without the need for leave of Court, up to, and including June 5, 2018," and pursuant to very recent decisions from the Court of Appeals for the Federal Circuit -- *see, e.g., Automated Tracking Solutions, LLC v. The Coca-Cola Co.*, 2018 WL 935455 (Fed. Cir. Feb. 16, 2018) – concerning the significance of pled facts in connection with the evaluation of motions brought under 35 U.S.C. § 101. Cellspin is mindful of the fact that § 101 motions (briefed prior to these recent decisions from the Court of Appeals for the Federal Circuit) are currently pending and set for hearing. Cellspin hereby stipulates and agrees that Defendants need not re-file their § 101 motions and that the filing of this Amended Complaint does not render moot such pending motions, and Cellspin is fully prepared to have all relevant matters heard at the Court's upcoming hearing § 101 motions.

patent") (collectively, the "Patents-in-Suit").

## THE PARTIES

1. Plaintiff, Cellspin Soft, Inc. ("Cellspin"), is a California corporation with an office and place business at 1410 Mercy Street, Mountain View, California 94041.

2. Upon information and belief, Defendant, FitBit, Inc. ("FitBit"), is a corporation organized under the laws of Delaware, with its principal place of business located at 405 Howard Street, San Francisco, California 94015. Fitbit has already been served with process and is being served with this Amended Complaint via ECF.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, and 284. This Court has subject matter jurisdiction over this case for patent infringement, including pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Plaintiff is the assignee of the Patents-in-Suit with all right, title and interest to bring the claims herein comprising those for past and present infringement, including to recover damages therefor.

5. The Court has personal jurisdiction over FitBit, including because FitBit has minimum contacts within the State of California; FitBit has purposefully availed itself of the privileges of conducting business in the State of California; FitBit regularly conducts business within the State of California; and Plaintiff's cause of action arises directly from FitBit's business contacts and other activities in the State of California, including at least by virtue of FitBit's infringing methods and products, which are at least practiced, made, used, offered for sale, and sold in the State of California. FitBit is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the California Long Arm Statute, due at least to its continuous and systematic business contacts in California, including related to operations conducted from its San Francisco, California headquarters and the infringements alleged herein. Further, on information and belief, FitBit is subject to the Court's specific jurisdiction, including because FitBit has committed patent infringement in the State of California, including as detailed herein. In addition, FitBit induces infringement of the patents-in-suit by

customers and/or infringing users located in California. Further, on information and belief, FitBit regularly conducts and/or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods and services provided to persons and/or entities in California.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), including because FitBit has at least one regular and established place of business in this District and in California, including its San Francisco California headquarters, and at least some of its infringement of the patent-in-suit occurs in this District and in California.

## THE PATENTS-IN-SUIT

7. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

8. The claims of the Patents-in-Suit, including the asserted claims, when viewed as a whole, including as an ordered combination, are not merely the recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention, over ten years ago, and represent specific improvements over the prior art and prior existing systems and methods.

9. At the time of the patented inventions, publishing captured data from a data capture device to a web service was cumbersome and inefficient.

10. At the time of the priority date of the Patents-in-Suit (December 2007), the same year the world's first prominent mobile "smartphone" was released, and 6 months before the world's first prominent mobile "app store" (*see* History of the iPhone on Wikipedia at https://en.wikipedia.org/wiki/History_of_iPhone & App Store (iOS) on Wikipedia at https://en.wikipedia.org/wiki/App_Store_(iOS)), it was a cumbersome and time consuming process to use a data capture device to acquire data, send that data to a mobile device with an internet connection, and the mobile device to upload that wirelessly received data to a website, especially for large data such as pictures or video data.

11. The most common and practical way to transfer large data was to physically plug a data capture device into, or transfer a memory card from a data capture device to, a computer, upload the data on the capture device or memory card to the computer, and further upload the

data from the computer to a web service. *See, e.g.*, '794 at 1:37-54. In the case of using a 2007 mobile phone, the software on both the data capture device and mobile phone that established a paired connection and potentially transferred large data was extremely under developed and not the intended or foreseeable use of the mobile phone. Further, HTTP transfers of data received over the paired wireless connection to web services was non-existent. Mobile phones of that time exclusively used SMS,[2] MMS,[3] or email-based communication methods (such as POP3 or IMAP[4] to transfer data that was acquired by the mobile phone. It was not until 2009 or later when the leading tech companies, such as Facebook and Google, started releasing HTTP APIs for developers to utilize a HTTP transfer protocol for mobile devices. *See* https://developers.facebook.com/docs/graph-api/changelog/archive; http://mashable.com/2009/05/19/twitter-share-images/#K9kEHwxammq0. Even in 2009 when Facebook and Google HTTP APIs were released, the released HTTP APIs were only used for data that was acquired by the mobile phone, and not for the data that was received wirelessly over the secure paired connection from a physically separate data capture device. Applying HTTP to a data in transit and on intermediary mobile device was not developed until the inventions of the Patents-in-Suit.

12. Including as of the priority date of the Patents-in-Suit, there have been many, albeit vastly inferior, means outside of the claimed invention for achieving the ends of acquiring and transferring data for publication, including on the Internet. For example, as noted in the specification,

> Typically, the user would capture an image using a digital camera or a video camera, store the image on a memory device of the digital camera, and transfer the image to a computing device such as a personal computer (PC). In order to transfer the image to the PC, the user would transfer the image off-line to the PC, use a cable such as a universal serial bus (USB) or a memory stick and plug the cable into the PC. The user would then manually upload the image onto a website which takes time and may be inconvenient for the user.

---

[2] Short Message Service (SMS) is a text messaging service component of most telephone, World Wide Web, and mobile device systems. It uses standardized communication protocols to enable mobile devices to exchange short text messages. *See* https://en.wikipedia.org/wiki/SMS.
[3] Multimedia Messaging Service (MMS) is a standard way to send messages that include multimedia content to and from a mobile phone over a cellular network. *See* https://en.wikipedia.org/wiki/Multimedia_Messaging_Service.
[4] *See* https://en.wikipedia.org/wiki/Email#Types.

*See, e.g.*, '794/1:38-47. Another inferior method would be to have the capture device simply forward data to a mobile device as captured. This example is inferior including because, without a paired connection, there is no assurance that the mobile device is capable (*e.g.*, on and sufficiently near) of receiving the data. Such constant and inefficient broadcasting would quickly drain the battery of the capture device. Another inferior method for posting data from a capture device onto the Internet is to have a capture device with built in mobile wireless Internet, for example cellular, capability. As noted in the specification, "[t]he digital data capture device is physically separated from the BT enabled mobile device." *See, e.g.*, '794/2:2-3. This example is inferior including because, especially at the time of the patent priority date in 2007 but also today, it makes the combined apparatus bulky, expensive in terms of hardware, and expensive in terms of requiring a user to purchase an extra and/or separate cellular service for the data capture device.

13. Prior art methods for posting data from a data capture device onto the Internet were inferior. Back at the time of invention, capture devices such as cameras had only rudimentary wireless capabilities as exemplified by the U.S. Patent Application No. 2003/015,796 to Kennedy ("Kennedy") and ancillary prior art addressed extensively during prosecution of certain Patents-in-Suit and related patents. As noted by the inventors during prosecution of the '794 patent, in every day scenarios, the computer attaches a hypertext transfer protocol (HTTP)_header and user ID to the data generated by the computer ("native data"), and the existing home wireless routers did not apply website user information or apply HTTP to the data sent over the wireless network from the computer to the home wireless router. However, the claimed invention improves and builds on this, including because the claimed mobile device is configured to send a HTTP request comprising the website user information and the non-native data, such that the mobile device is acting as more than just a normal home wireless router. According to the inventors, the wireless pairing established is therefore very important for the transfer of non-native data that is acquired by a physically separate device and then transferred to the mobile device over the trusted paired wireless connection.

14. Including at the time of the invention, data capture devices posed a number of specific

challenges associated with publishing data to a web service from a capture device using a mobile device. The process to transfer new data from a data capture device to a web service was cumbersome and time consuming for the user. Further, data capture devices typically house small batteries, so users would be obligated to constantly charge batteries. The technology embodied in the Patents-in-Suit solved these, and other, problems. The claimed inventions comprise superior ways to achieve the ends of uploading data to the Internet via a mobile device. The claimed processes of the asserted claims seamlessly transfer data from a data capture device to a web service with little to no user intervention using a mobile device with a wireless internet connection as the center piece doing most of the heavy lifting. Making changes to the data in transit, at the mobile device, and not at the data capture device where the data originated from, results in a much-improved user experience making the process much easier on the user and improving data capture device battery life. The method of receiving the data at the mobile device, attaching user identifying information and HTTP methods to the data relieves the data capture device or web service of performing those steps which results in a seamless and improved user experience over the previous methods.

15. Among other things, the inventors of the Patents-in-Suit wanted to post onto the Internet content captured while a capture device, such a camera, was capturing data, for example photographs, in "real time" situations, for example, when the capture device was in remote areas, adverse conditions or on the move. As noted in the specification, "[a] user may need to capture and publish data and multimedia content on the Internet in real time." *See, e.g.*, '794/1:37-38. As further noted in the specification, "there is a need for a method and system to utilize a digital data capture device in conjunction with a mobile device for automatically detecting capture of data and multimedia content, transferring the captured data and multimedia content to the mobile device, and publishing the data and multimedia content on one or more websites automatically or with minimal user intervention." *See, e.g.*, '794/1:48-54. But existing technology offered only unacceptably inferior solutions of posting to the Internet content captured from a capture device in "real time" situations.

16. The claims of the Patents-in-Suit are directed to specific improvements in computer and

networking functionality and capabilities. Among other things, the claimed inventions improve functionality of data capture devices and methods, systems and networks comprising those devices. Including as noted in the Patents-in-Suit, the claimed technologies comprise innovative systems and processes which use less power than those existing at the time, and allow for multiple efficiencies resulting in a better user experience and reduced costs. The Patents-in-Suit thus provided concrete applications that improved computer and networking technology, including for publishing directly to a web service from a data capture device.

17. Additionally, the inventions of the asserted claims of the Patents-in-Suit comprise improvements in improving battery life on the data capture device, including that they reduce the processing done by the device and thus reduce battery consumption. Particularly applicable to wireless data capture devices small in size, such as petite fitness tracking devices, battery life plays a major role in the user experience. The Patents-in-Suit allow for a data capture device to be in a low power state to conserve battery life, and send an event notification to the mobile device to initiate a higher power consumption state during a brief communication period, and then revert back to the lower power consumption state. This saves a tremendous amount of power, including because the application on the mobile device, or the Bluetooth client, is charged with the majority of listening, rather than the data capture device, or the Bluetooth server, which results in much better battery life for the data capture device, including since there is "[a] file event listener *in the client application* 203 [which] listens for the signal from the digital data capture device 201. '794 at 4:66-5:1 (emphasis added). Similarly, the Patents-in-Suit allow for a data capture device to be in a low power state to conserve battery life because in certain claimed embodiment the application on the mobile device with the internet connection, is charged with polling the data capture device for new data to transfer.

18. In sum, including as noted above, the claimed technologies of the Patents-in-Suit improved, *inter alia*, prior computer and networking technology, including in connection with:

   a. Improving and increasing efficiencies of the claimed inventions, including over inferior alternative means for achieving the same or similar ends of uploading content, including by reducing or eliminating the cumbersome steps of previous methods of data transfer to the Internet and providing the ability to upload or transfer the captured data at a time subsequent to the capture of the data where a

      connection to the Internet may not be available to the data capture device. *See, e.g.*, '794/1:37-54 & 4:55-5:3.

   b. Leveraging the capabilities of mobile devices, including their Internet connection capabilities (through use of custom hardware and/or software), including by shifting the transfer of data from the data capture device to the mobile device, to greatly enhance the functionality of Internet incapable data capture devices, including because the mobile device, with its larger storage, may then store the captured data for upload or transfer to the web service via the Internet at a later time. *See, e.g.*, '794/2:26-34, 5:18-56, 6:2-46, 9:37-60, & 10:10-61.

   c. Uploading captured data from data capture devices to the Internet while avoiding the cost, memory usage, complexity, hardware (*e.g.*, cellular antenna), physical size, and battery consumption of an Internet accessible mobile device, including without the data capture device being capable of wireless Internet connections or being capable of communicating in Internet accessible protocols such as HTTP. *See, e.g.*, '794/2:46-54, 5:4-11, 5:55-6:8, 7:29-33, 7:62-67, 8:23-9:26.

   d. Minimizing power usage by the data capture device, including to minimize the need to change batteries or recharge the device. *See, e.g.*, '794 at 4:66-5:1.

   e. Using event notification, polling and request/return communication protocols over an already paired connection to have the benefits from an efficient or automated upload system while conserving resources such as batteries by avoiding the data capture device broadcasting captured data when an intermediate mobile device is unavailable (*e.g.*, off or out of Bluetooth range) or incapable of receiving captured data for uploading to the Internet. *See, e.g.*, '794/4:55-5:3 & 5:12-17.

   f. Applying HTTP in transit and on an intermediary device. *See, e.g.*, '794/9:61-10:9.

19. The claimed inventions also provide computer and network efficiency at least because they allow data capture devices to have the useful and improved claimed sharing functionality without the need to include expensive and battery consuming electronics, cellular antenna, paying for separate cellular service, and extra software and data processing required on the data capture device. The inventors did more than simply apply current technology to an existing problem. Their invention, as embodied in the asserted claims, was a significant advancement in mobile data capture and sharing technology. The inventions covered by the asserted claims comprise utilization of the mobile Internet to create a novel architecture enabling data captured by non-Internet enabled capture devices to quickly, easily and automatically be uploaded to the Internet, and more specifically to what is referred to today as "the cloud" and "social media." Additionally, the claimed inventions also improve pairing identification, different ways to transfer of new-data between paired devices (event

notification, polling, mobile initiated request response), and use of HTTP and adding user information to the wirelessly received new-data on the intermediary mobile device, when the new-data is in transit to the website.

20. These noted improvements over the prior art represent meaningful limitations and/or inventive concepts based upon the state of the art over a decade ago. Further, including in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well known, previously known, typical, and the like over a decade ago, including because, until inventions of the asserted claims of the Patents-in-Suit, the claimed inventions were not existing or even considered in the field.

21. The asserted claims, including as a whole and where applicable in ordered combination, comprise, *inter alia*, a non-conventional and non-generic arrangement of communications between a data capture device and a Bluetooth enabled mobile device that is a technical improvement to the communications between the devices and web services, including those improvements noted above.

22. The claimed inventions are necessarily rooted in computer technology, *i.e.*, portable monitoring device technology, and comprise improvement over prior technologies in order to overcome the problems, including those noted above, specifically arising in the realm of computer networks. The claimed solutions amount to an inventive concept for resolving the particular problems and inefficiencies noted above, including in connection publishing data from a data capture device to the Internet described.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,738,794

23. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

24. United States Patent No. 8,738,794 Patent was duly and legally issued by the USPTO on May 27, 2014 after full and fair examination. *See* Exhibit A.

25. Claims of the '794 Patent comprise, in general, methods comprising acquiring new data in a data capture device after establishing a paired connection with a mobile device; determining the existence of new data by the capture device; transferring the new data from

the capture device to the mobile device automatically over the paired connection; applying a user identifier uniquely identifying a particular user to the new data; transferring the new data along with the user identifier to a web service; and making available, at the web service, the new data received from the mobile device over the internet, wherein the new data corresponds to the user identifier.

26. FitBit has infringed, and is now infringing, the '794 patent, including at least claims 1, 2, 3, 4, 7, and 9, in this judicial district, the State of California, and elsewhere, in violation of 35 U.S.C. § 271 through actions comprising the practicing, without authority from Plaintiff, methods for acquiring and transferring data from FitBit Bluetooth enabled data capture devices to FitBit web services via Bluetooth enabled mobile devices. On information and belief, FitBit practices the claimed methods via its fitness tracking devices, including smart watches, wearables, fitness bands, and other data capture devices, designed to monitor a user's biological and/or fitness information and metrics, *e.g.*, heart rate and physical activity such as walking and/or running, as specified herein, comprising Bluetooth functionality, with such products comprising the Fitbit Charge 2, Fitbit Surge, Fitbit One, Fitbit Charge HR, Fitbit Blaze, Fitbit Flex 2, Fitbit Charge, Fitbit Flex, Fitbit Zip, Fitbit Alta, Fitbit Alta HR, Fitbit Ionic, and Fitbit Force, including when used in conjunction with FitBit mobile applications (including iOS and Android versions thereof) comprising FitBit Mobile, including when used in conjunction with web services comprising www.fitbit.com.

27. Without limitation, the accused methods comprising FitBit devices and software which practice said methods support Bluetooth protocols, including Bluetooth 4.0, which enables connection between such devices and other Bluetooth-enabled mobile devices, such as a cell phone, tablet, laptop, or other mobile device, and which permits the user to acquire and transfer data from FitBit devices to the FitBit web services via a Bluetooth enabled mobile device. The accused FitBit methods comprise acquiring and determining the existence of new tracking data, such as heart rate, steps, etc., in the FitBit device after establishing a paired connection with the mobile device, and transferring the new data from the FitBit device to the mobile device automatically over the paired connection. The accused FitBit methods further comprise

FitBit applications receiving the new data from the FitBit device and transferring the new data, along with the account information identifying the user, and tied to the new data, to the FitBit web service, such that the FitBit web service receives, and makes available, the new data received over the Internet. Upon information and belief, at least through FitBit's hardware, software, and efforts to test, demonstrate, and otherwise use FitBit devices, FitBit has practiced the accused FitBit methods via at least the use of FitBit devices, comprising at least the foregoing steps.

28. Additionally, or in the alternative, FitBit has infringed, and now infringing, the '794 Patent in this judicial district, the State of California, and elsewhere, jointly with end users and/or customers (collectively, "users"), wherein all of the foregoing steps are performed by FitBit and/or users. Without limitation, FitBit provides software modules for FitBit Bluetooth enabled capture devices and FitBit applications comprising software modules, and FitBit further receives new data at its web services and makes said new data available via its web services. Further, without limitation, user mobile devices perform at least the remaining steps in the claimed methods under the direction or control of FitBit, including FitBit software and hardware, including because user mobile devices perform said steps in order to receive the benefits of FitBit's web services and/or application, and/or because FitBit conditions use of its web services and/or applications upon performance of the remaining method steps.

29. FitBit has had notice of its infringement of the '794 patent pursuant to notifications from Plaintiff comprising letters mailed on June 15, 2017 and August 31, 2017.

30. To the extent FitBit continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '794 patent, such infringement is necessarily willful and deliberate. Plaintiff believes and contends that FitBit's continuance of its clear and inexcusable infringement of the '794 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

31. Including on account of the foregoing, Plaintiff contends such activities by FitBit qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests

an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

32. Each of FitBit's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,892,752

33. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

34. U.S. Patent No. 8,892,752 was duly and legally issued by the USPTO on November 18, 2014 after full and fair examination. *See* Exhibit B.

35. Claims of the '752 Patent comprise, generally, methods comprising establishing a secure paired Bluetooth connection between a Bluetooth enabled data capture device and a Bluetooth enabled mobile device using an encryption key; acquiring new data in the capture device; receiving a message from the mobile device over the paired connection to enable event notification corresponding to new data on the capture device; determining existence of the new data for transfer; sending an event notification to the mobile device, corresponding to existence of the new data, over the paired connection, wherein the mobile device is configured to listen for the event notification; and transferring the encrypted data from the data capture device to the mobile device, over the paired connection, wherein the mobile device sends the obtained new data with an attached user identifier, a hypertext transfer protocol method, and a destination web address to a remote internet server.

36. FitBit has infringed, and is now infringing, the '752 patent, including at least claims 1, 2, 4, 5, 12, 13, and 14, in this judicial district, the State of California, and elsewhere, in violation of 35 U.S.C. § 271 through actions comprising the practicing, without authority from Plaintiff, methods for transferring data from FitBit Bluetooth enabled data capture device to remote FitBit internet servers via Bluetooth enabled mobile devices. On information and belief, FitBit practices, and/or induces others to practice, the claimed methods via its fitness tracking devices, including smart watches, wearables, fitness bands, and other data capture devices, designed to monitor a user's biological and/or fitness information and metrics, *e.g.*, heart rate and physical activity such as walking and/or running, as specified herein, comprising Bluetooth functionality, with such products comprising the Fitbit Charge 2, Fitbit Surge, Fitbit

One, Fitbit Charge HR, Fitbit Blaze, Fitbit Flex 2, Fitbit Charge, Fitbit Flex, Fitbit Zip, Fitbit Alta, Fitbit Alta HR, Fitbit Ionic, and Fitbit Force, including when used in conjunction with FitBit mobile applications (including iOS and Android versions thereof) comprising FitBit Mobile, including when used in conjunction with FitBit's web servers comprising www.fitbit.com.

37. Without limitation, the accused methods comprising FitBit devices and software which practice said methods support Bluetooth protocols, including Bluetooth 4.0, which enables connection between these devices and other Bluetooth-enabled devices, such as a cell phone, laptop, tablet, or other mobile device, which permits the user to establish a secure connection between FitBit devices and a mobile device and acquire and transfer data from the FitBit devices to the FitBit web services via the mobile device. The accused FitBit methods comprise establishing a secure paired Bluetooth connection between the FitBit device and the mobile device using a Bluetooth encryption key. Once paired, new data is acquired on the FitBit device, the FitBit device receives a message from the mobile device over the paired connection to enable event notifications which correspond to new data on the FitBit device, the FitBit device determines the existence of the new data for transfer, and the FitBit device sends an event notification to the mobile device over the paired connection, corresponding to existence of new data for transfer, wherein the mobile device is configured to listen for the event notification. The encrypted data is transferred from the FitBit device to the mobile device over the paired connection, wherein the mobile device sends the obtained new data along with the account information, a hypertext transfer protocol operation, and a destination web address to the FitBit web server. Upon information and belief, at least through FitBit's hardware, software, and efforts to test, demonstrate, and otherwise use FitBit devices, FitBit has practiced the accused FitBit methods via at least the use of FitBit devices, comprising at least the foregoing steps.

38. FitBit has had notice of its infringement of the '752 patent pursuant to notifications from Plaintiff comprising letters mailed on June 15, 2017 and August 31, 2017.

39. Additionally, or in the alternative, FitBit has induced, and continues to induce,

infringement of the '752 Patent in this judicial district, the State of California, and elsewhere, by actively inducing direct infringement of the '752 Patent, including by knowingly and actively aiding or abetting infringement by users, by and through at least instructing and encouraging the use of the FitBit products and software noted above. Such aiding and abetting comprises providing devices, software, web servers, and/or instructions regarding the use and/or operation of the FitBit devices, applications, and web servers in an infringing manner. Further, the direct infringement of users that occurs in connection with FitBit's applications and/or web services occurs under the direction or control of FitBit, including FitBit software and hardware, including because user devices perform said steps in order to receive the benefits of FitBit's web services and/or mobile application, and/or because FitBit conditions use of its web services and/or mobile applications upon performance of the remaining method steps. Such induced infringement has occurred since FitBit became aware of the '752 Patent, at a minimum, as noted above, and the knowledge and awareness that such actions by users comprise infringement of the '752.

40. To the extent FitBit continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '752 patent, such infringement is necessarily willful and deliberate. Plaintiff believes and contends that FitBit's continuance of its clear and inexcusable infringement of the '752 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

41. Including on account of the foregoing, Plaintiff contends such activities by FitBit qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

42. Each of FitBit's aforesaid activities have been without authority and/or license from Plaintiff.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,749,847

43. Plaintiff refers to and incorporates herein the allegations in the above paragraphs.

44. U.S. Patent No. 9,749,847 was duly and legally issued by the USPTO on August 29,

2017 after full and fair examination. *See* Exhibit C.

45. Claims of the '847 Patent comprise, generally, systems comprising a capture device comprising: a communication device configured to establish a secure paired connection with a cellular phone, a processor configured to acquire new-data using a data capture circuitry after the paired connection is established, wherein said processor is configured to store the acquired new-data in a coupled memory device and send an event notification along with the acquired new-data to the cellular phone over the paired connection; and a mobile application comprising a graphical user interface in the cellular phone configured to listen for and receive the event notification, receive the acquired new-data over the established paired connection, store the new-data in a memory device of the cellular phone before transfer to a website, and use HTTP to transfer the new-data, along with user information, to the website over a cellular data network.

46. FitBit has infringed, and is now infringing, the '847 patent, including at least claims 1, 2, and 3, in this judicial district, the State of California, and elsewhere, in violation of 35 U.S.C. § 271 through actions comprising the making, using, offering for sale, and/or selling, without authority from Plaintiff, systems for transferring data from FitBit Bluetooth enabled data capture devices to FitBit websites via Bluetooth enabled cellular phones. On information and belief, FitBit makes, uses, offers for sale, and/or sells, and/or induces others to use, the claimed systems, including fitness tracking devices, including smart watches, wearables, fitness bands, and other data capture devices, designed to monitor a user's biological and/or fitness information and metrics, *e.g.*, heart rate and physical activity such as walking and/or running, as specified herein, comprising Bluetooth functionality, with such products comprising the Fitbit Charge 2, Fitbit Surge, Fitbit One, Fitbit Charge HR, Fitbit Blaze, Fitbit Flex 2, Fitbit Charge, Fitbit Flex, Fitbit Zip, Fitbit Alta, Fitbit Alta HR, Fitbit Ionic, and Fitbit Force, including when used in conjunction with FitBit mobile applications (including iOS and Android versions thereof) comprising FitBit Mobile.

47. Without limitation, the accused FitBit devices support Bluetooth protocols, including Bluetooth 4.0, which enables connection between such devices and other Bluetooth-enabled

devices, such as a cellular phone, which permits the user to establish a secure connection between the FitBit devices and a cellular phone and acquire and transfer data from the FitBit devices to the FitBit web services via the cellular phone. These FitBit devices comprise capture devices, comprising a communication device within the FitBit devices configured to establish a secure paired connection with a cellular phone, a processor configured to acquire new-data on the FitBit devices, *e.g.*, heart rate or step tracking data, using data capture circuitry within the FitBit devices after the paired connection is established. The processor within the FitBit devices is coupled to a memory device within said devices, wherein said processor is configured to store the acquired new-data in the memory device and send an event notification, along with the acquired new-data, to the authenticated and paired cellular phone over the established paired connection. The FitBit application comprises a graphical user interface for operation on the cellular phone, and the FitBit application is configured to listen for and receive the event notification from the FitBit devices, receive the acquired new-data over the established paired connection from the FitBit devices, store the new-data in a memory device of the cellular phone before transfer to the FitBit websites, and use HTTP to transfer the new-data, along with the account information, to the FitBit websites over a cellular data network servicing the cellular phone. In addition, and in the alternative, to FitBit's making, offering for sale, and/or selling of the FitBit devices and applications, upon information and belief, at least through FitBit's hardware, software, and efforts to test, demonstrate, and otherwise use FitBit devices, FitBit has used the claimed systems via at least the use of the FitBit devices as noted above.

48. FitBit has had notice of its infringement of the '847 patent pursuant to notification from Plaintiff comprising a letter mailed on August 31, 2017.

49. Additionally, or in the alternative, FitBit has induced, and continues to induce, infringement of the '847 Patent in this judicial district, the State of California, and elsewhere, by intentionally inducing direct infringement of the '847 Patent, including by knowingly and actively aiding or abetting infringement by users, by and through at least instructing and encouraging the use of the FitBit products and software noted above. Such aiding and abetting

comprises providing devices, hardware, software, websites, and/or instructions, including providing the accused FitBit devices and applications to users who, in turn, use the claimed systems, including as noted above. Further, the direct infringement by users of the claimed systems provides the user with a direct benefit from the use of FitBit devices and applications. Such induced infringement has occurred since FitBit became aware of the '847 Patent, at a minimum, as noted above, and the knowledge and awareness that such actions and use by users comprise infringement of the '847.

50. To the extent FitBit continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '847 patent, such infringement is necessarily willful and deliberate. Plaintiff believes and contends that FitBit's continuance of its clear and inexcusable infringement of the '847 patent post notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

51. Including on account of the foregoing, Plaintiff contends such activities by FitBit qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff hereby respectfully requests an award of enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

52. Each of FitBit's aforesaid activities have been without authority and/or license from Plaintiff.

## DAMAGES

53. By way of its infringing activities, FitBit has caused, and continues to cause, Plaintiff to suffer damages, and Plaintiff is entitled to recover from FitBit the damages sustained by Plaintiff as a result of FitBit's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54. FitBit's infringement of Plaintiff's rights under the Patents-in-Suit will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

55. Plaintiff also requests that the Court make a finding that this is an exceptional case

entitling Plaintiff to recover their attorneys' fees and costs pursuant to 35 U.S.C. § 285.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgment in favor of Plaintiff and against FitBit, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the Patents-in-Suit has been directly and/or indirectly infringed by FitBit;

B. An award to Plaintiff of damages adequate to compensate Plaintiff for FitBit's past infringement, together with pre-judgment and post-judgment interest, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A grant of preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining FitBit and all persons, including its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation therewith, from making, using, offering to sell, or selling in the United States or importing into the United States any methods, systems, or computer readable media that directly or indirectly infringe any claim of the Patents-in-Suit, or any methods, systems, or computer readable media that are colorably different;

D. That this Court declare that FitBit's infringement has been, and continues to be, willful, including that FitBit acted to infringe the Patents-in-Suit despite an objectively high likelihood that its actions constituted infringement of a valid patent and, accordingly, award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284;

E. That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F. A judgment and order requiring FitBit to pay Plaintiff their damages, costs, expenses, fees, and prejudgment and post-judgment interest for FitBit's infringement of the Patents-in-Suit as provided under 35 U.S.C. §§ 284 and/or 285; and

G. Any and all further relief for which Plaintiff may show itself justly entitled that this Court deems just and proper.

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully requests a trial by jury of any issues so triable by right.

Dated: March 2, 2018

**COLLINS EDMONDS**
**SCHLATHER & TOWER, PLLC**

By: */s/ John J. Edmonds*
JOHN J. EDMONDS
State Bar No. 274200

*Attorneys for Plaintiff,*
*CELLSPIN SOFT INC.*

Of counsel:

Stephen F. Schlather (*pro hac vice*)
  sschlather@ip-lit.com
Shea N. Palavan (*pro hac vice* filed)
  bmoore@ip-lit.com
Brandon G. Moore (*pro hac vice*)
  bmoore@ip-lit.com
**COLLINS, EDMONDS**
**SCHLATHER & TOWER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 364-5291
Facsimile: (832) 415-2535