SHANE BRUN (SBN 179079)
*sbrun@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*rwalsh@goodwinlaw.com*
ANJALI MOORTHY (SBN 299963)
*amoorthy@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

NEEL CHATTERJEE (SBN 173985)
*nchatterjee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650.752.3100
Fax.: +1 650.853.1038

Attorneys for Defendant
FITBIT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC., | Case No. 4:17-cv-05928-YGR |
| Plaintiff, | **DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** |
| v. | |
| FITBIT, INC., | Date: May 29, 2018 |
| Defendant. | Time: 2:00 p.m. |
| | Dept.: Courtroom 1, 4th Floor |
| | Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF THE ISSUE TO BE DECIDED ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT .......................................2

II.    STATEMENT OF THE FACTS ......................................................................................3

       A.     The Procedural History ........................................................................................3

       B.     The March 6, 2018 Hearing on the Omnibus Section 101 Motion .......................4

       C.     The Court's Order Invalidating the Asserted Patents............................................7

III.   RELEVANT LEGAL STANDARDS................................................................................9

       A.     *Octane Fitness* Set the Standard for an "Exceptional" Case.................................9

IV.    ARGUMENT. ....................................................................................................................9

       A.     The Substantive Strength of Cellspin's Position Was Exceptionally Weak ..........9

              1.     Cellspin ignored the plethora of cases from the Federal Circuit
                     holding similar claims patent-ineligible ...................................................11

              2.     Cellspin advanced meritless arguments that were not grounded in
                     fact ...........................................................................................................13

              3.     Fitbit is entitled to an award of attorneys' fees defending a meritless
                     case ...........................................................................................................15

V.     CONCLUSION ...............................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Aatrix Software, Inv. v. Green Shades Software, Inc.,*
    882 F.3d 1121 (Fed. Cir. 2018) ........................................................................... 4, 13

5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) .......................................................................................... *passim*

6

7

*Amdocs (Isr.) Ltd. v. Openet Telecom Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) ........................................................................... 10, 11

8

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 13

9

10

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ........................................................................... 4

11

*Commil USA, LLC v. Cisco Sys., Inc.,*
    135 S. Ct. 1920 (2015) .......................................................................................... 15

12

13

*Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ........................................................................... 13

14

*Diamond v. Diehr,*
    450 U.S. 175 (1981) .............................................................................................. 11

15

16

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
    689 F. App'x 969 (Fed. Cir. 2017) ...................................................................... 12

17

*eDekka LLC v. 3Balls.com, Inc.,*
    No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) .......................... 9

18

19

*Elec. Power Group, LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................................... 12

20

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................... 4, 8,13

21

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
    839 F.3d 1089 (Fed. Cir. 2016) ........................................................................... 12

22

23

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015) ........................................................................... 8

24

*Intellectual Ventures I LLC v. Capital One Financial Corp.,*
    850 F.3d 1332 (Fed. Cir. 2017) ........................................................................... 12

25

26

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,*
    876 F.3d 1372 (Fed. Cir. 2017) ........................................................................... *passim*

27

28

*McRO v. Bandai*,
        837 F.3d 1299 (Fed. Cir. 2016) ................................................................................... 4, 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
        134 S. Ct. 1749 (2014) .......................................................................................... 2, 9, 15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
        788 F.3d 1359 (Fed. Cir. 2015) ................................................................................... 8, 13

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*,
        858 F.3d 1383 (Fed. Cir. 2017) ........................................................................................ 14

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
        873 F.3d 905 (Fed. Cir. 2017) .......................................................................................... 12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
        726 F.3d 1306 (Fed. Cir. 2013) ........................................................................................ 10

*In re TLI Commc'ns LLC Patent Litig.*,
        823 F.3d 607 (Fed. Cir. 2016) ...................................................................................... 8, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
        874 F.3d 1329 (Fed. Cir. 2017) ........................................................................................ 12

*Ultramercial, Inc. v. Hulu, LLC*,
        772 F.3d 709 (Fed. Cir. 2014) .......................................................................................... 11

*West View Research, LLC v. Audi AG*,
        685 F. App'x 923 (Fed. Cir. 2017) .................................................................................... 12

**Statutes**

35 U.S.C.
        § 101 ..............................................................................................................................*passim*
        § 285 ................................................................................................................... 1, 2, 9, 13

**Other Authorities**

Fed. R. Civ. P.
        Rule 12(b)(6) ...................................................................................................................... 3

FITBIT, INC.'S MOTION FOR ATTORNEYS' FEES          CASE NO. 4:17-CV-05928-YGR

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 29, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-titled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Fitbit, Inc. ("Fitbit") will and hereby does move the Court to find that this case is "exceptional" under 35 U.S.C. § 285 and award Fitbit its reasonable attorneys' fees.

Based on the objective ineligibility of Cellspin's patent claims and the exceptional weakness of Cellspin's defense of its 35 U.S.C. § 101 position, Fitbit is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (concluding "that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future").

The points and authorities in support of this motion are set forth in Fitbit's accompanying Memorandum of Points and Authorities. Fitbit's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Section 101 Hearing Excerpts (attached as Exhibit A), the Declaration of Shane Brun, the pleadings and papers on file, and any evidence and argument presented to the Court at the hearing.

For the foregoing reasons, Fitbit respectfully requests that the Court grant its motion finding this case exceptional and awarding Fitbit its reasonable attorneys' fees.

**STATEMENT OF THE ISSUE TO BE DECIDED**

An exceptional case under § 285 is one that simply stands out from others with respect to the substantive strength of a party's litigating position. Cellspin's asserted patent claims were objectively ineligible under current § 101 jurisprudence, and its arguments in defense of the eligibility of the claims were meritless. Should the Court therefore find this case to be exceptional and award Fitbit its attorneys' fees?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Fitbit is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees because Cellspin's asserted patent claims were objectively ineligible under § 101, and its positions were exceptionally weak. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (concluding "that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future"). By the time Cellspin filed its Complaint, there was clear guidance from the Federal Circuit regarding claims in this category that should have given any litigant a reasonably clear view of § 101's boundaries. Cellspin ignored this precedent by filing its Complaint and advancing meritless arguments that found no support in law or fact.

Moreover, Cellspin knew that for its claims to survive § 101 scrutiny, they would need to contain a specific improvement to computer technology. Cellspin also know that no such improvement existed in its patents' claims, but rather than concede the issue, Cellspin filed an amended complaint and identified improvements that it contended were covered by the claims. The claims, however, did not include these improvements and neither did the patents' specification. Undeterred, Cellspin gave the Court citations to the specification that purportedly supported these positions, but the Court saw right through them, noting that it appeared as if Cellspin "pulled them out of thin air." And it had. Knowing it needed to find specific improvements somewhere if it wanted to prolong the litigation, Cellspin simply made them up.

Cellspin should not be allowed to simply walk away after Fitbit has had to incur significant fees in defending itself against an infringement suit that should never have been filed. This case certainly "stands out from others." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749 (2014). Accordingly, for the reasons detailed below, Fitbit respectfully requests that the Court grant its motion, find this case exceptional, and award Fitbit its attorneys' fees.

2

## II.   STATEMENT OF THE FACTS

### A.   The Procedural History

On October 16, 2017, Cellspin filed its Complaint,[1] alleging that Fitbit infringes three patents: U.S. Patent No. 8,738,794; U.S. Patent No. 8,892,752; and U.S. Patent No. 9,749,847 (collectively, the "Asserted Patents"). *See* Dkt. No. 1 at ¶ 1.

On January 16, 2018, Fitbit[2] moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint because the claims of the Asserted Patents are directed to patent-ineligible subject matter under § 101 ("Omnibus Section 101 Motion"). Dkt. No. 31. In the motion, Fitbit argued that the claims (i) are directed to the abstract concept of acquiring data using a "data capture device," transferring data over a connection to a mobile device, and publishing the data to a website, and (ii) recite only generic computer technology to carry out the abstract idea, technology which the specification describes as "pervasive [and] flexible," such as a "ubiquitous mobile phone," "fairly widespread" personal digital assistants (PDAs), and "general purpose computers and computing devices." *Id*. at 1-19.

On January 30, 2018, Cellspin filed an opposition to the Omnibus Section 101 Motion. Dkt. No. 38. In its opposition, Cellspin argued that the claims of the Asserted Patents are not abstract under step one of the *Alice* test because the claims describe "'specific improvements' comprising acquiring, transferring, and publishing new-data on the Internet," including, for example, a purported improvement in battery consumption, *id.* at 15, an elimination of the need for "bulky" hardware, *id.* at 8, and a purported improvement in the order or timing of the Bluetooth or wireless pairing, *id.* at 10. In making these arguments, Cellspin failed to cite any credible support in the Asserted Patents, and the citations it did provide were irrelevant. *See, e.g., id*. at 15 ("This saves a tremendous amount of power. *See* '794 at 4:66-5:1 ('A file event listener *in the client application* 203 listens for the signal from the digital data capture device 201.'

---

[1] This case is one of more than a dozen lawsuits filed by Cellspin alleging infringement of several patents in a related family. *See* Dkt. No. 17 (Cellspin's Notice of Procedural Posture of Related Cases).

[2] Fitbit filed an omnibus motion to dismiss with defendants NIKE, Inc., Moov, Inc. d/b/a/ Moov Fitness Inc., Fossil Group, Inc., Misfit, Inc., TomTom, Inc., GoPro, Inc., Canon U.S.A., Inc., Panasonic Corporation of North America, and JK Imaging Ltd.

(emphasis added)[)]"). Cellspin's failings are simply explained: these "improvements" were not described by the named inventors in the Asserted Patents when they applied for the patents. Nonetheless, Cellspin analogized its claims to those found eligible in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *McRO v. Bandai*, 837 F.3d 1299 (Fed. Cir. 2016). *Id.* at 17-19. Cellspin also advanced irrelevant arguments concerning the novelty and non-obviousness of its patents. *Id.* at 6-11. The Omnibus Section 101 Motion was fully briefed on February 13, 2018. Dkt. No. 47.

On February 16, 2018, Cellspin filed a notice of supplementary authority in which it argued that the Federal Circuit's decisions in *Berkheimer v. HP Inc*., 881 F.3d 1360 (Fed. Cir. 2018) and *Aatrix Software, Inv. v. Green Shades Software, Inc*., 882 F.3d 1121 (Fed. Cir. 2018) "are relevant to this case" because "factual disputes exist" regarding whether "the claimed features are well-understood, routine, and conventional." Dkt. No. 48.

On March 2, 2018—nearly two months after the Omnibus Section 101 Motion was filed, 17 days after briefing on the Omnibus Section 101 Motion was completed, and just two court days before the hearing on Omnibus Section 101 Motion—Cellspin filed an amended complaint. The amended complaint included a new section entitled "The Patents-in-Suit" (Dkt. No. 58, ¶¶ 7-22), which imported nearly verbatim many of the attorney arguments in Cellspin's opposition to the Omnibus Section 101 Motion.

**B.     The March 6, 2018 Hearing on the Omnibus Section 101 Motion**

At the March 6, 2018 hearing on the Omnibus Section 101 Motion, Cellspin advanced several meritless arguments in support of its claims. But Cellspin could not articulate why its claims are not directed to the abstract idea of acquiring, transferring, and publishing data and multimedia content on one or more websites:

> **THE COURT**: TO MAKE AN AFFIRMATIVE CASE. THIS IS YOUR LAST OPPORTUNITY TO MAKE AN AFFIRMATIVE CASE AS TO WHY IT IS NOT ABSTRACT. AFFIRMATIVELY.
>
> **MR. EDMONDS**: WHEN THE COURT LOOKS TO THE --
>
> **THE COURT**: NO, DON'T START WITH WHAT I DO. WHAT I WANT YOU TO START WITH IS THIS PATENT IS NOT ABSTRACT BECAUSE. FINISH MY SENTENCE.

1    **MR. EDMONDS**: THE CLAIMS ARE NOT ABSTRACT BECAUSE
2    THEY DO NOT PREEMPT ALL MEANS TO THE END THAT YOU CAN
     DISTILL FROM THE CLAIMS.

3            **THE COURT**: WHAT CAN YOU DISTILL?

4            **MR. EDMONDS**: WHAT I HAD ON SLIDE 6 IS WE SAY ANY
     DISTILLATION OF THE CLAIM, YOUR HONOR, WOULD NEED TO
5    RECOGNIZE --

6            **THE COURT**: TELL ME WHAT IT IS. TELL ME WHAT THE PATENT
     DOES.
7
8            **MR. EDMONDS**: RIGHT. THE DISTILLATION -- WHEN YOU SAY
     "THE PATENT", IT'S THE CLAIMS. AND THE DISTILLATION OF' THE
     CLAIMS, WHICH IS IN SLIDE 6 AND I'VE STATED IN THE RECORD, THAT
9    WOULD BE A PROPER DISTILLATION OF THE CLAIMS. AND IT WOULD
     BE FOR THE COURT TO DECIDE WHETHER THAT DISTILLATION IS
10   ABSTRACT. IF SO, YOU DON'T MOVE TO 2. WE SAY IT'S NOT
     ABSTRACT. WE SAY WHAT YOU DO IS YOU LOOK AT FIRST OF ALL --
11
             **THE COURT**: STOP.
12
     Ex. A (3/6/2018 Hrg. Transcript) at 22.
13
     Nor could it explain the teachings of its patents:
14
             **THE COURT**: I HAVE YET TO HAVE YOU, AS A LAWYER,
15   ARTICULATE IN ANY SYNTHESIZED WAY WHAT IT TEACHES.

16           THAT'S WHAT PATENTS ARE SUPPOSED TO DO; THEY ARE
     SUPPOSED TO TEACH SOMETHING.
17
             **MR. EDMONDS**: IT TEACHES METHODS, SYSTEMS,
18   APPARATUSES, AND COMPUTER REMOVABLE MEDIA THAT COMPRISE
     WHAT WE HAVE DISTILLED AS THIS -- A SPECIFIC TYPE OF
19   PUBLISHING OF NEWLY CAPTURED DATA, NOT JUST THE STEPS,
     WHAT IS SAID IS CAPTURING PUBLISHING, AS THE DEFENDANTS SAY,
20   ALL THESE INVENTIVE ELEMENTS THAT ARE DISTILLED HERE HAVE
     TO BE LOOKED AT TOGETHER.
21
             SO FROM THE PERSPECTIVE OF THE CAPTURE DEVICE, THE
22   CAPTURE DEVICE EITHER PROVIDES EVENT NOTIFICATION OVER A
     PAIRED BLUE TOOTH --
23
             **THE COURT**: HOW DOES IT DO THAT? HOW DOES IT TEACH IT
24   TO DO THAT?

25           **MR. EDMONDS**: WELL, THE SPECIFICATION -- I MEAN WE ARE
     TALKING ABOUT WHAT THE CLAIM IS. THE SPECIFICATION HAS
26   EXAMPLES THAT TEACH ONE OF ORDINARY SKILL IN THE ART HOW
     TO DO THAT.
27
             **THE COURT**: HOW DOES IT DO IT?
28

1      **MR. EDMONDS**: WELL, IT HAS EXAMPLES IN THE CLAIMS --

2      **THE COURT**: HOW DOES IT DO IT? DO YOU KNOW OR NOT?

3      **MR. EDMONDS**: I... I... I DO KNOW, YOUR HONOR.

4      **THE COURT**: ALL RIGHT. HOW?

5      **MR. EDMONDS**: WELL, THE -- IT PROVIDES, FOR EXAMPLE, AN
EVENT NOTIFICATION TO THE MOBILE DEVICE. THE MOBILE DEVICE
6      OVER A... OVER A PAIRED CONNECTION, WHICH WAS NOT DONE
BEFORE AND WHICH IS UNCONVENTIONAL, SO A CONNECTION IS
7      PAIRED IN THE FIRST INSTANCE –

8      **THE COURT**: YOU HAVE A CAPTURE DEVICE AND YOU HAVE A
BLUE TOOTH CONNECTION, AND ALL OF A SUDDEN YOU'RE SAYING
9      THAT THIS PATENT TEACHES THOSE DEVICES HOW TO
COMMUNICATE AND CREATE AN EVENT NOTIFICATION.
10

11     **MR. EDMONDS**: WHAT IT DOES IS, IT TEACHES SPECIFIC
IMPROVED WAYS TO ACHIEVE THE ENDS THAT ARE BEING SOUGHT
HERE. THAT'S WHAT IT TEACHES. SO WHEN --
12

13     **THE COURT**: LIKE WHAT?

14     **MR. EDMONDS**: THE IMPROVED WAY -- SO WHAT WE DO IS, TO
GET THERE, WHAT THE COURT SHOULD DO IS WE LOOK AT THE
15     PRIOR ART THAT'S STATED IN THE SPECIFICATION, THE CLUNKY
METHODS. WE LOOK AT THE PRIOR ART KENNEDY METHOD, WHICH
IS THE INFERIOR METHOD. WE LOOK AT OTHER INFERIOR METHODS
16     THAT ARE NOTED IN OUR BRIEF.

17     THEN WE SAY WHAT DOES -- DOES THE -- DOES DISTILLATION
OF THE CLAIM, DOES IT COVER ALL MEANS FOR ACHIEVING THIS
18     END OF UPLOADING DATA FROM AN INTERNET INCAPABLE CAPTURE
DEVICE TO THE INTERNET. IT DOES NOT. IT COVERS SPECIFIC
19     IMPROVEMENTS TO THIS TECHNOLOGY –

20     **THE COURT**: YOU KNOW, YOU USE A LOT OF WORDS AND
DON'T SAY MUCH IN TERMS OF SPECIFICS.
21

*Id.* at 28-30.
22

23     Nor could Cellspin identify where in the specification and claims any purported

24     "improvement" was disclosed (because they were not there). Instead, Cellspin directed the Court

25     to its opposition to the Omnibus Section 101 Motion and the new allegations in its amended

26     complaint:

27     **THE COURT**: WHERE IS ISSUES LIKE POWER, STORAGE,
PROCESSING, BANDWIDTH, THAT IS THE USE OF RESOURCES, WHERE
IS ANY OF THAT?
28

1    **MR. EDMONDS**: WE HAVE CITED -- WE HAVE CITED IN OUR SPECIFICATION -- IN OUR BRIEF FROM THE SPECIFICATION WHERE IT

2    TALKS ABOUT BATTERY SAVINGS, SPECIFICALLY TALKS ABOUT THAT IN THE PATENT.

3
     BUT IN TERMS OF LEVERAGING THE INTERNET CAPABILITY

4    AND THE CAPABILITIES, ALL OF THE DIFFERENT -- THE MANY CAPABILITIES OF AN INTERMEDIATE MOBILE DEVICE, BATTERY

5    CAPACITY, STORAGE CAPACITY, PROCESSING SPEED, PROCESSING POWER, THE USER INTERFACE, ALL OF THESE ELEMENTS ARE NOTED

6    IN THE DESCRIPTIONS OF THESE THINGS.

7    **THE COURT**: SO YOU ARE STANDING ON YOUR BRIEFS IN TERMS OF WHERE YOU THINK YOU'VE IDENTIFIED IT, AND IF IT'S NOT

8    IN YOUR BRIEF, THEN IT'S NOT THERE?

9    **MR. EDMONDS**: WHAT I WOULD SAY, I WOULD ALSO DIRECT THE COURT TO THE COMPLAINT AND ESPECIALLY IN VIEW OF THE

10   VERY RECENT CASE LAW, INCLUDING THE AATRIX CASE, AATRIX SOFTWARE CASE.

11
     **THE COURT**: WHICH COMPLAINT?

12
     **MR. EDMONDS**: THE AMENDED COMPLAINT.

13   *Id.* at 40-41. The Court, however, correctly recognized there was no factual basis for Cellspin's

14   purported improvements: "It seems to me that you have pulled them out of thin air." *Id.* at 39.

15   And Cellspin was not done raising irrelevant or meritless arguments even after the hearing.

16   Eight days after the defendants filed a supplemental brief to address Cellspin's amended

17   complaint, as the Court requested, Cellspin filed an additional brief without seeking prior Court

18   approval, in violation of the Court's local rules. *See* Dkt. No. 73. The Court issued a show cause

19   order as to why Cellspin should not be sanctioned for its failure to follow court rules, an order the

20   Court eventually vacated when it issued its final ruling on the Omnibus Section 101 Motion.

21   **C.      The Court's Order Invalidating the Asserted Patents**

22   In its April 3, 2018 Order, the Court granted the Omnibus Section 101 Motion, finding the

23   asserted claims of the Asserted Patents to be patent-ineligible. Dkt. No. 79 at 1-19. In its *Alice* step

24   one analysis, the Court rejected Cellspin's argument that the Asserted Patents describe "specific

25   improvements" in acquiring, transferring, and publishing data on the Internet, stating that

26   "plaintiff fails to identify these alleged 'specific improvements' or otherwise explain how these

27   improvements result in enhanced 'computer capabilities' rather than 'a process that qualifies as an

28

abstract idea for which computers are invoked merely as a tool." *Id.* at 12 (quoting *Enfish*, 822 F.3d at 1339 (some internal quotations omitted). The Court likened Cellspin's claims to those in *TLI*, concluding that Cellspin's claims "do not recite a specific improvement with regard to 'how to combine a camera with a cellular telephone [or] how to transmit images via a cellular network.'" *Id.* (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)).

In its *Alice* step two analysis, the Court found that "the asserted claims 'merely provide a generic environment in which to carry out' the abstract ideas of acquiring, transferring, and publishing data," and thus "fail to supply an inventive concept sufficient to transform the underlying abstract idea into patentable subject matter." *Id.* at 15 (quoting *TLI*, 823 F.3d at 611). The Court noted that only one of the several "benefits" described by Cellspin in its opposition— "namely efficiencies for achieving 'the same or similar ends of uploading content' as the conventional method"—found support in the specification. *Id.* at 16. But the Court noted that "utiliz[ing] known and conventional computer components to achieve an improvement in the efficiency or speed of a previously-manual process does not constitute a sufficient inventive concept." *Id.* at 16 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012)). The Court found that "[t]he other proffered benefits which relate to improved battery consumption and power savings; order or timing of the Bluetooth wireless pairing; and elimination of the need for bulky hardware and costly cell phone services; do not appear in the patent's specification." *Id.* Finally, the Court found that the allegations in Cellspin's amended complaint either failed to cite to support in the specification or cited irrelevant passages. *Id.* at 17.

On April 10, 2018, the Court entered judgment in favor of Fitbit as the prevailing party. Dkt. No. 81.

### III.    RELEVANT LEGAL STANDARDS.

#### A.    *Octane Fitness* Set the Standard for an "Exceptional" Case

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The facts here implicate all of the "nonexclusive" factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness*, including "meritlessness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756, n.6. Fitbit need only demonstrate that this case is exceptional by a preponderance of the evidence, but the facts presented here exceed that standard. *Id.* at 1758.

### IV.    ARGUMENT.

#### A.    The Substantive Strength of Cellspin's Position Was Exceptionally Weak

This meritless case "stands out" from others because no reasonable litigant could reasonably expect success on the merits of Cellspin's § 101 position given the governing law and the facts in this case. Other courts have awarded attorneys' fees when a patentee advanced meritless § 101 arguments like those advanced by Cellspin here. *See, e.g., Inventor Holdings*, 876 F.3d at 1377-80; *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).

For example, in *Inventor Holdings*, in affirming the district court award of attorneys' fees, the Federal Circuit concluded that the district court "acted within the scope of its discretion in finding [the] case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1377. After concluding that the claims at issue were "manifestly directed to an abstract idea," the Federal

1    Circuit went on to state, "[T]he only components disclosed in the specification for implementing

2    the asserted method claims are unambiguously described as 'conventional.'" *Id*. at 1378. The

3    Federal Circuit noted that "while we agree with [plaintiff] as a general matter that it was and is

4    sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme

5    Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to

6    reach the conclusion that the [asserted] patent's claims are ineligible" because the "patent claims

7    here are directed to a fundamental economic practice, which *Alice* made clear is, without more,

8    outside the patent system." *Id*. at 1379.

9         Like the claims in *Inventor Holdings*, "there is no uncertainty or difficulty in applying the

10   principles set out in *Alice*" and the long line of Federal Circuit precedents holding claims like

11   Cellspin's patent-ineligible. *See id.* Although these claims are not directed to an economic

12   practice, like those in *Inventor Holdings*, the claimed process—uploading data from a device to a

13   website—is similarly conventional and well-known prior to the applicants' filing of the patent, as

14   they concede in their specification. *See, e.g.*, '794 patent at 2:16-18 (types of digital capture

15   devices); *id.* at 3:43-46 (examples of Bluetooth communication devices); *id.* at 4:38-44 (a variety

16   of ways the data can be transferred); *id.* at 9:40-46 (alternatives to Bluetooth). Despite this,

17   Cellspin advanced arguments that were not grounded in law or fact to prolong the inescapable

18   conclusion that its patents are invalid, while Fitbit continued to incur fees to defend itself against

19   claims that should never have been filed in the first place. *Taurus IP, LLC v. DaimlerChrysler*

20   *Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement

21   claims and must continually assess the soundness of pending infringement claims . . . .").

22        It is also important to note that in cases that courts have found exceptional due to a

23   plaintiff's objectively ineligible patent claims or meritless positions on § 101, the courts have not

24   been affected by the presumption of validity that exists for patents. This is because the

25   presumption of validity applies to ***validity*** issues, not to ***eligibility*** issues. *See Amdocs (Isr.) Ltd. v.*

26   *Openet Telecom Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016). Validity and eligibility are two

27   separate inquiries. *Id.* ("To be clear: ruling these claims to be patent-eligible does not mean that

28   they are valid; they have yet to be tested under the statutory conditions for patentability, e.g., §§

102 (novelty) and 103 (non-obvious subject matter), and the requirements of § 112 (written description and enablement) . . . ." (emphasis added)). In other words, to be valid, a patent must, *inter alia*, satisfy the requirements of §§ 102, 103, and 112. *Id.* The eligibility inquiry, however, focuses on whether the patent is directed to eligible subject matter. Therefore, claims may be patent-eligible while still being invalid for failing one of the statutory conditions for patentability, just as claims that may be valid under the validity sections may be directed to (and claim) patent-ineligible subject matter. Indeed, the Supreme Court has underlined the difference between validity and eligibility:

> Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. ***The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls in a category of statutory subject matter.***

*Diamond v. Diehr*, 450 U.S. 175, 189-90 (1981) (emphasis added) (quotation, internal citation omitted). Patents are not presumed eligible. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (citation omitted). Moreover, even if Cellspin were entitled to a presumption of eligibility on its patents, that presumption can be—and in this case, was—overcome. Cellspin was nonetheless required to at least put forth reasonable arguments in support of its position of eligibility, but it failed to do so on several occasions.

Based on the totality of circumstances, Fitbit is entitled to an award of its attorneys' fees for defending this meritless case.

### 1. Cellspin ignored the plethora of cases from the Federal Circuit holding similar claims patent-ineligible

It is difficult to conceive of computer activity more conventional than acquiring, transferring, and publishing data. A cursory review of the law on § 101 should have revealed to

Cellspin that the claims of the Asserted Patents are directed to an abstract idea and that their claim elements are not patent eligible:

- A device used for recording a digital image, transferring the digital image from the recording device to a storage device, and administering the digital image in the storage device "claims no more than the abstract idea of classifying and storing digital images in an organized manner" and is thus patent-ineligible, *In re TLI Comm'cns,* 823 F.3d at 609;

- Systems and methods for performing real-time monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results "do not go beyond requiring the collection, analysis, and display of available information in a particular field" and are thus patent-ineligible, *Elec. Power Group , LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016);

- A method claiming the functional results of converting, routing, controlling, monitoring, and accumulating records "manipulates data but fails to do so in a non-abstract way" and is thus patent-ineligible, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337-39 (Fed. Cir. 2017);

- Claims directed to collecting and analyzing information to detect misuse, and notifying a user when misuse is detected patent-ineligible, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-95 (Fed. Cir. 2016);

- Claims directed to transmitting information about a mail object over a network using a personalized marking patent-ineligible, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 907-08 (Fed. Cir. 2017);

- Claims "directed to . . . collecting, displaying, and manipulating data" that recite generic computer components that "merely describe the functions of the abstract idea itself" are patent-ineligible. *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017);

- Claims that merely collect information, analyze it, and display certain results of the collection and analysis are directed to a patent-ineligible concept. *West View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017);

- Claims that "merely recite the familiar concepts of receiving, authenticating, and publishing data" executed with "computer technology" are patent-ineligible. *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017); and

- Claims for collecting data, recognizing certain data within the collected set, and storing that data "undisputedly well-known" are patent-ineligible, *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

It should have been clear to Cellspin from this body of law that the claims of the Asserted Patents were "manifestly directed to an abstract idea" and thus patent-ineligible. *See Inventor Holdings*, 876 F.3d at 1378. Cellspin ignored these cases and instead attempted to analogize its claims to those in *Enfish* and *McRO*, which were directed to "specific improvements" in computer capabilities. Dkt. No. 38 at 17-19. But, as the Court found in granting the Omnibus Section 101 Motion (Dkt. No. 79 at 13), the sole advance claimed in the Asserted Patents is simply automating the process of uploading data to a website, and the law is clear that using generic computing technology to automate a process and save time or increase efficiencies is not an inventive step that can confer patentability. *OIP Techs.*, 788 F.3d at 1363 (Fed. Cir. 2015) ("relying on a computer to perform routine tasks more quickly or accurately is insufficient to render a patent claim eligible"); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014) ("use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" is not an inventive concept); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (a computer "employed only for its most basic function . . . does not impose meaningful limits on the scope of those claims").

This case is exceptional under § 285 because, under any objectively reasonable assessment, Cellspin should have known that its claims were patent-ineligible in view of the above cases and its claims' "stark contrast" to those in *Enfish* and *McRO*

### 2. Cellspin advanced meritless arguments that were not grounded in fact

Faced with the law indicating the ineligibility of its claims, Cellspin turned then to relying on *Berkhemer* and *Aatrix*, amending its complaint to include numerous allegations that it hoped would avoid dismissal of its claims under § 101. But Cellspin already had several opportunities, including in its opposition papers, complaint, and at the hearing on the Omnibus Section 101 Motion, to identify exactly what the Asserted Patents' alleged inventions are and list their

13

1    meaningful limitations—it failed to do so. Cellspin's conclusory allegations that its patents are

2    directed to specific improvements or disclose an inventive concept were not grounded in fact.

3    Indeed, at the hearing on the Omnibus Section 101 Motion, Cellspin could not even articulate why

4    its claims are not directed to the abstract idea of acquiring, transferring, and publishing data and

5    multimedia content on one or more websites, could not explain the teachings of its patents, and

6    could not identify where in the specification and claims any purported "improvement" was

7    disclosed. Ex. A (3/6/2018 Hrg. Transcript at 22, 28-30, 40-41). It relied entirely on general and

8    vague statements about how the claims should be "distilled" and how there were improvements in

9    the claims, but it did not—and could not—point to any particular place in the asserted claims (or,

10   largely, even the specification) to support its contentions.

11        Unsurprisingly, Cellspin's statements and conclusions in its opposition and amended

12   complaint about the alleged invention's benefits of reduced power consumption through a "low

13   power state," improved battery life, and reduced cost did not even cite support from the Asserted

14   Patents, because there is none. *See* Dkt. No. 79 at 18 ("Again, the alleged technological

15   improvements appear nowhere in the claims or specification and plaintiff fails to explain how such

16   benefits otherwise 'flow from' the patent."). Where Cellspin did provide citations to the Asserted

17   Patents, the citations only underscored that its allegations were completely divorced from what is

18   actually disclosed in Cellspin's patents and the asserted claims. *Id.* at 17 ("However, the cited

19   section of the '794 Patent does not reference power usage or battery savings, much less support

20   plaintiff's allegation of improvements to the same.").

21        It is bad enough that its claims were objectively ineligible, but Cellspin then "pulled

22   [arguments] out of thin air" in an attempt to support its meritless positions. Its conclusory and

23   unsupported statements demonstrate the exceptional weakness of Cellspin's § 101 position and

24   further support a finding of an exceptional case. *See Rothschild Connected Devices Innovations,*

25   *LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (reversing denial

26   of attorneys' fees based in part on plaintiff's counsel's and founder's conclusory and unsupported

27   statements concerning the validity of the asserted patent).

28

**3.  Fitbit is entitled to an award of attorneys' fees defending a meritless case**

The Asserted Patents are patent-ineligible on their face. Cellspin should never have filed this lawsuit in the first place, as it should have recognized the § 101 issues with its claims considering both the governing law and the facts in this case. Under any objectively reasonable assessment of Supreme Court and Federal Circuit precedents, Cellspin's patents are manifestly directed to an abstract idea and ineligible under § 101. Yet Cellspin pursued its case anyway, wasting the Court's and the parties' time and resources. The Supreme Court has commented that district courts have a responsibility to dissuade meritless cases:

> Nonetheless, it is still necessary and proper to stress that district courts have the authority and responsibility to ensure meritless cases are dissuaded. If meritless cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. It is also within the district court's discretion to award attorney's fees to prevailing parties in "exceptional cases."

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930-31 (2015) (citations omitted). This is such a case.

Based on the meritless nature of Cellspin's claims and the lack of merit in its arguments in support of those claims, this case "stands out" from others and is thus "exceptional" under the *Octane* framework. *See Octane Fitness*, 134 S. Ct. at 1757 (noting that a case could be exceptional if there exists "subjective bad faith" or "exceptionally meritless claims," but not necessarily both). Cellspin's filing of this case and pursuit of litigation in the face of clear evidence that it could not prevail forced Fitbit to unnecessarily incur attorneys' fees and the Court to unnecessarily devote time and attention to meritless claims. The Court should therefore award Fitbit its attorneys' fees "to deter future 'wasteful litigation' on similarly weak arguments." *See Inventor Holdings*, 876 F.3d at 1377-78.

## V.  CONCLUSION

For the foregoing reasons, Fitbit respectfully requests that this Court grant its Motion, find this case exceptional, and award Fitbit its attorneys' fees of $60,057.94 as well as additional fees incurred by Fitbit through conclusion of this motion. Brun Decl., ¶¶10, 16, 17.

///

Dated: April 24, 2018                                        Respectfully submitted,


                                                            By: /s/ *Shane Brun*
                                                            SHANE BRUN
                                                            RACHEL M. WALSH
                                                            ANJALI MOORTHY
                                                            **GOODWIN PROCTER** LLP
                                                            Three Embarcadero Center
                                                            San Francisco, California 94111
                                                            Tel.: +1 415 733 6000
                                                            Fax.: +1 415 677 9041

                                                            NEEL CHATTERJEE
                                                            *nchatterjee@goodwinlaw.com*
                                                            **GOODWIN PROCTER** LLP
                                                            135 Commonwealth Drive
                                                            Menlo Park, California 94025
                                                            Tel.: +1 650.752.3100
                                                            Fax.: +1 650.853.1038

                                                            *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document including all of its attachments with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **April 24, 2018**. I further certify that service will be accomplished by the CM/ECF system and paper copies shall be served by first class mail, postage prepaid on all counsel who are not served through CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **April 24, 2018**.

/s/ *Shane Brun*
SHANE BRUN