John J. Edmonds (State Bar No. 274200)
    jedmonds@ip-lit.com
COLLINS EDMONDS
**COLLINS, EDMONDS & SCHLATHER, PLLC**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 973-7846
Facsimile: (213) 835-6996

Attorneys for Plaintiff,
CELLSPIN SOFT INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>                    Defendant. | Case No. 4:17-cv-05928-YGR<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 85)**<br><br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>MOOV, INC.,<br><br>                    Defendant. | Case No. 4:17-cv-05929-YGR<br>(RELATED CASE)<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 73)**<br><br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>NIKE, INC.,<br><br>                    Defendant. | Case No. 4:17-cv-05931-YGR<br>(RELATED CASE)<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 73)**<br><br>Judge: Honorable Yvonne G. Rogers |

| | |
|---|---|
| v.<br><br>FOSSIL GROUP, INC. ET AL.,<br><br>          Defendants. | Case No. 4:17-cv-05933-YGR<br>(RELATED CASE)<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 92)**<br><br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>CANON U.S.A., INC.,<br><br>          Defendant. | Case No. 4:17-cv-05938-YGR<br>(RELATED CASE)<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 79)**<br><br>Judge: Honorable Yvonne G. Rogers |
| v.<br><br>GOPRO, INC.,<br><br>          Defendant. | Case No. 4:17-cv-05939-YGR<br>(RELATED CASE)<br><br>**PLAINTIFF CELLSPIN'S RESPONSE TO MOTION FOR ATTORNEY FEES (DOC. 76)**<br><br>Judge: Honorable Yvonne G. Rogers |

Plaintiff, Cellspin Soft, Inc. ("Cellspin"), hereby respectfully submits this Response to the above-noted almost identical Motions for Attorney Fees filed by Defendants Fitbit, Moov, Nike, Fossil, Cannon, and GoPro, in the above-noted related cases. This Response is based on the attached Memorandum of Points and Authorities, the Court's record in this action, including Cellspin's Amended Complaints, the briefing on the instant motions, the briefing and hearing on the underlying Motions to Dismiss under § 101, the patents-in-suit, their prosecution histories, all matters of which the Court may take notice, and any other evidence and oral arguments presented at the hearing of the Motion or requested by the Court. Accordingly, Cellspin hereby respectfully requests this Court enter Orders denying Defendants' Motions for Attorney Fees.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION. .......................................................................................................... 1

II.      FACTUAL BACKGROUND. ........................................................................................ 1

III.      LEGAL PRINCIPLES. ................................................................................................... 3

IV.      ARGUMENT. ................................................................................................................. 5

         A.      DEFENDANTS' MOTIONS ARE PREMATURE, AND THEY SHOULD BE DENIED WITHOUT PREJUDICE, OR, AT A MINIMUM, THE COURT SHOULD DEFER RULING PENDING CELLSPIN'S APPEAL. .......................................................................... 5

         B.      CELLSPIN DID NOT LITIGATE IN AN UNREASONABLE MANNER. ................................................................................................. 5

         C.      CELLSPIN'S BELIEF IN THE PATENTABILITY OF THE ASSERTED CLAIMS, ALTHOUGH UNSUCCESSFUL, WAS IN GOOD FAITH AND WAS NOT OBJECTIVELY UNREASONABLE. ....... 6

         D.      CELLSPIN'S AMENDMENT OF ITS COMPLAINTS IN VIEW OF RECENT FEDERAL CIRCUIT AUTHORITIES WAS, ALTHOUGH UNSUCCESSFUL, A REASONABLE ACTION DONE IN GOOD FAITH. ................................................................................................ 10

         E.      CELLSPIN'S POSITION THAT THE ASSERTED CLAIMS HAD MEANINGFUL LIMITATIONS AND INVENTIVE CONCEPTS WERE, ALTHOUGH UNSUCCESSFUL, REASONABLE POSITIONS MADE IN GOOD FAITH. .............................................................................. 10

         F.      CELLSPIN'S POSITION THAT THE ASSERTED CLAIMS HAD BENEFITS CONSTITUTING IMPROVEMENTS OVER PRIOR ART, WAS, ALTHOUGH UNSUCCESSFUL, A REASONABLE POSITION MADE IN GOOD FAITH. .......................................................... 12

         G.      DEFENDANTS CRITICISMS OF CELLSPIN'S ARGUMENTS AT THE COURT'S HEARING ARE OVERSTATED. .................................... 14

         H.      DEFENDANTS HAVE NOT, BECAUSE THEY CANNOT, POINT TO ANY IMPROPER MOTIVATION OR BAD FAITH BY CELLSPIN, OR ANY "PARTICULAR CIRCUMSTANCES TO ADVANCE CONSIDERATIONS OF COMPENSATION AND DETERRENCE." ...... 15

         I.      THE CASES RELIED UPON BY DEFENDANTS DO NOT SUPPORT THEIR CONTENTION OF EXCEPTIONALITY. ....................................... 16

         J.      EVEN IF THE COURT FINDS THIS CASE TO BE EXCEPTIONAL, WHICH IT IS NOT, NO FEES SHOULD BE AWARDED. ........................ 17

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS' MOTION FOR ATTORNEY FEES]

**Case No.: 4:17-cv-05928-YGR**

K.   TO THE EXTENT THAT THE COURT AWARDS ANY FEES, THEY SHOULD BEAR RELATION TO ANY EXCEPTIONALITY, AND THUS BE MINIMAL. .................................................................. 18

L.   ALTHOUGH DEFENDANTS HAVE NOT YET MADE A FORMAL FEE SUBMISSIONS, WHAT THEY HAVE PUT FORTH SO FAR IS INADEQUATE. ......................................................................... 18

M.   DEFENDANTS' REQUESTS FOR COSTS SHOULD BE DENIED BECAUSE THEY FAILED TO COMPLY WITH LR 54.1. ...................... 19

V.   CONCLUSION ..................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Aatrix Software, Inv. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ...................................................................... 2, 10, 12

*Asghari–Kamrani v. United Servs. Auto. Ass'n*,
  Civ. No. 2:15cv478, 2017 WL 4418424, *12, (E.D. Va. July 27, 2017) ...................... 9

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................................ 2, 10

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ........................................................................................................ 7

*California Institute of Technology v. Hughes Communications Inc.*,
  59 F.Supp.3d 974 (C.D. Cal. 2014) ............................................................................... 9

*Carnegie Mellon Univ. v. Marvell Tech. Group*,
  No. 2:09-cv-00290-NBF, Doc 884 (W.D.Pa. June 26, 2013) ....................................... 5

*Cartner v. Alamo Grp., Inc.*,
  561 Fed. Appx. 958 (Fed. Cir. 2014) .......................................................................... 18

*CertusView Technologies, LLC v. S & N Locating Services, LLC*,
  287 F.Supp.3d 580, 586 (EDVA Feb. 9, 2018) ................................................... 8, 9, 17

*Checkpoint Sys. v. All–Tag*,
  858 F.3d 1371 (Fed. Cir. 2017) ..................................................................................... 1

*CLS Bank Int'l. v. Alice Corp. Pty. Ltd.*,
  717 F.3d 1269, 1304 (Fed. Cir. 2013), *aff'd*, —— U.S. ——, 134 S.Ct. 2347,
  189 L.Ed.2d 296 (2014) ................................................................................................. 7

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  No. 2:12–cv–764, 2015 U.S. Dist. LEXIS 34782 at *8–9, 2015 WL 1284826
  (E.D. Tex. Mar. 20, 2015) .............................................................................................. 8

*DietGoal Innovations, LLC v. Wegmans Food Mkts., Inc.*,
  126 F.Supp.3d 680, 685 (E.D. Va. 2015) ...................................................................... 8

*Erfindergemeinschaft UroPep v. Eli Lilly*,
  2017 WL 3044558 (E.D. Tex. July 18, 2017) ................................................................ 4

*Fleming v. Escort, Inc.*,
  No. 09-CV-105, 2014 WL 713532 (D. Ida. Feb. 21, 2014) ......................................... 18

*Garfum.com Corporation v. Reflections by Ruth*,
  2016 WL 7325467, at *4 (D. N.J. Dec. 16, 2016) .......................................................... 8

*Homeland Housewares LLC v. Sorensen Research & Dev. Trust*,
  581 Fed. Appx. 877, 881 (Fed. Cir. 2014) ..................................................................... 9

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
  576 F. App'x 1002 (Fed. Cir. 2014) ............................................................................. 18

*Intellect Wireless, Inc. v. Sharp Corp.*,
45 F. Supp. 3d 839 (N.D. Ill. 2014) .................................................................................. 18

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*,
2017 WL 4391776 at *7 (W.D. Mo. Sept. 29, 2017) .......................................................... 10

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372, X (Fed. Cir. 2017)................................................................................... 9, 17

*Iris Connex, LLC v. Dell, Inc.*,
235 F.Supp.3d 826 (2017) ............................................................................................... 4, 18

*Luckhard v. Reed*,
481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987)......................................................... 5

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
811 F.3d 479 (Fed. Cir. 2016) .............................................................................................. 18

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012) ................................................................................................ 4

*Mayo Collaborative Services v. Prometheus Laboratories*,
566 U.S. 66 (2012).................................................................................................................. 7

*My Health, Inc. v. ALR Techs., Inc.*,
2017 WL 6512221 at *5, 2017 U.S. Dist. LEXIS 209273 at *15 (E.D. Tex.
Dec. 19, 2017).......................................................................................................................... 9

*Octane Fitness v. Icon Health & Fitness*,
134 S. Ct. 1749 (2014)............................................................................................................ 4

*Recognicorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........................................................................................... 10

*Reed v. Health & Human Servs.*,
774 F.2d 1270 (4th Cir.1985) *rev'd on other grounds sub nom, Luckhard v.
Reed*, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987) .............................................. 5

*Ryde, Ltd. v. Ford Motor co.*,
No. 4:11-cv-00122, Doc. 384 (S.D.Tx June 12, 2013)........................................................... 5

*S.C. Johnson & Son, Inc. v. Carter Wallace, Inc.*,
781 F.2d 198 (Fed. Cir. 1986) ......................................................................................... 4, 18

*Serio-US Indus. v. Plastic Recovery Techs. Corp.*,
459 F .3d 1311 (Fed.Cir.2006) ........................................................................................ 4, 17

*Tranxition, Inc. v. Lenovo*,
664 Fed. Appx. 968, 972 n. 1 (Fed. Cir. 2016)....................................................................... 8

*Vaporstream, Inc. v. Snap Inc.*,
2018 WL 1116530 (C.D. Cal. Feb. 27, 2018) ....................................................................... 3

**Statutes**

35 U.S.C. § 101 ........................................................................................................................ 1

35 U.S.C. § 282 ................................................................................................ 6, 7

35 U.S.C. § 285 ........................................................................................... 3, 4, 17

**Rules**

Fed. R. Civ. P. 54 .................................................................................................. 5

Local Rule 54.1 ................................................................................................... 19

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS' MOTION FOR ATTORNEY FEES]

Case No.: 4:17-cv-05928-YGR

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION.

When patent infringement cases reach rulings on the merits, there is a winner and a loser, but that does not make a case exceptional. "[F]ee awards are not to be used as a penalty for failure to win a patent infringement suit." *Checkpoint Sys. v. All–Tag*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). In the present case, Defendants' arguments for exceptionality are premature and lack merit. They are premature because each related case is currently on appeal in consolidated proceedings before the Federal Circuit, and if there is a reversal, the Motions for Fees will be baseless and moot. Irrespective of the outcome of the appeals, Defendants' arguments lack merit, including because Cellspin's defense of its 35 U.S.C. § 101 position, although unsuccessful, was reasonable, made in good faith, and neither baseless nor frivolous; Cellspin has not acted unreasonably or engaged in any litigation misconduct, and for the other reasons stated herein.

## II.   FACTUAL BACKGROUND.

Established in 2006, Cellspin was a leader in mobile blogging software at the inception of the smartphone era. More recently, much of Cellspin's business operations have ceased, but its intellectual property remains. Cellspin has fifteen U.S. utility patents, including the four patents asserted across these related cases, namely U.S. Patent Nos. 8,738,794 (the "'794 Patent"); 8,892,752 (the "'752 Patent"); 9,749,847 (the "'847 Patent"); and 9,258,698 (the "'698 Patent") (collectively "the Patents-in-Suit" or "the Asserted Patents").

Cellspin filed suit against the above-styled, and other, Defendants on October 17, 2017, and, shortly thereafter, these related cases were assigned to this Court, with the *Fitbit* case being the lowest numbered and thus the lead case. On January 16, 2018, Defendants Fitbit, Moov, Nike, Fossil, Cannon, GoPro, Panasonic, and JKI filed an Omnibus Motion pursuant to Rule 12(b)(6) to dismiss the Complaint, contending that the claims of the Patents-in-Suit were directed to patent-ineligible subject matter under § 101 ("Omnibus Section 101 Motion").[1]

---

[1] The Motion was filed in each respective case as follows: Doc. 31, 4:17-cv-05928 ("*Fitbit* case"); Doc. 21, 4:17-cv-05929 ("*Moov* case"); Doc. 28, 4:17-cv-05931 ("*Nike* case"); Doc. 41,

Similarly, Garmin filed a follow-on 12(c) motion on the same day.

On January 30, 2018, Cellspin filed a Response in opposition to the Omnibus Section 101 Motion and to Garmin's Motion.[2]

On February 16, 2018, Cellspin filed a notice of supplemental authority concerning recent Federal Circuit decisions in *Aatrix Software, Inv. v. Green Shades Software, Inc*., 882 F.3d 1121 (Fed. Cir. 2018) and *Berkheimer v. HP Inc*., 881 F.3d 1360 (Fed. Cir. 2018), which addressed whether factual allegations in a complaint should be taken into account and as true in a subject matter eligibility determination at the Rule 12(b)(6) stage.[3]

Responsive to the new authority provided by the recent *Aatrix* and *Berkheimer* cases, Cellspin filed amended complaints in each related case to, *inter alia*, add in factual assertions relative to § 101 issues.[4]

On March 6, 2018, a hearing was held on the Omnibus Section 101 Motion.[5]

On March 12, 2018, Defendants filed a Supplemental Brief in support of their Omnibus Section 101 Motion, primarily to address the factual allegations made in Cellspin's amended complaints. *See, e.g.,* Doc. 64, *Fitbit* case.

On March 13, 2018, Cellspin and the Defendants filed a stipulation to extend deadlines under the Court's case management order, and, on March 15, 2018, the Court granted the stipulation.[6] In connection with this stipulation, Cellspin withdrew its prior discovery requests

---

4:17-cv-05933 ("*Fossil* case"); Doc. 30, 4:17-cv-05938 ("*Canon* case"); and Doc. 31, 4:17-cv-05939 ("*GoPro* case").

[2] The Response was filed in each respective case as follows: Doc. 38, *Fitbit* case; Doc. 35, *Moov* case; Doc. 34, *Nike* case; Doc. 48, *Fossil* case, Doc. 36, *Canon* case; and Doc. 35, *GoPro* case.

[3] Cellspin's Notice of Supplemental Authority was filed in each respective case as follows: Doc. 48, *Fitbit* case; Doc. 41, *Moov* case; Doc. 40, *Nike* case; Doc. 59, *Fossil* case, Doc. 47, *Canon* case; and Doc. 43, *GoPro* case.

[4] In relevant part substantially identical factual allegations were included in each complaint filed in each respective case as follows: Doc. 50, *Fitbit* case; Doc. 50, *Moov* case; Doc. 49, *Nike* case; Doc. 46, *Fossil* case; Doc. 34 *Canon* case; and Doc. 53, *GoPro* case.

[5] The transcript from the hearing is lodged in each respective case as follows: Doc. 69, *Fitbit* case; Doc. 59, *Moov* case; Doc. 59, *Nike* case; Doc. 77, *Fossil* case, Doc. 65, *Canon* case; and Doc. 62, *GoPro* case. With the consent of the Court, Cellspin's slides which were displayed to the Court at the hearing are lodged in each respective case as follows: Doc. 62, *Fitbit* case; Doc. 52, *Moov* case; Doc. 51, *Nike* case; Doc. 70, *Fossil* case, Doc. 58, *Canon* case; and Doc. 55, *GoPro* case.

[6] Orders granting said stipulations in each respective case are as follows: Doc. 67, *Fitbit* case;

to the Defendants, and all docket control order deadlines were stayed pending this Court's decision on the § 101 motions.

On March 20, 2018, Cellspin filed a notice of supplemental authority concerning a recent decision in *Vaporstream, Inc. v. Snap Inc*., 2018 WL 1116530 (C.D. Cal. Feb. 27, 2018), which related to the issue that breaking apart the asserted claims into their individual elements and analyzing each element in an attempt to show that each individual element, by itself, was well-understood and conventional at the time of the invention fails to conduct a proper ordered combination analysis as part of the *Alice* step two analysis.[7]

On March 20, 2018, Cellspin filed a Response to the Defendant's Supplemental Brief of March 13, 2018.[8]

On April 3, 2018, this Court ruled on the Omnibus Section 101 Motion, and Garmin's Motion, in favor of Defendants. *See, e.g.,* Order at Doc. 79, *Fitbit* case. The Court's ruling also granted Cellspin's motions for leave relative to the filing of Cellspin's Response to the Defendants' Supplemental Brief. *Id.*

On April 10, 2018, the Court entered judgements according to its § 101 ruling.

On April 13, 2018, Cellspin timely filed Notices of Appeal to seek appellate review of this Court's rulings.

On April 24, 2018, each of the six movants filed motions for fees under § 285. Three other successful § 101 movants, namely Garmin, JK Imaging, and Panasonic, did not move for fees under § 285.

## III.   LEGAL PRINCIPLES.

Section 285 of the Patent Act provides that in "exceptional cases" the Court may award reasonable attorney fees to a prevailing party. 35 U.S.C. § 285. The Act does not define

---

Doc. 57, *Moov* case; Doc. 57, *Nike* case; Doc. 75, *Fossil* case, Doc. 63, *Canon* case; and Doc. 60, *GoPro* case.
[7] Cellspin's Notice of Supplemental Authority was filed in each respective case as follows: Doc. 72, *Fitbit* case; Doc. 60, *Moov* case; Doc. 60, *Nike* case; Doc. 78, *Fossil* case, Doc. 66, *Canon* case; and Doc. 63, *GoPro* case.
[8] The Response was filed in each respective case as follows: Doc. 73, *Fitbit* case; Doc. 61, *Moov* case; Doc. 61, *Nike* case; Doc. 79, *Fossil* case, Doc. 67, *Canon* case; and Doc. 64, *GoPro* case.

"exceptional," and, therefore, it is given its ordinary meaning of "uncommon, rare, or not ordinary." *Octane Fitness v. Icon Health & Fitness*, 134 S. Ct. 1749, 1756 (2014). The Supreme Court has defined an "exceptional" case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1755-56. In determining whether a case is "exceptional," courts are to exercise discretion on a "case-by-case" basis and to consider the totality of the circumstances, using a non-exclusive list of factors including: "frivolousness, motivation, objective unreasonableness…and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

*Octane Fitness* gives this Court discretion in considering the totality of the circumstances in determining whether and to what extent to award attorney fees under Section 285. *Iris Connex, LLC v. Dell, Inc*., 235 F.Supp.3d 826, 842 (2017). A fee award under 35 U.S.C. § 285 is a two-step process. *See MarcTec v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). First, the court must determine whether the prevailing party has established that the case is exceptional. Second, the court must determine whether an award of attorneys' fees is appropriate and, if so, determine the amount of the fee award. *Id.* at 915-16; *See Serio-US Indus. v. Plastic Recovery Techs. Corp*., 459 F .3d 1311, 1322 (Fed.Cir.2006) (stating that "the denial of attorney fees is discretionary and 'permits the judge to weigh intangible as well as tangible factors"); *S.C. Johnson & Son, Inc. v. Carter Wallace, Inc*., 781 F.2d 198, 201 (Fed. Cir. 1986) (noting that "[e]ven an exceptional case does not require in all circumstances the award of attorney fees"). Even if this Court concluded that Cellspin's subject matter eligibility position may have been, or even was, weak, that is not a sufficient basis for a fee award. *See, e.g., Erfindergemeinschaft UroPep v. Eli Lilly*, 2017 WL 3044558, *1 (E.D. Tex. July 18, 2017) ("Lilly's positions on those two issues were weak, but not so weak as to render the case 'exceptional' and justify an award of attorney fees.").

An exceptional case determination must find support in a "preponderance of the evidence." *Octane Fitness*, 134 S.Ct. at 1758.

## IV.   ARGUMENT.

### A. DEFENDANTS' MOTIONS ARE PREMATURE, AND THEY SHOULD BE DENIED WITHOUT PREJUDICE, OR, AT A MINIMUM, THE COURT SHOULD DEFER RULING PENDING CELLSPIN'S APPEAL.

Defendants were required to timely file their Motions; however, their Motions assume that the Federal Circuit will not disagree at all with this Court's § 101 determinations. Cellspin of course has the utmost respect for this Court's rulings. Nonetheless, if Cellspin prevails on appeal, then the motions for fees become groundless and/or moot. Including in the interests of fairness and judicial economy, this Court should deny the Defendants' Motions for Fees without prejudice at least until Cellspin's appeal runs its course through final mandate, or, alternatively, this Court should defer ruling on Defendants' Motions until that time. *See, e.g.,* Fed. R. Civ. P. 54, adv. Comm. Note to 1993 amendments ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved."); *Reed v. Health & Human Servs.*, 774 F.2d 1270, 1277 (4th Cir.1985) ("a district court may properly defer ruling [on a petition for attorney's fees] pending ultimate resolution of the merits"), *rev'd on other grounds sub nom, Luckhard v. Reed*, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987); *Carnegie Mellon Univ. v. Marvell Tech. Group*, No. 2:09-cv-00290-NBF, Doc 884 (W.D.Pa. June 26, 2013) ("[T]he appropriate course of action for 'economy of time and effort for itself, for counsel and for litigants' is to deny the instant motion, without prejudice, to be renewed after the case is fully adjudicated before the Federal Circuit and/or further proceeding at the trial level."); *Rydex, Ltd. v. Ford Motor Co.*, No. 4:11-cv-00122, Doc. 384 (S.D.Tx June 12, 2013).

### B. CELLSPIN DID NOT LITIGATE IN AN UNREASONABLE MANNER.

Defendants' sole argument for the attorneys' fees sought is that Cellspin's should have known that it would lose a § 101 challenge to presumptively valid patents based upon certain post-*Alice* case law. In other words, Defendants argue that Cellspin should have acted as its own judge and rule, without any possibility of actual judicial decision-making or appellate

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS, MOTIONS FOR ATTORNEY FEES]

Case No.: 4:17-cv-05928-YGR

review, that its own claimed inventions were unpatentable. Defendants do not identify a single instance of Cellspin, or its lawyers, acting in bad faith at any point during this litigation—much less prove misconduct, or any a pattern of misconduct, so egregious that it could possibly rise to the level of "exceptional." There is no allegation that Cellspin did not perform a proper pre-suit infringement investigation, nor do Defendants even argue that Cellspin acted unreasonably during the litigation. In fact, including under the totality of the circumstances, Cellspin did litigate in a reasonable fashion. Without limitation, after this Court expressed skepticism about the patentability of Cellspin's asserted claims at its § 101 hearing, as noted above, Cellspin promptly stipulated to the withdrawal of its discovery requests and for a stay of all scheduling order deadlines pending a ruling on the § 101 motions. Defendants somewhat criticize Cellspin for filing a Response to their Supplemental Brief; however, Cellspin detailed its justification for filing such a response in its March 26, 2018 submission to the Court;[9] and, as noted above, the Court granted leave for Cellspin to file said Response.

### C. CELLSPIN'S BELIEF IN THE PATENTABILITY OF THE ASSERTED CLAIMS, ALTHOUGH UNSUCCESSFUL, WAS IN GOOD FAITH AND WAS NOT OBJECTIVELY UNREASONABLE.

Notwithstanding Defendants' meritless arguments to the contrary, the starting point for the reasonableness of Cellspin's reasonable belief in its § 101 positions is § 282(a) of the Patent Act, which provides that "[a] patent shall be presumed valid," and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). Including when it filed this case, Cellspin was entitled to rely on the presumption that the Patent Office did its job, and that patent claims issued under the current legal standards are valid when issued. Cellspin owns fifteen (15) U.S. utility patents, including the four (4) patents asserted across these related cases. Cellspin's patents, all of which are entitled "AUTOMATIC MULTIMEDIA UPLOAD FOR PUBLISHING DATA AND MULTIMEDIA CONTENT," have issue dates as follows: (1) 9,900,766, issued

---

[9] This submission was filed in each case as follows: Doc. 76, *Fitbit* case; Doc. 64, *Moov* case; Doc. 64, *Nike* case; Doc. 82, *Fossil* case, Doc. 70, *Canon* case; and Doc. 67, *GoPro* case.

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS, MOTIONS FOR ATTORNEY FEES]

February 20, 2018; (2) 9,749,847, issued August 29, 2017; (3) 9,319,870, issued April 19, 2016; (4) 9,258,698, issued February 9, 2016; (5) 9,226,138, issued December 29, 2015; (6) 8,904,030, issued December 2, 2014; (7) 8,898,260, issued November 25, 2014; (8) 8,892,752, issued November 18, 2014; (9) 8,862,757, issued October 14, 2014; (10) 8,798,539, issued August 5, 2014; (11) 8,762,560, issued June 24, 2014; (12) 8,756,336, issued June 17, 2014; (13) 8,738,794, issued May 27, 2014; (14) 8,700,790, issued April 15, 2014; and (15) 8,392,591, issued March 5, 2013. Edmonds Declaration, ¶ 2. Eleven (11) of these fifteen (15) patents, including three (3) of the four (4) Patents-in-Suit, issued after the Supreme Court's *Alice* decision on June 19, 2014. All of Cellspin's patents issued after the Supreme Court's decisions in *Bilski* and *Mayo*. *See Mayo Collaborative Services v. Prometheus Laboratories*, 566 U.S. 66 (2012); *Bilski v. Kappos*, 561 U.S. 593 (2010). The most recent Cellspin patent issuances were a new patent that issued on February 29, 2018 and the '847 Patent-in-Suit which issued on August 9, 2017, which is after virtually every court precedent relied upon for Cellspin's Patents-in-Suit being unpatentable under § 101. Including in view of the foregoing, it was not unreasonable for Cellspin to conclude that patents issued by the Patent Office under the prevailing standards for patent eligibility were in fact patent eligible. Even if the Court accepted Defendants' erroneous argument that the presumption of validity/eligibility does not apply to Cellspin's patents, which is at odds with the case law cited herein, Cellspin was nonetheless reasonable in believing its asserted claims to be presumptively valid/patentable and in fact valid/patentable.

The statutory presumption of validity created by 35 U.S.C. § 282(a) is recognized by the Federal Circuit as a presumption of validity regarding issues of abstractness. *CLS Bank Int'l. v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1304 (Fed. Cir. 2013)(Lourie, J., Dyk, J., Prost, J., Reyna, J., Wallach, J.,) (concurring) ("it bears remembering that all issued patent claims receive a statutory presumption of validity" ... "[a]nd, as with obviousness and enablement, that presumption applies when § 101 is raised as a basis for invalidity in district court proceedings") (citation omitted); (Rader, C.J., Linn, J., Moore, J., O'Malley, J., concurring-in-part and dissenting-in-part) ("Because we believe the presumption of validity applies to all

challenges to patentability, including those under Section 101 and the exceptions thereto, we find that any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence."), *aff'd*, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014); *see Tranxition, Inc. v. Lenovo,* 664 Fed. Appx. 968, 972 n. 1 (Fed. Cir. 2016) (unpublished) (explaining that the court was not persuaded that the district court was correct that a presumption of validity does not apply). Therefore, this Court should begin with the proposition that the statutory presumption of validity that attaches to a patent does in fact apply to the determination of abstractness under § 101. *CertusView Technologies, LLC v. S & N Locating Services, LLC,* 287 F.Supp.3d 580, 586 (EDVA Feb. 9, 2018) ("[A]s each of the asserted patents were issued after the Supreme Court's decisions in *Bilski* and *Mayo*, and as it was reasonable to assume that the Patent Office was aware of such Supreme Court decisions, it was not unreasonable for CertusView to begin its litigation analysis with the presumption of validity that initially attached to such patents"). *See DietGoal Innovations, LLC v. Wegmans Food Mkts., Inc.*, 126 F.Supp.3d 680, 685 (E.D. Va. 2015) (observing that the first step in an exceptional case finding analysis for § 101 is recognizing the presumption of validity which the patent holder has a right to vigorously enforce); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12–cv–764, 2015 U.S. Dist. LEXIS 34782 at *8–9, 2015 WL 1284826 (E.D. Tex. Mar. 20, 2015) (holding that the issuance of patent after Supreme Court's § 101 decisions constitutes prima facie evidence against argument patent was obviously invalid with reference to such decisions).

The very recent issuance of Cellspin's latest two patents, the claims of which have many similarities to Cellspin's other patents, including the Patents-in-Suit, is "objective evidence" that Cellspin was not unreasonable in believing that its other Patents-in-Suit claimed patent-eligible subject matter. *See CertusView,* 287 F.Supp.3d at 588. *See also Garfum.com Corporation v. Reflections by Ruth,* 2016 WL 7325467, at *4 (D. N.J. Dec. 16, 2016) ("Plaintiff argues that the PTO's allowance of nearly identical claims in this '615 application belies the Court's determination it 'should have been obvious' to Plaintiff that there was no inventive concept in the '618 patent. The Court agrees. As Plaintiff explains, '[g]iven the

USPTO's repeated allowance of nearly identical claims in the '615 Application, Plaintiff believed the strength of its § 101 arguments to be more than sufficient."); *My Health, Inc. v. ALR Techs., Inc.,* 2017 WL 6512221 at *5, 2017 U.S. Dist. LEXIS 209273 at *15 (E.D. Tex. Dec. 19, 2017) (noting the "reluctance to find exceptionality, based in part on the presumption of validity, is not unreasonable when the examiner considered whether the patent was eligible under current § 101 law, as the court in *Garfum.com* emphasized"). Moreover, "[a] patent holder has the right to vigorously enforce its presumptively valid patent." *Homeland Housewares LLC v. Sorensen Research & Dev. Trust*, 581 Fed. Appx. 877, 881 (Fed. Cir. 2014) (unpublished).

To further complicate the situation, the law under § 101 has been correctly criticized for evolving and being unpredictable. *See California Institute of Technology v. Hughes Communications Inc.*, 59 F.Supp.3d 974 (C.D. Cal. 2014) ("The Supreme Court decisions on § 101 often confuse more than they clarify."); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, X (Fed. Cir. 2017) ("… it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo* …"). Former Chief Judge of the Federal Circuit Paul Michel has publicly stated that *Alice* "create[d] a standard that is too vague, too subjective, too unpredictable and impossible to administer in a coherent consistent way."[10] *See also CertusView*, 287 F.Supp.3d at 592-593 (E.D. Va., Feb. 9, 2018) ("an examination of post-*Alice* opinions from the Federal Circuit reflect continued development in this nuanced area of patent law, and this Court, like other district courts, recognizes such evolution… the continued evolution in the governing case law with respect to these type of claims, when considered in conjunction with the Patent Office's issuance of a similar continuation patent post-*Alice*, militates against an exceptional case finding"); *Asghari–Kamrani v. United Servs. Auto. Ass'n,* Civ. No. 2:15cv478, 2017 WL 4418424, *12, (E.D. Va. July 27, 2017) (noting "although Plaintiffs perhaps should have known after *Alice* that their patent was invalid, Plaintiffs also point to case law following *Alice* in which

---

[10] *See* Interview with Judge Michel at http://www.ipwatchdog.com/2014/08/06/judge-michel-says-alice-decision-will-create-total-chaos/id=50696/.

computer-related patents were still being litigated and resolved" and the "Court cannot conclude, in light of the evolving jurisprudence stemming from *Alice* [] that Plaintiffs' litigating position was so baseless as to render this case exceptional"); *Intellectual Ventures II LLC v. Commerce Bancshares, Inc*., 2017 WL 4391776 at *7 (W.D. Mo. Sept. 29, 2017) (collecting cases observing § 101 law was in flux even after *Alice*). It is understandably challenging to assess accurately how a court will rule on a § 101 motion, and Cellspin should not be punished for merely losing on a § 101 ruling where courts often apply § 101 analysis inconsistently in a time where this area of the law is evolving and constantly in flux. . *See Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) (characterizing a 154-word claim to nothing more than "encoding and decoding image data," despite *Enfish* and *McRo* explicitly forbidding such claim over-simplification).

Including based on a presumption of validity and the natural unpredictability of § 101 decisions, Cellspin's view the Patents-in-Suit were directed to patent eligible subject matter under § 101 was reasonable.

### D. CELLSPIN'S AMENDMENT OF ITS COMPLAINTS IN VIEW OF RECENT FEDERAL CIRCUIT AUTHORITIES WAS, ALTHOUGH UNSUCCESSFUL, A REASONABLE ACTION DONE IN GOOD FAITH.

Defendants' criticism of Cellspin for amending its complaints shortly prior to the Court's § 101 hearing is unjustified. As noted in its notice of supplemental authority, recent Federal Circuit decisions in *Aatrix*, 882 F.3d 1121, and *Berkheimer*, 881 F.3d 1360, both of which were decided in February 2018, addressed whether factual allegations in a complaint should be taken into account and as true in a subject matter eligibility determination at the Rule 12(b)(6) stage. Responsive to the new authority provided by the recent *Aatrix* and *Berkheimer* cases, Cellspin filed amended complaints in each case to, *inter alia*, add in factual assertions relative to § 101 issues.[11]

### E. CELLSPIN'S POSITION THAT THE ASSERTED CLAIMS HAD

---

[11] In relevant part, substantially identical factual allegations were included in each complaint filed in each respective case as follows: Doc. 50, *Fitbit* case; Doc. 50, *Moov* case; Doc. 49, *Nike* case; Doc. 46, *Fossil* case; Doc. 34 *Canon* case; and Doc. 53, *GoPro* case.

***MEANINGFUL LIMITATIONS AND INVENTIVE CONCEPTS WERE, ALTHOUGH UNSUCCESSFUL, REASONABLE POSITIONS MADE IN GOOD FAITH.***

The criticism of Cellspin for failing to note inventive concepts in the claims is, respectfully, incorrect. Without limitation, in defense of the Asserted Claims, Cellspin reasonably noted meaningful limitations and inventive concepts including the following: (1) publishing to an internet server of newly captured data from an internet incapable data capture device via an intermediate internet capable mobile device; (2) the data capture device providing event notifications for the newly captured data to the mobile device over an established paired wireless connection; (3) the mobile device polling the capture device for newly captured data over an established paired wireless connection; (4) the capture device providing newly captured data responsive to a request from the application on the mobile device over an established paired wireless connection; (5) the internet incapable data capture device transferring newly captured data to the internet capable mobile device over an established paired wireless connection; (6) applying an Internet protocol (e.g., HTTP) to data, including to newly captured data from a data capture device, on an intermediary mobile device while in transit; and/or (7) utilizing, including for transfer to an internet server, user information stored on an intermediary mobile device in conjunction with new data from the user's wirelessly paired data capture device. *See, e.g.,* pp. 7-8 of § 101 hearing demonstratives at Doc. 62, Fitbit case; Doc. 52, Moov case; Doc. 51, Nike case; Doc. 70, Fossil case, Doc. 58, Canon case; and Doc. 55, GoPro case; *see also* Amended Complaint, ¶¶ 11, 12, 14 & 15 (noting prior inferior technology); and *Id.* at ¶¶ 13, 14, 16, 17, 18(a)-(f), 19, 20, 21 & 22. *See also* pp. 11-14 of Doc. 73*, Fitbit case;* Doc. 61, *Moov case;* Doc. 61, *Nike case;* Doc. 79, *Fossil case,* Doc. 67*, Canon case;* and Doc. 64, *GoPro case*; and p. 2 of Doc. 38, *Fitbit* case; Doc. 35, *Moov* case; Doc. 34, *Nike* case; Doc. 48, *Fossil* case, Doc. 36, *Canon* case; and Doc. 35, *GoPro* case.

Cellspin's Notice of Supplemental Authority was filed in each respective case as follows: Doc. 48, *Fitbit* case; Doc. 41, *Moov* case; Doc. 40, *Nike* case; Doc. 59, *Fossil* case,

Doc. 47, *Canon* case; and Doc. 43, *GoPro* case.

This Court did not find these inventive concepts to be persuasive, in part, because they were not specifically called out in the specification as being inventive concepts. However, Cellspin still reasonably believed, and continues to believe, them to be inventive concepts set forth in the claimed inventions in accordance with the claim language and details of embodiments of those inventions set forth in the specification. Cellspin reasonably cited to evidence of these embodiments in the specification as embodying inventive concepts that Cellspin reasonably believed are embodied by the claimed inventions. In doing so, Cellspin reasonably, but unsuccessfully, relied upon the *Aatrix* case. In *Aatrix*, the Federal Circuit vacated the district court's dismissal under Rule 12(b)(6) for lack of subject matter eligibility under § 101 because the "amended complaint contains allegations that, taken as true, would directly affect the district court's patent eligibility analysis," and these "allegations at a minimum raise factual disputes underlying the § 101 analysis… sufficient to survive an Alice/Mayo analysis at the Rule 12(b)(6) stage." *Aatrix,* 882 F.3d at 1126. Cellspin reasonably, but unsuccessfully believed, that the *Aatrix* case is analogous to this case in that the unrefuted factual allegations in Cellspin's amended complaint,[12] at a minimum, would cause a factual dispute as to whether the claimed invention is conventional or contains an inventive concept. Again, the Court found this to be unpersuasive at least in part because the inventive concepts cited by Cellspin were not called out in the specification as being inventive concepts. Nonetheless, it does not appear that Defendants, or the Court, have taken the position that Cellspin was unreasonable in believing these to be inventive concepts, aside from Cellspin's mis-reliance upon these inventive concepts because they were not called out in the specification.

### F. CELLSPIN'S POSITION THAT THE ASSERTED CLAIMS HAD BENEFITS

---

[12] Defendants have not argued that Cellspin's amended complaints were groundless or otherwise violative of Rule 11. Further, Cellspin does not read the Court's Order granting the Defendants § 101 Motions as holding that Cellspin plead implausible facts; rather, Cellspin reads the Court as not being persuaded by Cellspin's arguments based in part on what it believes in good faith flow from the disclosures of the specification, but admittedly in many cases is not explicitly stated in the specification to be a benefit or improvement of the claimed technology.

### *CONSTITUTING IMPROVEMENTS OVER PRIOR ART, WAS, ALTHOUGH UNSUCCESSFUL, A REASONABLE POSITION MADE IN GOOD FAITH.*

The criticism of Cellspin for failing to note benefits of the claimed inventions is, respectfully, misplaced. Without limitation, in defense of the Asserted Claims, Cellspin reasonably noted benefits of the claimed inventions, including the following: (1) More efficient (*i.e.*, less cumbersome) than prior art (*e.g.*, removable storage media); (2) Improvement over existing technology for sharing, from a data capture device, newly captured data, including in real time and/or during action situations; (3) Increases portability, compatibility, and accessibility of the data captured device with mobile devices by providing novel software (*e.g.*, mobile applications) to facilitate communications between the data capture device and mobile device; (4) Data capture devices leverage the internet capability, user interface, storage capacity, battery capacity, processing speed, and/or processing power of securely paired wireless mobile devices; benefits from this include: (a) Reduces risk to expensive components (e.g., cellular components) when taking data capture devices into action situations; (b) Life and longevity of batteries of data capture devices are increased, including by not having to continually broadcast data, by offloading functions to a mobile device and/or by not having to directly access the internet; (c) Data capture devices are smaller, less complex, more focused on data capture, more efficient, and/or less expensive; (d) Data capture devices require less storage, battery capacity, processing speed, and/or processing capacity; (e) Data capture devices have a simpler, more focused user interface; (f) Better user experiences from any and all of the above; (5) More efficient use of resources (*e.g.*, power, storage, processing, bandwidth) by using event notification, polling, requests/response, and/or related transfer processes for only newly captured data; and/or (6) Avoids need for data capture device to have internet capability and/or capability to use Internet protocols (*e.g.*, HTTP). *See, e.g.*, pp. 9-11 of § 101 hearing demonstratives at Doc. 62, *Fitbit* case; Doc. 52, *Moov* case; Doc. 51, *Nike* case; Doc. 70, *Fossil* case, Doc. 58, *Canon* case; and Doc. 55, *GoPro* case; *see also* Amended

Complaint, ¶¶ 13, 14, 16, 17, 18(a)-(f), 19, 20, 21 & 22;[13] pp. 3-5 of Doc. 73, *Fitbit case;* Doc. 61, *Moov case;* Doc. 61, *Nike case;* Doc. 79, *Fossil case,* Doc. 67, *Canon case;* and Doc. 64, *GoPro case*; and *See also* pp. 2 & 23 0of Doc. 73, *Fitbit case;* Doc. 61, *Moov case;* Doc. 61, *Nike case;* Doc. 79, *Fossil case,* Doc. 67, *Canon case;* and Doc. 64, *GoPro case*; and p. 2 of Doc. 38, *Fitbit* case; Doc. 35, *Moov* case; Doc. 34, *Nike* case; Doc. 48, *Fossil* case, Doc. 36, *Canon* case; and Doc. 35, *GoPro* case.

This Court did not find these improvements/benefits to be persuasive, in part, because they were not specifically called out in the specification as being improvements/benefits. However, Cellspin still reasonably believed them to be improvements/benefits set forth in the claimed inventions in accordance with the clai0m language and details of embodiments of those inventions set forth in the specification. Cellspin reasonably cited to evidence of these embodiments in the specification as embodying improvements and benefits that Cellspin reasonably believed to flow from the claimed invention. In doing so, Cellspin reasonably, but unsuccessfully, relied upon the *Aatrix* case. Cellspin reasonably, but unsuccessfully believed, that the *Aatrix* case is analogous to this case in that unrefuted factual allegations in Cellspin's amended complaint, at a minimum, would cause a factual dispute as to whether the claimed invention is conventional or contains an inventive concept. Again, the Court found this to be unpersuasive at least in part because the improvements/benefits cited by Cellspin were not called out in the specification as being improvements/benefits. Nonetheless, it does not appear that Defendants, or the Court, have taken the position that Cellspin was unreasonable in believing these to be improvements/benefits, aside from Cellspin's mis-reliance upon these improvements/benefits because they were not called out in the specification.

### G. DEFENDANTS CRITICISMS OF CELLSPIN'S ARGUMENTS AT THE COURT'S HEARING ARE OVERSTATED.

Cellspin came to the Court's hearing armed with facts and arguments, including those

---

[13] Specific paragraph references herein are to the Amended Complaint filed in the *Fitbit* case, which has the lowest case number for these related cases. The referenced statements from the March 2nd Amended Complaint in the Fitbit case are found verbatim in the March 2nd Amended Complaints filed in the other related cases.

set forth in its hearing presentation to the Court. *See* Doc. 62, *Fitbit* case; Doc. 52, *Moov* case; Doc. 51, *Nike* case; Doc. 70, *Fossil* case, Doc. 58, *Canon* case; and Doc. 55, *GoPro* case. In multiple instances, counsel for Cellspin referred to the matters clearly and succinctly set forth on the presentation being displayed to the Court, rather than repeating them. *See, e.g.,* EXHIBIT 2, 19:20 – 20:2 ("If the Court concluded that step 1 was met, then the meaningful limitations that the Court was asking about, we have listed them on slide 7 and slide 8"); 23:15-24:2 ("… and the distillation of the claims, which is in slide 6 and I've state in the record, that would be a proper distillation of the claims"); 27:14-28:23 ("It teaches methods, systems and apparatuses, and computer removeable media that comprise what we have distilled as this – a specific type of publishing of newly captured data, not just the steps … all these inventive elements that are distilled have to be looked at together…"); 38:7 – 39:16 ("So benefits over existing art … these are in our brief, they're also in our Complaint, and we've also tried to distill them for the Court here on these slides, so I would direct the Court to slide 9…"); 47:21-50-14 ("…[COURT] So two minutes… MR. EDMONDS: Okay. So as we have laid out in … including in slides 12 and 13, we have technical solutions for improved network architecture."). *See also id.* at 51:19-22. Counsel could have articulated more from what was succinctly listed on the hearing presentation that had been prepared for the Court, but the Court made clear that it was reading what was being displayed and described in part verbally. *Id.* at 30:11-20 & 48:2-9. In any event, although Cellspin's submissions and arguments were unsuccessful, Defendants' suggestion that "Cellspin could not articulate why its claims are not directed to the abstract idea of acquiring, transferring, and publishing data and multimedia content on one or more websites," which is based upon their unduly selective parsing of the record, is simply at odds with the totality of the briefing and arguments submitted by Cellspin, including as noted herein.

## H. DEFENDANTS HAVE NOT, BECAUSE THEY CANNOT, POINT TO ANY IMPROPER MOTIVATION OR BAD FAITH BY CELLSPIN, OR ANY "PARTICULAR CIRCUMSTANCES TO ADVANCE CONSIDERATIONS OF COMPENSATION AND DETERRENCE."

Defendants have not, because they cannot, point to any improper motivation or bad faith in Cellspin's bringing suit. *See CertusView*, 287 F.Supp.3d 580, 599 (E.D.Va Feb. 9, 2018) ("While it is true that CertusView has aggressively argued for patent eligibility in an evolving area of the law, the Court was not presented with any persuasive evidence that such arguments were improperly motivated."). Moreover, there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith," *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010); *Hopkins Mfg. Corp. v. Cequent Performance Prods*., 2017 U.S. Dist. LEXIS 107997 at *21 (D. Kan. July 5, 2017) ("motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive," as a "patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive."). In fact, as noted above, Cellspin's actions were prompt, prudent, and reasonable. Further, Defendants have not, because they cannot, point to any "particular circumstances to advance considerations of compensation and deterrence" that favor exceptionality or a fee award. Nothing in the balance of equities of this case merits exceptionality or a fee award.

## I. THE CASES RELIED UPON BY DEFENDANTS DO NOT SUPPORT THEIR CONTENTION OF EXCEPTIONALITY.

Defendants' reliance upon various Court decisions to argue that Cellspin's positions, although admittedly unsuccessful, were also somehow unreasonable or wholly meritless, is unpersuasive. The opinions relied upon by Defendants depend at least in large part upon whether there were inventive concepts that added "something more" to claims found to be abstract, and each is reliant upon its particular facts. None of the cases relied upon by Defendants is sufficiently on point to be dispositive of their allegation that Cellspin was objectively unreasonable in contending the asserted claims to be patentable under § 101. In this case and in many other cases, reasonable minds could (and did) differ over the proper application of the *Mayo/Alice* test.

Defendants' reliance upon the *Inventor Holdings* case is particularly misplaced. Unlike

in *Inventor Holdings*, where the court found the claims "objectively ineligible" because they were nearly identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*, there were no governing precedents in this case that found nearly identical claims invalid. *Inventor Holdings*, 876 F.3d at 1379. The absence of similar precedents certainly militates against a finding that Cellspin acted in an objectively unreasonable manner in litigating its claims. *See CertusView,* 287 F.Supp.3d at 591. Further, unlike in *Inventor Holdings* where the patent issued before *Bilski*, *Mayo*, and *Alice*, all of the claims here issued after *Bilski* and *Mayo*, and most of them issued after *Alice,* and were therefore entitled to a presumption of validity/eligibility under the current legal standard for patent eligibility. *Id.*

Defendants' reliance upon the *MyHealth* case is also misplaced. *See My Health, Inc. v. ALR Technologies, Inc.*, 2017 WL 6512221, *4-5 (E.D. Tex. 2017). The claims of the Patents-in-Suit are not in "stark contrast" to those found in *Enfish* and *McRo* as suggested by Defendants. *See, id.* In *My Health*, the Court found the case to be "exceptional" due to the claims "stark contrast" to the claims in cases like *Enfish* that found a "specific improvement to the way computers operate," the extensive 5-year litigation campaign with 31 lawsuits and no determination on the merits, consistent "nuisance" value settlements, and "troubling" litigation tactics not present in this case. *See My Health*, 2017 WL 6512221, at *4-*6. The reasoning in *My Health* supporting a finding of exceptionality is not present in this case. Cellspin was never accused of, nor used, troubling litigation tactics, did not have an excessive litigation campaign to induce nuisance value settlements, and Cellspin has reasonably, although unsuccessfully, set forth that the claims of the Patents-in-Suit do make specific improvements to the way computers operate, namely improvements in wireless communication technology noted previously and herein.

### J. EVEN IF THE COURT FINDS THIS CASE TO BE EXCEPTIONAL, WHICH IT IS NOT, NO FEES SHOULD BE AWARDED.

Even where a case is found to be exceptional, section 285 does not require this Court to award fees. 35 U.S.C. § 285 ("The court in exceptional cases *may* award reasonable attorney fees to the prevailing party.") (emphasis added); *see Serio-US Indus.* 459 F .3d at 1322 (stating

that "the denial of attorney fees is discretionary and 'permits the judge to weigh intangible as well as tangible factors")"; *S.C. Johnson & Son,* , 781 F.2d at 201 (noting that "[e]van an exceptional case does not require in all circumstances the award of attorney fees"); *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) (explaining that the Supreme Court's decision in *Octane* did not revoke the discretion to deny fee awards even in exceptional cases). Thus, even if this Court finds this case to be exceptional, Defendants have shown no cause or equities for a fee award.

### K. TO THE EXTENT THAT THE COURT AWARDS ANY FEES, THEY SHOULD BEAR RELATION TO ANY EXCEPTIONALITY, AND THUS BE MINIMAL.

"The purpose of Section 285 is not to punish the losing party, but rather, to compensate the prevailing party for the costs incurred due to the losing party's 'unreasonable conduct.'" *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014). Thus, the Federal Circuit held in *Cartner* that an attorneys' fee award under § 285 must bear some relation to the extent of the misconduct and so may only compensate a party for the extra-legal effort to counteract the misconduct. *Cartner v. Alamo Grp., Inc.*, 561 Fed. Appx. 958, 963 (Fed. Cir. 2014). *See also Fleming v. Escort, Inc.*, 2014 WL 713532, *2 (D. Ida. Feb. 21, 2014). Defendants make no meaningful attempt to quantify fees related to any purported "extra-legal effort" resulting from any particular conduct by Cellspin in this case, but rather a blanket statement that "Cellspin should never have filed this lawsuit in the first place." *See, e.g.,* Doc 85, *Fitbit* case, at p.19. At most, even if this Court determined exceptionality, a proper fee award would extend no further that fees incurred in connection with briefing and arguing Defendants' Omnibus § 101 Motion.

### L. ALTHOUGH DEFENDANTS HAVE NOT YET MADE A FORMAL FEE SUBMISSIONS, WHAT THEY HAVE PUT FORTH SO FAR IS INADEQUATE.

An award of fees under Section 285 is typically calculated by "multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case," *i.e.*, the "lodestar" method. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016); *Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826, 843 (2017). Although

Defendants have not yet made formal fee submissions, what they have put forth so far is inadequate. For example, the Brune Declarations (Docs. 85-2, 88, *Fitbit* case) submitted with Fitbit's Motion allege "Total Costs and Fees" with minimal details such as time spent and hourly billing rates with no attempt to correlate the time spent on specific tasks, namely the time spent on § 101 related matters, or furnish a reasonably redacted client bill. All of Defendants' Motions equally fail to provide adequate details of the attorneys' fees sought, such as time spent associated with specific tasks, namely litigating the § 101 determination, or offering a client's actual final bill. *See* Brune Declarations (Docs. 73-2, 76, *Moov* case); Mulloy Declaration (Doc. 73-1, *Nike* case); Conrad Declaration (Doc. 92, Ex. B, *Fossil* case); Ung Declaration (Doc. 79-1, *Canon* case) and Goldstein Declaration (Doc. 84, *Canon* case); Khachatourian Declarations (Docs. 77, 80, *GoPro* case).

### M. DEFENDANTS' REQUESTS FOR COSTS SHOULD BE DENIED BECAUSE THEY FAILED TO COMPLY WITH LR 54.1.

Pursuant to L.R. 54.1, "No later than 14 days after entry of judgment or order under which costs may be claimed, a prevailing party claiming taxable costs must serve and file a bill of costs." However, to date Defendants have not filed any bill of costs, much less doing so within 14 days of the Court's judgment dated April 10, 2018. The off-hand request for costs in Defendants' Motions does not comply with the requirement for filing a bill of costs.

### V.    CONCLUSION.

Defendants have failed to establish that this case is one of those "rare case[s]" that should be deemed "exceptional." *Octane Fitness*, 134 S. Ct. at 1757. Rather, it falls within the non-exceptional category of cases where the ultimate merits were determined through the rigors of the litigation process and considered in light of evolving legal standards that are highly conceptual and nuanced. Including for the reasons noted herein, Defendants have not proven by a preponderance of the evidence entitlement to their requested fee awards under the totality of the circumstances, and their Motions for Attorney Fees should be denied in all respects.

1   Dated: May 16, 2018           **COLLINS EDMONDS & SCHLATHER, PLLC**

2

3                   By:  */s/ John J. Edmonds*
                            JOHN J. EDMONDS

4                          State Bar No. 274200

5                          *Attorneys for Plaintiff,*
                          *CELLSPIN SOFT INC.*

6   Of counsel:

7   Brandon G. Moore (*pro hac vice*)
     bmoore@ip-lit.com

8   Shea N. Palavan (*pro hac vice*)
     spalavan@ip-lit.com

9   **COLLINS EDMONDS & SCHLATHER, PLLC**
   1616 South Voss Road, Suite 125

10  Houston, Texas 77057
   Telephone: (713) 364-5291

11  Facsimile: (832) 415-2535

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS, MOTIONS FOR ATTORNEY FEES]

1
2

## CERTIFICATE OF SERVICE

3

I hereby certify that I electronically filed the foregoing document including all of its

4

attachments with the Clerk of the Court for the United States District Court of the Northern

5

District of California by using the CM/ECF system on May 16, 2018. I further certify that

6

service will be accomplished by the CM/ECF system and paper copies shall be served by first

7

class mail, postage prepaid on all counsel who are not served through CM/ECF system.

8

I certify user penalty of perjury that the foregoing is true and correct.

9

May 16, 2018                                          */s/ John J. Edmonds*
                                                       John J. Edmonds

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PLAINTIFF CELLSPIN'S RESPONSE TO DEFENDANTS, MOTIONS FOR ATTORNEY FEES]