SHANE BRUN (SBN 179079)
*sbrun@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*rwalsh@goodwinlaw.com*
ANJALI MOORTHY (SBN 299963)
*amoorthy@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

NEEL CHATTERJEE (SBN 173985)
*nchatterjee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650.752.3100
Fax.: +1 650.853.1038

Attorneys for Defendant
FITBIT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC., | Case No. 4:17-cv-05928-YGR |
| Plaintiff, | **DEFENDANT FITBIT, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |
| v. | |
| FITBIT, INC., | Date:     June 12, 2018 |
| Defendant. | Time:     1:00 p.m. |
| | Dept.:    Courtroom 1, 4th Floor |
| | Judge:    Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION. ................................................................................................ 1

II.     CELLSPIN'S POSITION WAS NOT REASONABLE BECAUSE ITS CLAIMS
        WERE EXCEPTIONALLY MERITLESS. ............................................................ 2

III.    THE "INVENTIVE CONCEPTIONS" AND "BENEFITS" IDENTIFIED BY
        CELLSPIN WERE EXCEPTIONALLY MERITLESS AND UNREASONABLE. ......... 4

IV.     THIS CASE IS NO DIFFERENT THAN OTHERS AWARDING ATTORNEYS'
        FEES FOR ASSERTING INELIGIBLE PATENTS. .................................................. 6

V.      FITBIT'S MOTION SHOULD BE DECIDED NOW. ............................................... 8

VI.     CONCLUSION. .................................................................................................... 10

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) .................................................................................5

5

*Apple Inc. v. Samsung Electronics Co.*,
   No. 11-CV-01846-LHK, 2014 WL 4745933 (N.D. Cal. Sept. 19, 2014) ................9

6

7

*Brightedge Techs., Inc. v. Searchmetrics, GmbH*,
   No. 14-CV-01009-HSG, 2018 WL 489037 (N.D. Cal. Jan. 19, 2018) ....................2

8

*Castillo-Antonio v. Iqbal*,
   No. 14-CV-03316-KAW, 2017 WL 1113300 (N.D. Cal. Mar. 24, 2017) ................8

9

10

*Cellspin Soft, Inc. v. Nike, Inc.*,
   No. 17-cv-05931-YGR (N.D. Cal., May 22, 2018) ................................................1

11

*Collarity, Inc. v. Google Inc.*,
   No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015) ............................3

12

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ................................................................................................3

13

14

*EDekka LLC v. 3balls.com, Inc.*,
   No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) .......... 2, 5, 6

15

*Electric Power Group LLC v. Alston S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ..........................................................................4, 6

16

17

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co. Ltd.*,
   No. 3:16-CV-02787-WHO, 2016 WL 6834614 (N.D. Cal. Nov. 21, 2016)........ 2, 3

18

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) .............................................................................4

19

20

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) ....................................................................*passim*

21

*MacroPoint, LLC v. FourKites, Inc.*,
   No. 1:15-cv-1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015),
   *affirmed*, 671 Fed. Appx. 780 (Fed. Cir. Dec. 8, 2016) ..........................................3

22

23

*Masalosalo v. Stonewall Ins. Co.*,
   718 F.2d 955 (9th Cir. 1983) ..................................................................................8

24

25

*Modern Telecom Sys. LLC v. Lenovo Grp. Ltd.*,
   No. 14-CV-141266, 2015 WL 12720303 (C.D. Cal. Mar. 17, 2015) .....................3

26

*My Health, Inc. v. ALR Techs.*,
   No. 2:16-cv-535, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017).................... 2, 7, 9

27

28

ii

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ............................................................................................................. 2

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-CV-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ................................... 2

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*,
   858 F.3d 1383 (Fed. Cir. 2017) ............................................................................................... 6

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ............................................................................................... 8

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................................................. 6

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
   No. 3:12-CV-01065-HZ, 2015 WL 4203469 (D. Or. July 9, 2015) ........................................ 3

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) .......................................................... 2

*Xu v. Yamanaka*,
   No. 13-CV-3240 YGR, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014) .................................... 9

*Zimmers v. Eaton Corp.*,
   No. 2:15-CV-2398, 2016 WL 4094870 (S.D. Ohio Aug. 2, 2016) .......................................... 4

**Statutes**

35 U.S.C. § 101 ................................................................................................................*passim*

35 U.S.C. § 285 ................................................................................................................... 1, 4

**Other Authorities**

Local Rule 54-5(b) ................................................................................................................... 9

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

## I.    INTRODUCTION.[1]

Cellspin Soft, Inc's ("Cellspin") opposition to Fitbit, Inc.'s ("Fitbit") Motion for Attorneys' Fees (Dkt. No. 85) confirms that this case is exceptional.  In an effort to support its position that filing more than a dozen lawsuits asserting four ineligible patents was not objectively unreasonable, Cellspin continues to advance meritless arguments and cite inapposite case law.  For example, Cellspin relies on the presumption of validity to support its claims, but that presumption is inapplicable in the Section 101 analysis.  Moreover, any reasonable litigant would have determined that Cellspin's ineligible patent claims are no different from the line of Federal Circuit cases holding analogous data manipulation claims to be ineligible.  Cellspin simply chose to ignore this precedent.  Finally, Cellspin's contention that Fitbit's motion is premature is without merit.  The Court should decide Fitbit's Motion for Attorneys' Fees now while the facts and issues are still fresh, and to avoid additional proceedings following resolution of Cellspin's appeal.

Fitbit incurred significant fees in defending itself against an infringement suit that never should have been filed.  And while this case should not have been filed in the first place, Cellspin also had an ongoing obligation to assess the strength of its litigation position as the litigation proceeded, but it did not do so.  Instead, Cellspin continued to aggressively litigate its case against the weight of controlling legal authority:  Cellspin amended its complaint in the eleventh hour with allegations "pulled out of thin air" in an effort to save its case, and continued to demand discovery from Fitbit until after the Court's hearing on the Omnibus Section 101 Motion, all of which further increased the cost of the litigation.  Under the totality of circumstances, Fitbit is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees.

---

[1] For the Court's ease of reference, this reply brief is substantially similar to the reply brief filed by Nike, Inc. earlier today in a related action.  *See* Def.'s Reply Br., *Cellspin Soft, Inc. v. Nike, Inc.*, No. 17-cv-05931-YGR (N.D. Cal., May 22, 2018) (Dkt. No. 78).

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

II.     **CELLSPIN'S POSITION WAS NOT REASONABLE BECAUSE ITS CLAIMS WERE EXCEPTIONALLY MERITLESS.**

Cellspin's opposition focuses primarily on its purported "good faith" in filing its lawsuits against Fitbit and the other defendants.  Opp. at 6-13.  However, the law is clear that a case can be exceptional if there exists <u>either</u> "subjective bad faith" <u>or</u> "exceptionally meritless claims." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014).  Because Cellspin's claims were exceptionally meritless, it is irrelevant whether Cellspin believes it acted in "good faith."  *See My Health, Inc. v. ALR Techs.*, No. 2:16-cv-535, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017) ("The weakness in My Health's §101 position is by itself a sufficient basis for finding the case[] exceptional .").  Indeed, declaring a case exceptional "based solely on a party's weak position regarding patent eligibility 'is necessary to deter wasteful litigation in the future.'" *Id.* (quoting *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017)); *EDekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) ("The Court finds that eDekka repeatedly offered unsupportable arguments on behalf of an obviously weak patent . . . . In these particular and focused circumstances, the Court identifies a clear need to advance considerations of deterrence.").

Cellspin's argument that this case cannot be exceptional because it relied on the presumption of validity is likewise without merit.  Opp. at 6-9.  While patents are presumed valid, they are not presumed <u>eligible under Section 101</u>.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus") (citation omitted).  Indeed, courts within this district and others within the 9th Circuit have found "no [] presumption of eligibility applies in the section 101 calculus.'" *See, e.g., OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (stating "the Federal Circuit has made it clear that 'while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus'") (citation omitted); *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, No. 14-CV-01009-HSG, 2018 WL 489037, at *1 (N.D. Cal. Jan. 19, 2018) (same);  *Huawei*

1    *Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, No. 3:16-CV-02787-WHO, 2016 WL 6834614, at *5

2    n.3 (N.D. Cal. Nov. 21, 2016) (same); *Modern Telecom Sys. LLC v. Lenovo Grp. Ltd.*, No. 14-CV-

3    141266, 2015 WL 12720303, at *6 (C.D. Cal. Mar. 17, 2015) (same); *Tranxition, Inc. v. Lenovo*

4    *(U.S.) Inc.*, No. 3:12-CV-01065-HZ, 2015 WL 4203469, at *4 (D. Or. July 9, 2015) ("[T]he

5    Federal Circuit has explained that the presumption of validity is now 'unwarranted' when

6    'assessing whether claims meet the demands of Section 101.'").  This is because validity and

7    eligibility are separate inquiries.  *See, e.g., Diamond v. Diehr*, 450 U.S. 175, 190 (1981) ("The

8    question therefore of whether a particular invention is novel is wholly apart from whether the

9    invention falls in a category of statutory subject matter.").[2]

10         Because the presumption of validity does not apply to subject matter eligibility under

11   Section 101, Cellspin cannot rely on this argument to claim its position was not unreasonable.

12   Similarly, the "recent issuance of Cellspin's latest two [non-asserted] patents" is not "objective

13   evidence" that the patents it did assert were eligible under Section 101.  The fact that some of

14   Cellspin's patents issued after *Alice* does not mean that Cellspin's position was objectively

15   reasonable.  *See, e.g., Collarity, Inc. v. Google Inc*., No. 11-1103-MPT, 2015 WL 7597413, at *11

16   (D. Del. Nov. 25, 2015, Order) (rejecting patent owner's argument that the asserted patent should

17   not be found invalid under § 101 because the USPTO issued a related patent after the *Alice*

18   decision and noting that "[w]hether a claim is drawn to patent-eligible subject matter under 35

19   U.S.C. § 101 is a threshold inquiry to be determined as a matter of law [by the district court] in

20   establishing the validity of the patent" (alteration in original, quotation omitted)); *see also*

21   *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov.

22   6, 2015), *affirmed*, 671 Fed. Appx. 780 (Fed. Cir. Dec. 8, 2016) ("Contrary to plaintiff's argument,

23   the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-

---

24   [2] Cellspin's reliance on dicta from the *Alice* Federal Circuit decision concurring opinions and a

25   footnote in a non-precedential Federal Circuit opinion to support its argument only underscores
     the weakness in Cellspin's position on this issue.  Opp. at 7-8.  Likewise, Cellspin's reliance on

26   three district court opinions from other jurisdictions that directly contradict the conclusions in
     several decisions from this district and others within the 9th Circuit regarding a presumption of

27   eligibility under Section 101 reinforces Cellspin's failure to conduct a diligent inquiry regarding
     the legal merits of its claims and arguments.

28

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

CASE NO. 4:17-CV-05928-YGR

suit does not mandate a finding that the patents are valid."); *Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, *4 n.1 (S.D. Ohio Aug. 2, 2016) (granting judgment on the pleadings that patents issued post-*Alice* were patent-ineligible under § 101).  Moreover, Cellspin makes no attempt to explain how (or if) the claims of the newly issued patents are like the claims that this Court found directed to unpatentable subject matter such that it would make Cellspin's subjective beliefs regarding the Asserted Patents more reasonable.

Finally, Cellspin's attempt to argue that its position was not meritless because Section 101 law is "evolving" and "unpredictable" is without merit.  The Federal Circuit has recognized that although it is "sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo*, there is no uncertainty in applying the principles set out in *Alice* to reach the conclusion that [certain patents' claims] are ineligible."  *Inventor Holdings*, 876 F.3d at 1379.  Indeed, just like the claims in *Inventor Holdings*, the claims in Cellspin's patents clearly fell within the realm of subject matter the Federal Circuit has found ineligible.  *Id.*  There is no "flux" or uncertainty in the law that claims that merely recite acquiring, transferring, and publishing data, are abstract ideas that are not patentable under Section 101.  *See, e.g., Electric Power Group LLC v. Alston S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (rejecting claims "clearly focused on the combination of . . . abstract-idea processes" such as "collecting information," "analyzing information," and "presenting the results of abstract processes of collecting and analyzing information"); *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (claim "directed to . . . collecting, displaying, and manipulating data" is abstract).  Cellspin's claims were exceptionally weak, there was no reasonable basis for pursuing its lawsuits, and the Court's should find this case exceptional under 35 U.S.C. § 285.

## III.    THE "INVENTIVE CONCEPTIONS" AND "BENEFITS" IDENTIFIED BY CELLSPIN WERE EXCEPTIONALLY MERITLESS AND UNREASONABLE.

Cellspin relays a long list of allegedly inventive concepts and benefits found in the claims as evidence its position had merit, but its argument is devoid of any citations to the patent itself.  Opp. at 11, 13**.**  Indeed, Cellspin acknowledges that these alleged inventive concepts and benefits

4

were rejected by the Court because they were not "called out in the specification." *Id.* at 12, 14. Cellspin instead points to its demonstratives used at the hearing on Defendants' Motion to Dismiss and its unsupported allegations in the amended complaint. *Id*. at 11, 13. Cellspin's circular reasoning and reliance on its unsupported positions does not prevent its position from being exceptionally meritless.

Cellspin's reliance on *Aatrix Software* is likewise misplaced. *See* Opp. at 12, 14 . In that case, there were "concrete allegations" that the invention was not conventional and that the invention was an "improvement to the functioning of the computer." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Specifically, the "specification describe[d] the structure" of the inventive "data file" in the patent claims, "including the 'forms index file' that 'provides the vendor application with information on the forms available to the program.'" *Id*. at 1129. Moreover, the defendant "conceded that nothing in the specification describe[d] this importation of data as conventional." *Id.* In light of the description in the specification and the "data file" in the claims, along with plaintiff's allegations and a potential claim construction dispute regarding the term "data file," the Federal Circuit determined that there were issues of fact preventing dismissal. *Id*. at 1129-30.

In contrast, Cellspin's allegations regarding the alleged invention's benefits of reduced power consumption through a "low power state," improved battery life, and reduced cost find no support in the Asserted Patents. *See* Dkt. No. 85 at 18. Where Cellspin did provide citations to the Asserted Patents, the citations only confirm that its allegations were divorced from what is actually disclosed in the specification and what is actually covered by the asserted claims. *Id.* at 17. Cellspin's continued reliance on *Aatrix* is misplaced because Cellspin's allegations regarding the alleged inventive concepts in the Asserted Patents were neither "concrete" nor tied to anything in the patent claims or specification. Rather, as the Court correctly observed, they were pulled out of thin air. Dkt. No. 85-1, Ex. A. .

Cellspin's continued reliance on these unsupported inventive concepts only confirms the unreasonableness of its position, and that this case is exceptional. *See eDekka*, 2015 WL 9225038, at *3 ("However, rather than acknowledging the inherent weaknesses of the '674 patent,

5

1    eDekka proffered completely untenable arguments to the Court throughout the 101 briefing

2    process and at the September 10, 2015 hearing."); *Rothschild Connected Devices Innovations,*

3    *LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (reversing denial

4    of attorneys' fees based in part on plaintiff's counsel's and founder's conclusory and unsupported

5    statements concerning the validity of the asserted patent).

6    **IV.    THIS CASE IS NO DIFFERENT THAN OTHERS AWARDING ATTORNEYS'**
     **FEES FOR ASSERTING INELIGIBLE PATENTS.**

7

8          Cellspin is wrong that the *MyHealth* and *Inventor Holdings* cases cited in Defendants'

9    Motions are distinguishable from the current case.[3] First, like the claims in *Inventor Holdings*,

10   there is no uncertainty or difficulty in applying the principles set out by the Supreme Court in

11   *Alice* and by the Federal Circuit in numerous cases to reach the conclusion that Cellspin's patent

12   claims are ineligible. *Inventor Holdings*, 876 F.3d at 1379. And contrary to Cellspin's assertion,

13   there is no requirement that the analysis involve analogizing "nearly identical" claims found to be

14   patent ineligible—in fact, the claims in *Inventor Holdings* were not "nearly identical to the

15   financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*." (Opp. at 16-

16   17.). The claims in *Inventor Holdings* related to a method of purchasing goods at a local point-of-

17   sale system from a remote seller, *Inventor Holdings*, 876 F.3d at 1374, whereas the claims in *Alice*

18   related to a computerized scheme for mitigating settlement risk, *Alice*, 134 S. Ct. at 2352.

19   Regardless, the court found that the *Inventor Holdings* claims were just as abstract as those in

20   *Alice* because both were directed to a fundamental economic practice. *Inventor Holdings*, 876

21   F.3d at 1379. Here, the Cellspin claims were directed to acquiring, transferring, and publishing

22   data, and were unpatentable just like analogous claims in *In re TLI Commc'ns LLC Patent Litig.*,

23   823 F.3d 607, 612 (Fed. Cir. 2016) and *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350,

24   1351 (Fed. Cir. 2016). Cellspin's litigation position was exceptionally weak because no

25   reasonable litigant could believe that Cellspin's claims—which implement generic components  in

26

27        [3] Cellspin does not try to distinguish *Edekka LLC v. 3balls.com, Inc.* 15-cv-541, 2015 WL
     9225038, at *4-5 (E.D. Tex. Dec. 17, 2015), which also found the case exceptional and awarded

28   fees based on the plaintiff's "unreasonable § 101 positions."

6

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

1  a conventional manner to acquire, transfer, and publish data—would withstand a Section 101

2  challenge.

3     Second, both the claims in *My Health* and the claims here were in "stark contrast" to those

4  in *Enfish* and *McRO*, which involved claims directed to "specific improvements" in computer

5  capabilities.  *See My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-535, 2017 WL 6512221, at *4

6  (E.D. Tex. Dec. 19, 2017) (finding case exceptional in part due to the weakness of plaintiff's § 101

7  position in light of "[t]he numerous cases invalidating claims directed to information collection

8  and analysis" and the asserted claims' "stark contrast" to the "handful of cases" like *Enfish*, which

9  found a specific improvement to the way computers operate); Dkt No. 79 at 13 ("Unlike *Enfish*,

10 the '794 Patent does not recite a 'specific . . . structure' of computer components to carry out the

11 purported improvement in computer functionality. ); *Id.* at 14 ("Here, by contrast [to *McRO*], the

12 asserted claims perform the same process of acquiring, transferring, and publishing data that

13 humans previously performed by using existing wireless protocols and other well-known

14 technology, albeit automatically using known components.").  The lack of any such improvements

15 is further evidence demonstrating that this case is exceptional.

16    Third, while Cellspin may not have litigated this case exactly like the plaintiff in *My

17 Health*, Cellspin's litigation tactics are not beyond reproach here. Cellspin sued more than a dozen

18 companies across a wide variety of technologies, ranging from digital cameras to fitness tracking

19 devices.  In addition, Cellspin's claim that it "promptly stipulated to the withdrawal of its

20 discovery requests and for a stay of all scheduling order deadlines" (Opp. at 6) is incorrect.

21 Instead of dismissing its case or agreeing to stay discovery after Defendants filed their omnibus

22 motion, Cellspin demanded ongoing discovery, causing Fitbit to incur additional (and

23 unnecessary) fees.  Declaration of Shane Brun ISO of Reply Brief, Ex. 3. It was not until after the

24 hearing on Defendants' motion that Cellspin finally agreed to a stay of discovery until the

25 resolution of the Section 101 Motion.  Dkt. No. 67.  Further, by amending its complaint with

26 baseless allegations just days before the hearing on the Section 101 Motion, Cellspin caused Fitbit

27

28

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

1   to incur additional (and unnecessary) fees.[4]

2          In addition, Cellspin had a continuing obligation to assess the strength of its litigation

3   position, but did not comply with that obligation.  *See Taurus IP, LLC v. DaimlerChrysler Corp.*,

4   726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and

5   must continually assess the soundness of [its] claims . . .").  Even after it had the benefit of the

6   Defendants' Section 101 position, identifying the many Federal Circuit cases holding analogous

7   claim patent-ineligible, Cellspin advanced arguments that were not grounded in law or fact and

8   continued to demand discovery from Fitbit.  Cellspin did so despite the Court's instruction in the

9   Pretrial Order and for the sole purpose of prolonging the inescapable conclusion that its patents

10  were invalid.  All the while, Fitbit continued to incur significant fees to defend itself against

11  claims that should never have been filed in the first place.  Based on the totality of circumstances,

12  Fitbit is entitled to an award of its attorneys' fees for defending this meritless case. *See Inventor*

13  *Holdings*, 876 F.3d at 1377.

14  **V.      FITBIT'S MOTION SHOULD BE DECIDED NOW.**

15         To have a just, speedy, and final determination of the entire case, the Court should decline

16  Plaintiff's request to defer ruling on Fitbit's Motion until after the appeal.  Opp. at 5.  The Ninth

17  Circuit expressly permits the district court to retain jurisdiction when a case is on appeal to

18  consider a motion for attorney's fees, explaining that this "best serves the policy against piecemeal

19  appeals," and "will prevent postponement of fee consideration until after the circuit court mandate,

20  when the relevant circumstances will no longer be fresh in the mind of the district judge."

21  *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983) (citations omitted).

22         Here, judicial economy is best served by ruling on Fitbit's Motion now, while the issues

23  are still fresh in the mind of the Court.  *See id.*  Delaying the fee issue will only increase the

24  potential for additional proceedings before this Court following resolution of the appeal.  In

25  addition, Cellspin has made no showing that it is likely to prevail on appeal.  *See Castillo-Antonio*

26  *v. Iqbal*, No. 14-CV-03316-KAW, 2017 WL 1113300, at *5 (N.D. Cal. Mar. 24, 2017) (declining

27  _____

28  [4] Among other things, Fitbit and the other Defendants filed a supplemental brief to address the
    new allegations in Cellspin's amended complaint. (Dkt. No. 71.)

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

1    to enter a stay "because Defendants provide no reason why the Court should delay ruling" and

2    "have made no showing . . . that they are likely to prevail on an appeal").  Moreover, any deferral

3    would be prejudicial to Fitbit, who has a natural and obvious interest in the prompt recovery of its

4    fees.  *See, e.g., Apple Inc. v. Samsung Electronics Co*., No. 11-CV-01846-LHK, 2014 WL

5    4745933, at *4 (N.D. Cal. Sept. 19, 2014) (analogizing motions for costs and fees, declining to

6    defer a ruling on costs until after appeal, and recognizing that the prevailing party has an interest

7    in the prompt payment of its taxable costs).  The Court should decline Plaintiff's request to delay

8    resolution of the fee issue and decide Fitbit's Motion now.  *See Xu v. Yamanaka*, No. 13-CV-3240

9    YGR, 2014 WL 3840105, at *5 (N.D. Cal. Aug. 1, 2014) (declining to defer a ruling on the

10   attorneys' fees motion until after an appeal).

11         Nor should the Court indulge Cellspin's request to limit the amount of a fee award.  Here,

12   the totality of Fitbit's fees bears an appropriate relation to Cellspin's unreasonable conduct.

13   Because Cellspin never should have brought this case, any fees incurred litigating this case,

14   regardless of whether such fees were incurred working specifically on Section 101 issues, relate to

15   the misconduct.  Where courts have granted fees in Section 101 cases, they have not limited such

16   fees to briefing the Section 101 motion.  *See, e.g., MyHealth*, 2017 WL 6512221, at *6

17   ("Consequently, all of the defendants' reasonable expenses after the day My Health filed suit

18   should be awarded."); *Inventor Holdings*, 876 F.3d  at 1377, 1380 (affirming award of "post-*Alice*

19   attorney fees, including fees incurred during the appeal of the court's Section 101 decision, in the

20   amount of $931,903.45").

21         Finally, Cellspin's argument that the support for Fitbit's fee request is insufficient is

22   meritless.  Not surprisingly, Cellspin points to no decision from this Court finding that

23   declarations such as Fitbit's are inadequate.  To the contrary, Fitbit's supplemental declaration in

24   support of its fees motion (Dkt. No. 88) directly tracks the requirements set forth by Local Rule

25   54-5(b).  Per this Rule, the Court "may require production of an abstract of or the contemporary

26   time records for inspection . . . as the Judge deems appropriate."  Should the Court find such

27   additional information to be necessary or appropriate, Fitbit will provide it pursuant to the Local

28

1    Rules.  But Cellspin's manufactured deficiency in Fitbit's motion and supporting supplemental

2    declaration is not a reason to deny Fitbit's request for attorneys' fees.

3    **VI.**    **CONCLUSION.**

4        For the foregoing reasons, Fitbit respectfully requests that this Court grant its Motion, find

5    this case exceptional, and award Fitbit its attorneys' fees of $60,057.94 plus attorneys' fees

6    incurred or paid by Fitbit through the conclusion of this motion.  *See* Dkt. No. 88, Supplemental

7    Declaration of Shane Brun ISO Fitbit's Motion for Attorneys' Fees, ¶¶ 17-18.

8

9    Dated: May 22, 2018                   Respectfully submitted,

10                                  By: /s/ *Shane Brun*

11                                 SHANE BRUN
           RACHEL M. WALSH

12                ANJALI MOORTHY
           **GOODWIN PROCTER** LLP

13                Three Embarcadero Center
           San Francisco, California 94111

14                Tel.: +1 415 733 6000
           Fax.: +1 415 677 9041

15

16                NEEL CHATTERJEE
           *nchatterjee@goodwinlaw.com*

17                **GOODWIN PROCTER** LLP
           135 Commonwealth Drive

18                Menlo Park, California 94025
           Tel.: +1 650.752.3100

19                Fax.: +1 650.853.1038

20                *Attorneys for Defendant*

21

22

23

24

25

26

27

28

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

1

## <u>CERTIFICATE OF SERVICE</u>

2           I hereby certify that I electronically filed the foregoing document including all of its

3  attachments with the Clerk of the Court for the United States District Court for the Northern

4  District of California by using the CM/ECF system on **May 22, 2018**. I further certify

5  that service will be accomplished by the CM/ECF system and paper copies shall be served by

6  first class mail, postage prepaid on all counsel who are not served through CM/ECF system.

7           I certify under penalty of perjury that the foregoing is true and correct. Executed on

8  **May 22, 2018**.

9

                                                                          */s/ Shane Brun*

10                                                               SHANE BRUN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FITBIT, INC.'S REPLY ISO MOTION FOR ATTORNEYS' FEES

                                  CASE NO. 4:17-CV-05928-YGR