**DESMARAIS LLP**

John M. Desmarais (SBN 320875)
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
T: (415) 573-1900
F: (415) 573-1901
jdesmarais@desmaraisllp.com

Karim Z. Oussayef (*pro hac vice*)
Jamie L. Kringstein (*pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
T: (212) 351-3400
F: (212) 351-3401
koussayef@desmaraisllp.com
jkringstein@desmaraisllp.com

*Attorneys for Defendant Fitbit LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CELLSPIN SOFT, INC., Plaintiff, v. FITBIT LLC, Defendant. | **FITBIT'S RESPONSIVE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECUSAL PURSUANT TO SECTION 455**<br><br>Case No. 4:17-CV-05928-YGR<br><br>Date: February 28, 2023[1]<br>Time: 2:00 p.m.<br>Place: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

[1] Plaintiff's Motion for Recusal Pursuant to Section 455 (Dkt. No. 366) did not include a hearing date, so Fitbit hereby notices a hearing date pursuant to Civil L.R. 7-2(a).

# TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. FACTS AND PROCEDURAL HISTORY ....... 2
III. LEGAL STANDARD ....... 4
IV. ARGUMENT ....... 4
A. Cellspin's Motion Pursuant To 28 U.S.C. § 455 Is Untimely. ....... 5
B. The Evidence Does Not Support Disqualification Under 28 U.S.C. § 455. ....... 7
1. Mr. Rogers' Employment At McKinsey Does Not Justify Recusal. ....... 7
2. Mr. Rogers' Employment At Ajax Does Not Justify Recusal ....... 9
3. Judge Gonzalez Rogers' Investment In Vanguard Mutual Funds Does Not Justify Recusal. ....... 10
C. Cellspin Is Not Entitled To Relief Under Fed. R. Civ. P. 60. ....... 15
1. The Court Lacks Jurisdiction To Vacate Its Summary Judgment Order Under Fed. R. Civ. P. 60 ....... 16
2. Any Issue Under 28 U.S.C. § 455 Is Harmless Error And Does Not Justify Relief Under Fed. R. Civ. P. 60(b)(6). ....... 17
V. CONCLUSION ....... 20

# TABLE OF AUTHORITIES

## Cases

*ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022) ... 18

*Arunachalam v. Pazuniak*, No. 14-05051, 2015 WL 12839126 (N.D. Cal. Feb. 9, 2015) ... 13

*Bank of Am., N.A. v. Martinson*, No. 10-10, 2013 WL 12234207 (W.D. Wis. Jan. 3, 2013) ... 14

*Cellspin Soft, Inc. v. Fitbit LLC*, No. 22-2025, Dkt. No. 38 (Fed. Cir. Dec. 16, 2022) ... 3, 18

*Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 715 F.3d 501 (4th Cir. 2013) ... 12

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022) ... 14, 15, 18, 19

*Clemens v. U.S. Dist. Ct. for Cent. Dist. of California*, 428 F.3d 1175 (9th Cir. 2005) ... 4

*David v. GMAC Mortg., LLC,* No. 11-2914, 2011 WL 6078272 (N.D. Cal. Dec. 6, 2011) ... 11, 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ... 5, 6

*Flores v. Arizona*, 516 F.3d 1140 (9th Cir. 2008) ... 17

*Garrett v. Ohio State Univ.*, No. 18-692, 2021 WL 7186381 (S.D. Ohio Sept. 22, 2021) ... 8

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ... 16, 17, 20

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) ... 16

*Herrington v. Cnty. of Sonoma*, 834 F.2d 1488 (9th Cir. 1987) ... 4

*Heyman v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, No. 21-16377, 2022 WL 3594080 (9th Cir. Aug. 23, 2022) ... 17

*Huebner v. Midland Credit Mgmt.*, No. 14-6046, 2015 WL 1966280 (E.D.N.Y. May 1, 2015) ... 13, 14

*In re Anwiler*,
958 F.2d 925 (9th Cir. 1992) ........................................................................................ 6

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*,
394 F.3d 1143 (9th Cir. 2004) ..................................................................................... 16

*Kern Oil & Refining Co. v. Tenneco Oil Co.*,
840 F.2d 730 (9th Cir. 1988) ....................................................................................... 16

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988)...................................................................................................... 17

*Molina v. Rison*,
886 F.2d 1124 (9th Cir. 1989) ....................................................................................... 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
No. 19-56514, 2022 U.S. App. LEXIS 9488 (9th Cir. Apr. 8, 2022)................................ 6

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009) ..................................................................................... 17

*Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc.*,
No. 12-355, 2015 WL 1283196 (D. Del. Mar. 18, 2015) .................................... 11, 13, 14

*Preston v. United States*,
923 F.2d 731 (9th Cir. 1991) .................................................................................. 5, 6, 7

*Ragozzine v. Youngstown State Univ.*,
No. 13-750, 2014 WL 1153715 (N.D. Ohio Mar. 20, 2014)............................................. 8

*Skokomish Indian Tribe v. United States*,
410 F.3d 506 (9th Cir. 2005) ........................................................................................ 5

*Smith v. BP Exp.. & Prod.*,
No. 22-842, 2022 WL 17403568 (E.D. La. Dec. 2, 2022) ................................................ 8

*United States v. Farkas*,
149 F. Supp. 3d 685 (E.D. Va. 2016) ........................................................................... 12

*United States v. Kubon*,
No. 18-04788, 2019 WL 2552778 (N.D. Cal. May 24, 2019)......................................... 16

*United States v. Mikhel*,
889 F.3d 1003 (9th Cir. 2018) ....................................................................................... 6

*United States v. Rogers*,
119 F.3d 1377 (9th Cir. 1997) ....................................................................................... 6

*United States v. Van Griffin*,
874 F.2d 634 (9th Cir. 1989) ....................................................................................... 17

*Wi-Lan Inc. v. Sharp Elecs. Corp.*,
992 F.3d 1366 (Fed. Cir. 2021)..................................................................................... 18

*Williams v. Woodford*,
384 F.3d 567 (9th Cir. 2002) .......... 16

**Statutes**

28 U.S.C. § 455 .......... passim

**Rules**

Fed. R. Civ. P. 60 .......... passim

**Other Authorities**

Code of Conduct for United States Judges, Canon 3C(1)(c) .......... 12

Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion No. 107 .......... 8, 9, 13

## I. INTRODUCTION

Under the well-established timeliness requirement for recusal motions under 28 U.S.C. § 455 in the Ninth Circuit, Cellspin's strategic exploitation of the federal judiciary's ethical obligations is prohibited, and its recusal motion must be denied. The basis for the motion—Google's acquisition of Fitbit—was known to Cellspin two years ago, but Cellspin did not file its motion at that time. Instead, Cellspin waited to file its recusal motion until after this Court disposed of Cellspin's case by granting summary judgment in favor of all Defendants and after Cellspin appealed.

In addition to being untimely, Cellspin's recusal motion lacks any merit. Cellspin alleges the "appearance" of bias based on, at best, attenuated connections between Google LLC (Fitbit's parent corporation) or GV (formerly, Google Ventures), a related entity, and the companies by whom Judge Gonzalez Rogers' husband, Mr. Matt Rogers, is employed. Cellspin also attempts to create the illusion that Judge Gonzalez Rogers has a financial interest in Alphabet Inc. (Fitbit's ultimate parent corporation) by pointing to generic investments in Vanguard funds that are statutorily excluded from the definition of "financial interest" under 28 U.S.C. § 455(d)(4)(i). Cellspin's allegations do not rise to a level that warrant recusal. And Cellspin's flawed interpretation of the law, taken to its logical conclusion, would likely exclude Judge Gonzalez Rogers—along with many, if not most, other federal judges—from presiding in almost every case involving publicly-traded corporations.

Finally, even if there were a 28 U.S.C. § 455 violation in this case—which there is not—the Court should deny Cellspin's request to vacate its summary judgment order under Fed. R. Civ. P. 60. Cellspin already filed its notice of appeal and therefore, this Court lacks jurisdiction to take any action with respect to the summary judgment order at this time. Additionally, Cellspin cannot show the extraordinary circumstances required for relief under Rule 60(b)(6) because any supposed § 455 violation was harmless error with respect to the summary judgment order, especially since the Federal Circuit is reviewing that order *de novo*.

For these reasons, and for the additional reasons discussed below, the Court should deny Cellspin's recusal motion under 28 U.S.C. § 455 and its request under Fed. R. Civ. P. 60 to vacate the summary judgment order.

## II. FACTS AND PROCEDURAL HISTORY

In October 2017, Cellspin filed the Complaint in this action, accusing Fitbit of infringing U.S. Patent Nos. 8,738,794, 8,892,752, and 9,749,847. Dkt. No. 1. Around that time, Cellspin also filed complaints against thirteen other defendants alleging infringement of one or more of the same patents at issue in this case. *See* Dkt. No. 18.

On October 31, 2017, this case was assigned to Judge Yvonne Gonzalez Rogers. Dkt. No. 12. Cellspin filed a notice of related cases on December 1, 2017. Dkt. No. 17. And on December 5, 2017, the Court issued a Related Case Order, reassigning Cellspin's fourteen cases to Judge Gonzalez Rogers. Dkt. No. 18. Six of Cellspin's actions proceeded to summary judgment.[2]

On April 10, 2018, the Court dismissed Cellspin's claims on the ground that the asserted patents were directed to unpatentable subject matter under 35 U.S.C. § 101. Dkt. No. 81. On June 25, 2019, the Federal Circuit vacated that decision and remanded the case for further proceedings. Dkt. No. 108. On remand, the coordinated cases proceeded through claim construction and then fact and expert discovery. Dkt. No. 136.

On February 3, 2021, Fitbit submitted an Amended Corporate Disclosure Statement pursuant to Fed. R. Civ. P. 7.1 and an Amended Certification of Interested Parties pursuant to Civil L.R. 3-15. Dkt. No. 165. In that statement, Fitbit disclosed that "it is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company." *Id.* Cellspin did not move to disqualify Judge Gonzalez Rogers at that time.

---

[2] The docket numbers for the six cases that proceeded to summary judgment are Case Nos. 4:17-cv-5928 (*Fitbit*), -5931 (*Nike*), -5932 (*Under Armour*), -5933 (*Fossil*), -5934 (*Garmin*), and -5936 (*Nikon*). "Defendants" will refer to the defendants in those six cases. Although Case No. 4:17-cv-5929 (*Moov*) has been stayed, Cellspin included *Moov* in the caption. Unless otherwise noted, citations to the docket are to Case No. 4:17-cv-5928 (*Fitbit*) but apply equally in all cases.

On January 27, 2022, Fitbit filed a motion for summary judgment of noninfringement. Dkt. No. 277. Each of the other Defendants also filed its own motion for summary judgment of noninfringement. Dkt. No. 331 at 1-2. The Court held a joint hearing on Defendants' motions on April 22, 2022. Dkt. No. 324. On June 7, 2022, the Court granted Defendants' motions for summary judgment of noninfringement. Dkt. No. 331 ("Summary Judgment Order"). And on June 15, 2022, the Court entered judgment in favor of each Defendant. Dkt. No. 333.

On July 13, 2022, Cellspin filed its Notice of Appeal. Dkt. No. 346. In that notice, Cellspin represented that it appealed to the Federal Circuit from "the district court's June 7, 2022, Order styled 'Summary Judgment Orders'" and "the district court's June 15, 2022, Order styled 'Judgment.'" *Id.* The Federal Circuit issued a Notice of Docketing on July 15, 2022, assigning this matter as Docket No. 2022-2025. Cellspin filed its opening appeal brief on December 16, 2022, before it filed this motion. *Cellspin Soft, Inc. v. Fitbit LLC*, No. 22-2025, Dkt. No. 38 (Fed. Cir. Dec. 16, 2022).

On January 20, 2023—almost two full years after Fitbit filed its Amended Corporate Disclosure Statement, and more than seven months after the Court issued its decision granting Defendants motions for summary judgment of noninfringement—Cellspin filed the instant motion. Dkt. No. 366 ("Mot."). In its motion, Cellspin contends that Judge Gonzalez Rogers allegedly has an appearance of bias in favor of "Google"[3] and/or has a financial interest in "Google" for three reasons: (1) the Judge's husband, Mr. Matt Rogers, is employed by McKinsey & Company ("McKinsey"); (2) Mr. Rogers is employed by Ajax Strategies Venture Capital ("Ajax"); and (3) Judge Gonzalez Rogers is invested in Vanguard index funds that hold Alphabet Inc. stock. *Id.* at 3. On those bases, Cellspin moves for Judge Gonzalez Rogers' recusal pursuant to 28 U.S.C. § 455, and to vacate the Summary Judgment Order pursuant to Fed. R. Civ. P. 60.

---

[3] Cellspin indiscriminately uses "Google" as a collective term for any Alphabet entity, including Google LLC (Fitbit's parent entity), GV (formerly Google Ventures and a sister entity to Google LLC), and Alphabet Inc. (the ultimate parent corporation that is publicly traded). *See* Mot. at 4.

## III. LEGAL STANDARD

Under 28 U.S.C. § 455(a), a judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." In analyzing disqualification motions under § 455(a), the Ninth Circuit "employ[s] an objective test: 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Clemens v. U.S. Dist. Ct. for Cent. Dist. of California*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Herrington v. Cnty. of Sonoma*, 834 F.2d 1488, 1502 (9th Cir. 1987)).

Under 28 U.S.C. § 455(b)(4), a judge "shall also disqualify [her]self . . . [when she] knows that [s]he, individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." As used in this statute, the term "financial interest" means "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4). However, the statute provides four explicit exceptions to the meaning of "financial interest," the first of which is: "Ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i).

## IV. ARGUMENT

Cellspin's motion should be denied for a number of independent reasons. First, the motion is untimely under Ninth Circuit law because Cellspin waited to bring it until two years after it ascertained the basis for the motion, and until after Judge Gonzalez Rogers granted summary judgment and entered Judgment in favor of Defendants and against Cellspin in these cases. Second, Cellspin's argument under 28 U.S.C. § 455 is contingent on showing that Judge Gonzalez Rogers has an appearance of bias in favor of and/or a "financial interest" in "Google" (*i.e.*, Alphabet Inc., Google LLC, and/or GV), but Cellspin's evidence does not demonstrate either. Third, even if Cellspin could show the appearance of bias or a financial interest under 28 U.S.C. § 455, the circumstances of this case do not support Cellspin's request under Fed. R. Civ. P. 60 to

vacate the Summary Judgment Order. For these reasons, as explained below, the Court should deny Cellspin's motion.

### A. Cellspin's Motion Pursuant To 28 U.S.C. § 455 Is Untimely.

The foundational event that forms the basis for Cellspin's motion was the completion of Google's acquisition of Fitbit in January 2021. *See* Mot. at 3-4. Fitbit promptly alerted the Court and Cellspin to that event on February 3, 2021. Dkt. No. 165. But Cellspin did not seek Judge Gonzalez Rogers' recusal at that time. Instead, Cellspin waited two years—during which time (1) the Judge considered and granted Defendants' dispositive summary judgment motions and entered Judgment in favor of Defendants and (2) Cellspin appealed and filed its opening appeal brief—before finally filing the instant motion for recusal in January 2023. That delay renders Cellspin's motion untimely and compels denial.

"It is well established in [the Ninth Circuit] that a recusal motion must be made in a timely fashion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (citing *Molina v. Rison*, 886 F.2d 1124, 1131 (9th Cir. 1989)). "While no per se rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained." *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991); *see also Skokomish Indian Tribe v. United States*, 410 F.3d 506, 519 (9th Cir. 2005) (denying recusal as untimely for seven-month delay).

Here, Cellspin did not come close to filing its recusal motion with "reasonable promptness" after ascertaining the facts relevant to its motion. *Preston*, 923 F.2d at 733. On the contrary, long before Cellspin filed its motion for recusal, it had access to 100% of the factual information on which the motion is based. For example, regarding Cellspin's allegation that Mr. Rogers' job as a senior partner at McKinsey creates a conflict of interest, Cellspin cites Judge Gonzalez Rogers' Questionnaire for Judicial Nominees, which she completed in 2011. *See* Mot. at 4; Dkt. No. 366, Ex. 1. Similarly, Cellspin's allegations regarding Judge Gonzalez Rogers' financial interest in Alphabet Inc. are based on the Judge's 2020 Financial Disclosure showing the Judge's stock

holdings. *See* Mot. at 14-15; Dkt No. 366, Ex. 17. Even with respect to Mr. Rogers' job as Operations Partner at Ajax, Cellspin concedes that he has been in that position since at least March 2022—ten months before Cellspin filed this motion. *See* Mot. at 8; Dkt. No. 371, Ex. 2. Cellspin had access to all the necessary information but did not file its motion promptly.

This case presents the quintessential set of circumstances that justify the timeliness requirement. As the Ninth Circuit has "often stated, a party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997) (denying recusal motion as untimely). "Enforcing the timeliness of a recusal motion is necessary to prevent litigants from using § 455(a) for strategic purposes." *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (finding recusal motion untimely). "[T]he absence of such a requirement would result in increased instances of wasted judicial time and resources and a heightened risk that litigants would use recusal motions for strategic purposes." *Preston*, 923 F.2d at 733 (internal citations omitted); *see also E. & J. Gallo Winery*, 967 F.2d at 1296 (affirming denial of motion for disqualification where "the recusal statute is being misused for strategic purposes").

Cellspin's "strategic purposes" in this case concerning the federal judiciary's ethical obligations under 28 U.S.C. § 455 are exactly the type of conduct that the Ninth Circuit forbids. Rather than promptly seeking Judge Gonzalez Rogers' recusal, Cellspin took its chance that the Judge would rule in its favor on Defendants' summary judgment motions and allow the case to proceed to a trial over which the Judge would preside. It was only after Judge Gonzalez Rogers granted Defendants' summary judgment motions that Cellspin then asked the Judge to recuse from the case and vacate the Summary Judgment Order. The Ninth Circuit does not allow such gamesmanship. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, ___ F.4th ___, No. 19-56514, 2022 U.S. App. LEXIS 9488, at *19 (9th Cir. Apr. 8, 2022) (considering whether the untimeliness raises "the appearance of gamesmanship or 'judge shopping'") (quoting *In re Anwiler*, 958 F.2d 925, 930 (9th Cir. 1992)).

Moreover, by waiting until after it appealed, Cellspin has created an independent appeal issue, which the Federal Circuit will have to review separately from the summary judgment issues currently pending on appeal. That additional delay will likely result in further "wasted judicial time and resources." *Preston*, 923 F.2d at 733. Cellspin offers no justification or excuse for its delay; indeed, Cellspin's motion does not address timeliness at all. Accordingly, the Court should deny Cellspin's recusal motion as untimely.

**B. The Evidence Does Not Support Disqualification Under 28 U.S.C. § 455.**

Cellspin points to no evidence that would suggest that Judge Gonzalez Rogers is actually biased in this case. Instead, Cellspin levies allegations based on Mr. Rogers' employment with companies that serve their clients using Google LLC products and services, as well as allegations that the Judge owns the types of investments in which judges invest specifically to avoid ethical problems that could emerge from holding stock in individual companies. Taken at face value, Cellspin's arguments for disqualification could drastically affect Judge Gonzalez Rogers' ability to sit as a judge in cases involving large corporations and would have sweeping ramifications for the federal judiciary. As explained below, Cellspin's arguments are baseless and should be rejected.

**1. Mr. Rogers' Employment At McKinsey Does Not Justify Recusal.**

Even assuming that Mr. Rogers "team[s] up" and engages in "collaboration" with "Google" in his role as a partner at McKinsey (Mot. at 5-8), nothing about those facts compels disqualification of Judge Gonzalez Rogers from presiding over cases involving Google, its related entities, or any other tech company. Nor do those facts demonstrate that Google is one of Mr. Rogers' "primary clients," such that a case involving an Alphabet entity creates a conflict of interest for the Judge.[4]

[4] Cellspin notes that, in Judge Gonzalez Rogers' Questionnaire for Judicial Nominees, the Judge identified "[m]atters relating to McKinsey and, more broadly, to [the Judge's] husband's primary clients" as issues that would be potential conflicts of interest that would "likely require recusal." Mot. at 4 (excerpting Dkt. No. 366, Ex. 1). However, Cellspin does not allege, let alone prove, that any Alphabet entity is a "client" of Mr. Rogers.

On issues concerning the business relationships of a judge's spouse, a number of courts have looked to the Committee on Codes of Conduct's Advisory Opinion No. 107, which offers guidance on Canon 3C(1) of the Code of Conduct for United States Judges.[5] *See* Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion No. 107; *see also Smith v. BP Exp.. & Prod.*, No. 22-842, 2022 WL 17403568, at *4 (E.D. La. Dec. 2, 2022); *Garrett v. Ohio State Univ.*, No. 18-692, 2021 WL 7186381, at *3 (S.D. Ohio Sept. 22, 2021); *Ragozzine v. Youngstown State Univ.*, No. 13-750, 2014 WL 1153715, at *2 (N.D. Ohio Mar. 20, 2014). In that Advisory Opinion, the Committee makes clear that "[a]s a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal." Advisory Opinion No. 107 at 205-06. The Advisory Opinion provides examples of the direct business relationships—*e.g.*, the "judge's spouse is an officer, director, or trustee of a party in the proceeding"—that mandate recusal. *Id.* at 205. However, "[r]ecusal is not mandatory in other situations involving spousal business relationships that are less direct or consequential." *Id.*

In this case, Mr. Rogers is neither employed by an Alphabet entity nor directly affiliated with an Alphabet entity in any other way. And Cellspin does not—and cannot—allege that Alphabet or "Google's" relationship with McKinsey or with Mr. Rogers is at issue in this case, which involves Cellspin's allegations that Fitbit infringes Cellspin's patents. Distilled to their essence, Cellspin's allegations rely on little more than the mere fact that McKinsey uses Google Cloud. *See* Mot. at 5 ("For an oil and gas client, McKinsey used Google cloud to improve refinery performance. . . . Here for their oil and gas client, McKinsey used Google Cloud . . . ."). But considering Google Cloud is one of the top three providers of cloud services, that fact is hardly surprising.[6] *See* Ex. 1.

---

[5] As noted in the Advisory Opinion, "[a]lthough the Committee is not authorized to render advisory opinions interpreting [28 U.S.C.] §§ 455 and 144, Canon 3C of the Code closely tracks the language of § 455, and the Committee is authorized to provide advice regarding the application of the Code." Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion 107 at 210.

[6] Cellspin also calls attention to McKinsey's marketing materials identifying its alliances with "AWS, Google, [and] Microsoft," Mot. at 7, which are the top three providers of cloud computing services globally. *See* Ex. 1. (Exhibits 1 through 6 are attached to the Declaration of Jamie L. Kringstein filed herewith.)

The facts of this case resemble relevant examples in Advisory Opinion No. 107 of businesses that offer services to a judge's spouse or the spouse's business:

> When a service provider's transactions with the judge's spouse or the spouse's business are in the regular course of business, routine in nature, and are unaccompanied by special circumstances suggesting that the selection of the spouse or the spouse's business may have been influenced by the judge's position, recusal is ordinarily not required. The Committee has advised against recusal in various situations where a party, law firm, or attorney appearing before the judge also provided services to the spouse's business. For example, the Committee advised that a judge need not recuse from proceedings involving banks and other lenders to the spouse's business where the relationship with the spouse's business involved traditional bank accounts and loans and no special circumstances were present (such as unusually favorable terms).

Advisory Opinion No. 107 at 209. Here, Cellspin's allegations that Google LLC offers cloud services to McKinsey's customers in the regular course of business is akin to a bank offering services to a spouse's business. Cellspin has not alleged any unusual circumstances—*e.g.*, that Google LLC elected to work with McKinsey or Mr. Rogers because of Judge Gonzalez Rogers' position as a judge. Accordingly, like the examples in the Advisory Opinion, McKinsey's use of Google Cloud services does not warrant recusal.

This case presents, at most, indirect and inconsequential spousal business relationships between Alphabet entities and Mr. Rogers through his employment at McKinsey. Cellspin cites no case law to support its argument that such attenuated connections are sufficient to require Judge Gonzalez Rogers' recusal under 28 U.S.C. § 455.

**2. Mr. Rogers' Employment At Ajax Does Not Justify Recusal**

Cellspin's allegations regarding Mr. Rogers' employment at Ajax suffer from the same deficiencies as the McKinsey allegations—namely, they rely on attenuated and generic connections to Alphabet Inc. For example, Cellspin alleges that Mr. Rogers works with "three start-up companies funded by Google," Mot. at 8, but Cellspin fails to explain why, having received investment money from Alphabet or GV, any of the three start-ups—let alone, Mr. Rogers and Ajax—have a financial interest in Fitbit's success in this litigation over patents. Nor does Cellspin provide any evidence that specifically connects Mr. Rogers' work with any of the three

start-up companies to money received from Alphabet entities. Additionally, Cellspin's exhibits show that a Google entity was one investor, among many others, in those three companies. *See, e.g.*, Dkt. No. 371, Ex. 8 (showing that Planet Labs, Inc. also received investments from BlackRock, Koch, and TIME Ventures). And the three companies Cellspin identifies are cherry-picked from hundreds of companies in which GV has invested. *See* Ex. 2.

As another example, while Cellspin alleges that Mr. Rogers has handled "strategic partnerships with Google" on behalf of five companies, Mot. at 12, Cellspin makes no effort to demonstrate how, if at all, Mr. Rogers has been personally involved or personally benefits from any of those companies or their relationships with Alphabet entities. Even Cellspin's framing of these supposed business relationships demonstrates that any financial interest Mr. Rogers has is, at most, indirect. For example, with respect to each company, Cellspin alleges that Mr. Rogers works for Ajax, Ajax has a financial interest in the company, and the company has some form of partnership with Alphabet or GV. *See id.* at 12 ("Ajax Operating Partner Rogers has a financial interest in Lime. And Lime bases about half of its entire business model on Google."); *see also id.* ("Ajax Operating Partner Matt Rogers has a financial interest in Voltus and Voltus has joint product partnership with Google."). At most, Cellspin suggests that each company integrates its own technology into widely available Google platforms (*e.g.*, Google Maps, Google Nest, Google Cloud, Google Earth Engine) that are not at issue in this litigation. *See id.* at 12-14. Cellspin fails to explain how or why such activities create a "financial interest" in Google, or any reason why the Judge's impartiality might be questioned with regard to Cellspin's patent infringement allegations against Fitbit. Thus, for the same reasons discussed above with respect to the McKinsey allegations, Cellspin's allegations regarding Ajax do not meet the standard for recusal under 28 U.S.C. § 455.

**3. Judge Gonzalez Rogers' Investment In Vanguard Mutual Funds Does Not Justify Recusal.**

Cellspin's third basis for recusal is Judge Gonzalez Rogers' investments in the Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund. *See* Mot. at 14-18. Cellspin attempts to draw a distinction between those funds as compared to a "mutual or common

investment fund," which the statute specifically excludes from the definition of a "financial interest." 28 U.S.C. § 455(d)(4)(i). That distinction is imaginary.

Both Vanguard funds are mutual funds and are registered under the Investment Company Act of 1940. Ex. 3 at 22 ("Vanguard 500 Index Fund is registered under the Investment Company Act of 1940 as an open-end investment company, or mutual fund."); Ex. 4 at 83 ("Vanguard Total International Stock Index Fund is registered under the Investment Company Act of 1940 as an open-end investment company, or mutual fund.").[7] Vanguard lists Donald M. Butler and Michelle Louie as the portfolio managers for the Vanguard 500 Index Fund and Michael Perre and Christine D. Franquin as the portfolio managers for the Vanguard Total International Stock Index Fund. Exs. 5-6. Because Judge Gonzalez Rogers does not "participate[] in the management of the fund," under § 455(d)(4)(i), her ownership in the Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund, which are both "mutual or common investment fund[s]," cannot be a "financial interest" in the securities held by those mutual funds, including Alphabet Inc., Fitbit's ultimate parent corporation.

Courts addressing this issue have found that index funds, such as the Vanguard funds held by Judge Gonzalez Rogers, are precisely the types of investment that the statute means to exclude from the scope of a "financial interest." For example, in *David v. GMAC Mortg., LLC*, the plaintiff moved for disqualification under 28 U.S.C. § 455(b) based on the Judge's investments in "three separate mutual funds," one of which was the Vanguard 500 Index Fund—*i.e.* the very same fund Cellspin identifies in this case. No. 11-2914, 2011 WL 6078272, at *1 (N.D. Cal. Dec. 6, 2011). In denying the motion, the court in *David* stated that "the funds are sold to the public as mutual funds and are registered with the SEC. As such, they fall within the ambit of Canon 3C(3)(c)(i) [of the Judicial Code of Conduct], and are excluded from the scope of 'financial interests' that could create a conflict of interest." *Id.*; *see also Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc.*, No. 12-355, 2015 WL 1283196, at *4-5 (D. Del. Mar. 18, 2015) (denying motion for disqualification based on investments that included the mutual fund "Vanguard Total Stock Market Index Fund,"

---

[7] In fact, Vanguard hosts information regarding both funds at URLs under "mutual-funds" on its website. *See* Ex 5; Ex. 6.

and noting "if this sort of financial interest were a conflict, I would be recused in many corporate cases, as I dare say that I might have, through mutual fund holdings, an indirect financial interest in almost every large publicly-traded U.S. corporation").

In considering this issue, courts often cite Canon 3C of the Judicial Code of Conduct, which closely tracks the language of 28 U.S.C. § 455(b)(4), and requires a judge to disqualify herself when the judge knows that she "has a financial interest in the subject matter in controversy or in a party to the proceeding." Code of Conduct for United States Judges, Canon 3C(1)(c). Like the exceptions in 28 U.S.C. § 455(d)(4), the Judicial Code of Conduct notes that "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in management of the fund." Canon 3C(3)(c)(i). The Committee on Codes of Conduct issued Advisory Opinion No. 106 specifically to address issues related to judges' investments. In framing its analysis, the Committee begins with the overarching principle that "the Code should be interpreted to the extent reasonably possible to enable judges to invest in funds without transgressing the Code or engaging in a conflict of interest." Advisory Opinion 106 at 201; *see also United States v. Farkas*, 149 F. Supp. 3d 685, 698 (E.D. Va. 2016) ("The legislative purpose of this exception was to enable judges, like many Americans, to invest in securities without facing the threat of recusal in a large number of cases."), *aff'd* 669 F. App'x 122 (4th Cir. 2016); *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 715 F.3d 501, 515–16 (4th Cir. 2013) (noting that "Congress created this exception to enable judges to hold securities without risking recusal across a broad range of cases" and that its application is "mechanical"—without the need to inquire into the likely effect of a decision on the value of the securities held in the fund).

Advisory Opinion No. 106 lays out six considerations for "[d]etermining whether a fund is a 'mutual or common investment fund'":

> (1) the number of participants in the fund; (2) the size and diversity of fund investments; (3) the ability of participants to direct their investments; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the pace of turnover in fund investments; and (6) any ownership interest investors have in the individual assets of the fund.

Advisory Opinion 106 at 201. Courts have expressly relied on those considerations in determining whether a fund qualifies as a "mutual or common investment fund" for purposes of the statutory exception in 28 U.S.C. § 455(d)(4)(i). *See, e.g.*, *Arunachalam v. Pazuniak*, No. 14-05051, 2015 WL 12839126, at *1 (N.D. Cal. Feb. 9, 2015). With respect to the Vanguard funds at issue in Cellspin's motion, the factors overwhelmingly weigh against Cellspin's position that the Vanguard funds represent a "financial interest" in Alphabet or Fitbit that warrants recusal in this case.

The Vanguard 500 Index Fund "seeks to track the investment performance of the Standard & Poor's 500 Index, an unmanaged benchmark representing U.S. large-capitalization stocks." Ex 5. The fund is, by design, extremely large and diversified, with investments in more than 500 individual stocks across all sectors of the economy. *Id.* Similarly, the Vanguard Total International Stock Index "tracks stock markets all over the globe," with investments in nearly 8,000 stocks in different regions and markets. Ex. 6. These Vanguard index funds offer no ability for participants to direct their investments in particular assets. *Pi-Net*, 2015 WL 1283196 (noting that the judge had "no input at all on whether and when mutual funds"—including the Vanguard Total Stock Market Index Fund—"buy or sell stocks"). And investors do not obtain any ownership interest (*e.g.*, voting rights as shareholders) in the underlying assets in the fund. *See, e.g.*, *Huebner v. Midland Credit Mgmt.*, No. 14-6046, 2015 WL 1966280, at *3 (E.D.N.Y. May 1, 2015) ("[T]he law is quite clear that a judge who owns shares in a mutual fund or ETF [(exchange-traded fund)] does not thereby own the securities held by those mutual funds or ETF"), *aff'd*, 897 F.3d 42 (2d Cir. 2018). Accordingly, under the factors set forth in the Advisory Opinion, both Vanguard index funds qualify as "mutual or common investment funds" within the statutory exception to the definition of "financial interest." *See* 28 U.S.C. § 455(d)(4)(i).

Cellspin attempts to distinguish the Vanguard index funds from a "mutual or common investment fund" on the basis of the particular investment strategy. For example, whereas mutual funds invest in a "changing list of securities chosen by an investment manager," Cellspin argues that the Vanguard index funds "invest in a specific list of securities" and the investments are not "actively managed." *See* Mot. at 18-19. But that distinction finds no support in 28 U.S.C. § 455

or in any precedent.[8] On the contrary, in view of well-documented facts about the size, diversity, and nature of the Vanguard index funds, Cellspin's alleged distinction between an "index fund" and a "mutual fund" is entirely illusory. *See, e.g.*, *David*, 2011 WL 6078272, at *1 (finding the Vanguard 500 Index Fund a mutual fund under § 455 and the criteria listed in Advisory Opinion No. 106).

Cellspin's theory appears to be that Judge Gonzalez Rogers knows, for the most part, which stocks will be owned by the index funds at any given time. *See* Mot. at 19 ("Owning Index funds is just another way to HOLD/Own Google and Apple Stocks. It is just by another name."). But, tellingly, Cellspin cites no legal authority for that argument. The law is clear that owning a fund which holds securities in a company is not equivalent to owning a financial interest in that company. 28 U.S.C. § 455(d)(4)(i). And, as shown above, courts have rejected attempts to distinguish the same or similar Vanguard index funds from the "mutual or common investment funds" in the statutory exception. *See Pi-Net*, 2015 WL 1283196, at *4-5, *Huebner*, 2015 WL 1966280, at *2-3; *Bank of Am., N.A. v. Martinson*, No. 10-10, 2013 WL 12234207, at *1 (W.D. Wis. Jan. 3, 2013); *David*, 2011 WL 6078272, at *1. Moreover, Cellspin's theory (*i.e.*, that an index fund is in essence a proxy for holding each one of the underlying stocks) is logically incoherent because the very purpose of investing in an index fund is to diversify and thus avoid investing in any one of the underlying stocks. Ironically, rather than a financial interest in the underlying stocks, the Vanguard index funds by their nature create something of a financial ***dis***interest in each one of the underlying stocks.

Cellspin relies heavily on the Federal Circuit's decision in *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022). But *Centripetal* has no bearing on the issue in this case. In *Centripetal*, the district judge's wife owned 100 shares of Cisco stock valued at $4,687.99. *Id.* at 1028. Because Cisco was a party in the case, and the judge's wife directly owned

[8] Cellspin only cites personal finance websites, which themselves confirm that the distinction between "*active* mutual funds" and "index funds" is one of investment strategy, not statutory category, as "index funds" can be formed as mutual funds. *See* Dkt. No. 366, Ex. 29 (comparing the investment strategies of "active mutual funds" to "index funds"); Dkt. No. 366, Ex. 30 at 4 ("A mutual fund may include many kinds of assets or investment styles, including being an index fund or an actively managed fund.").

shares in Cisco stock, there was no question on appeal that the judge had a "financial interest" under 28 U.S.C. § 455(b)(4). *Id.* at 1030-31. This case is completely different because Judge Gonzalez Rogers does not own any Alphabet Inc. stock, and thus there is no "financial interest" under 28 U.S.C. § 455(b)(4).

Finally, Cellspin's argument that Judge Gonzalez Rogers "manages" the Vanguard funds because she "knows what stocks are part of the Index fund," Mot. at 19-20, is nonsensical. Under the law, a "mutual or common investment fund" is not considered a "financial interest" "unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i). Obviously, Cellspin cannot allege that Judge Gonzalez Rogers participates in the management of the Vanguard funds because those roles are filled by Vanguard fund managers. *See* Exs. 5, 6 (listing portfolio managers for both funds). Instead, Cellspin sets forth a convoluted theory that, due to each Vanguard fund's "passive management," nobody is actively managing the Index funds, and "[i]f nobody is managing the fund, then everybody is managing it (including Judge Gonzalez Rogers), because everyone knows what stocks are part of the Index fund . . . ." Mot. at 20. Notably, Cellspin offers no support for that bizarre reading of § 455(d)(4)(i), which would equate a judge who has knowledge of "what stocks are part of the Index fund" with one who "participates in the management of the fund." *Cf.* 28 U.S.C. § 455(d)(4)(i).

For the foregoing reasons, Cellspin has failed to demonstrate that Judge Gonzalez Rogers' investments in Vanguard index funds or that Mr. Rogers' business relationships create either a financial interest under § 455(b) or an appearance of bias under § 455(a). Thus, the Judge's recusal in this matter is not warranted.

### C. Cellspin Is Not Entitled To Relief Under Fed. R. Civ. P. 60.

As demonstrated above, Cellspin's arguments for disqualification under 28 U.S.C. § 455 are untimely and lack merit. However, even to the extent the Court finds that there is any merit to Cellspin's contentions under 28 U.S.C. § 455, the Court should nevertheless deny Cellspin's request under Fed. R. Civ. P. 60 to vacate the Summary Judgment Order for two reasons. First, because Cellspin has already appealed from the Summary Judgment Order, this Court lacks

jurisdiction to take any action with respect to that Summary Judgment Order at this time. And second, any issue with Judge Gonzalez Rogers' ability to preside in this case under § 455 is harmless error and does not meet the "extraordinary circumstances" required for relief from a final judgment under Rule 60(b)(6). *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

**1. The Court Lacks Jurisdiction To Vacate Its Summary Judgment Order Under Fed. R. Civ. P. 60.**

Cellspin moves under Fed. R. Civ. P. 60 for the Court to vacate its Summary Judgment Order. Mot. at 1. However, because Cellspin waited until after it filed a notice of appeal with respect to the Summary Judgment Order, this Court lacks jurisdiction to grant that relief at this time.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). This is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) (internal quotation marks and citation omitted). To the extent a party seeks relief under Rule 60 during the pendency of the appeal, "the proper procedure is to ask the district court whether it wishes to entertain the motion, or to grant it, and then move the [Court of Appeal], if appropriate, for remand of the case." *United States v. Kubon*, No. 18-04788, 2019 WL 2552778, at *1 (N.D. Cal. May 24, 2019) (quoting *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2002)).

Here, Cellspin filed its Notice of Appeal, electing to challenge this Court's Summary Judgment Order through the appellate process. Dkt. No. 346. Cellspin's appeal of that issue was pending for months in the Federal Circuit before Cellspin filed the instant motion asking the Court to vacate the Summary Judgment Order pursuant to Rule 60. Cellspin's attempt to collaterally attack an order that is currently under appellate review is improper because the Court lacks jurisdiction to entertain it. *Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1148 (9th Cir. 2004) ("The district court lacked jurisdiction to entertain the Rule 60(b) motion,

which was filed after the notice of appeal had been filed, thereby stripping the district court of its jurisdiction.").

**2. Any Issue Under 28 U.S.C. § 455 Is Harmless Error And Does Not Justify Relief Under Fed. R. Civ. P. 60(b)(6).**

The Ninth Circuit has "cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in [the] timeliness and finality of judgments." *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (quoting *Flores v. Arizona*, 516 F.3d 1140, 1163 (9th Cir. 2008)). Specifically, with respect to Rule 60(b)(6), the Supreme Court "require[s] a movant . . . to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 524. Here, Cellspin cannot meet that burden because, to the extent any violation of 28 U.S.C. § 455 occurred, it was harmless error with respect to Judge Gonzalez Rogers' grant of summary judgment.

The Supreme Court in *Liljeberg v. Health Servs. Acquisition Corp.*, explained that harmless error analysis applies when a movant seeks relief from judgment under Rule 60(b)(6) due to a violation of 28 U.S.C. § 455:

> As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a).

486 U.S. 847, 862 (1988) ; *see also Heyman v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, No. 21-16377, 2022 WL 3594080, at *1 (9th Cir. Aug. 23, 2022) (citing *Liljeberg* for the proposition that "harmless error review may apply to violations of 28 U.S.C. § 455); *United States v. Van Griffin*, 874 F.2d 634, 637 (9th Cir. 1989) (applying harmless error rule to violation of 28 U.S.C. § 455). In *Liljeberg*, the Court set forth three harmless error factors to consider in determining whether a judgment should be vacated under Rule 60(b)(6) for a violation of 28 U.S.C. § 455: (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 863. Here, all three factors weigh in favor of a harmless error finding, and against vacating this Court's Summary Judgment Order.

Under the first harmless error factor, maintaining the Summary Judgment Order presents no risk whatsoever of injustice to the parties in this case. Numerous circuit courts have recognized that when a district court's decision is subject to *de novo* review, non-recusal is harmless error. *See Centripetal*, 38 F.4th at 1034 & n.11 (citing cases from the Third Circuit, Fifth Circuit, Seventh Circuit, and Eleventh Circuit for the proposition that the first factor weighs in favor of harmless error "where the ruling involves a pure question of law that is subject to plenary review on appeal"). Here, this Court's Summary Judgment Order is currently pending before the Federal Circuit, which will review that decision *de novo* consistent with Ninth Circuit law. *See ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022).[9] Accordingly, if this Court regains jurisdiction over the Summary Judgment Order following the conclusion of Cellspin's appeal to the Federal Circuit, there will be no injustice if this Court declines to retroactively vacate the Summary Judgment Order.

The Federal Circuit's decision in *Centripetal*—which found no harmless error—is distinguishable from the facts of this case. 38 F.4th at 1034-40. For example, with respect to the first harmless error factor, the court in *Centripetal* found a risk of injustice to the parties because the rulings at issue on appeal "resulted from a bench trial in which [the district judge] exercised broad discretion in making findings of fact and credibility determinations." *Id.* at 1035. The court also emphasized the immediacy with which Cisco moved for disqualification "just nine days" after learning of the judge's financial interest, as well as the timing of the judge's opinion which did not issue until after the judge had actual knowledge of his wife's financial interest in Cisco. *Id.* at 1035-36; *see also id.* at 1036-37 ("Moreover, after learning of his wife's stock ownership, [the judge] continued to sit on post-trial motions that needed to be decided but had not even been briefed by the parties. Cisco's post-trial motions were rejected in a 49-page opinion and order

[9] In the appeal, Cellspin concedes that one issue—namely, this Court's finding that Cellspin offered an "improper new theory" in violation of the local patent rules—is subject to review by the Federal Circuit for abuse of discretion. *See Cellspin Soft, Inc. v. Fitbit LLC*, No. 22-2025, Dkt. No. 47 at 40 (Fed. Cir. Jan. 10, 2023). However, the ultimate review of the Summary Judgment Order is *de novo*. *See Wi-Lan Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1370 (Fed. Cir. 2021) (reviewing grant of summary judgment *de novo* but underlying evidentiary rulings for abuse of discretion).

issued . . . while [the judge] knew his wife continued to hold stock in Cisco."). The facts in this case are substantially different. Here, Judge Gonzalez Rogers decided the case as a matter of law on summary judgment, where she did not weigh facts or make credibility determinations, and her decision is subject to *de novo* review. Additionally, Cellspin waited to bring the motion after it lost the case two years after learning of Google's acquisition of Fitbit.

The second and third factors also weigh in favor of finding harmless error. Under the second factor, Cellspin does not argue that the Court's Summary Judgment Order risks producing injustice in other cases. *See* Mot. at 25-26 (arguing only the first and third factors). And under the third factor, the risk of undermining the public's confidence in the judicial process would come from vacating—not from maintaining—the Summary Judgment Order. Again, this case is entirely unlike the Federal Circuit's decision in *Centripetal*, where the court found that the judge's decision to preside despite his wife's direct ownership of stock in one of the litigants was "symptomatic of an increasingly common problem" of "many judges presiding over cases in which they or relevant family members owned stock in a party." *See Centripetal*, 38 F.4th at 1039. Here, it is undisputed that Judge Gonzalez Rogers does ***not*** own stock in one of the parties, but rather the Judge is invested in funds that ensure no direct ownership interest in any of the underlying stocks. Granting Cellspin's motion and finding that such investments are improper could have sweeping consequences for the United States judicial system as a whole. Under Cellspin's view, any judge who "place[es] money into an Index fund" would have "a direct financial interest" in publicly-traded corporations. Mot. at 1. Such judges would then be unable to preside over cases involving companies such as Alphabet or its subsidiaries because, according to Cellspin, "Google is a major proportion of ***any*** Index Fund." Mot. at 3. It is not difficult to see the short-term problems that such a framework would create in terms of finding judges to preside over cases involving publicly-traded corporations, as well as the long-term problems of finding suitable candidates for the federal bench if the pool is limited to only people who are willing to completely refrain from investing in the market and who are not married to any person whose business interacts, directly or indirectly, with any aspect of such corporations.

Because any violation of 28 U.S.C. § 455 in this case would be harmless error, Cellspin cannot meet the Supreme Court's requirement that a movant for relief under Rule 60(b)(6) must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535. Accordingly, Cellspin's motion to vacate the Summary Judgment Order should be denied.

**V. CONCLUSION**

For the foregoing reasons, the Court should deny Cellspin's motion for recusal, as well as Cellspin's request to vacate the Summary Judgment Order.

Dated: February 3, 2023

**DESMARAIS LLP**

/s/ *Karim Z. Oussayef*
Karim Z. Oussayef (*pro hac vice*)
Jamie L. Kringstein (*pro hac vice*)
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401
koussayef@desmaraisllp.com
jkringstein@desmaraisllp.com

*Attorneys for Defendant Fitbit LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2023, I electronically filed the above document and associated declaration and exhibit with the Clerk of the Court using CM/ECF, which will send electronic notification of such filings to all registered counsel.

Dated: February 3, 2023 *\/s/ Jamie L. Kringstein*