1

2

3              **UNITED STATES DISTRICT COURT**

4             **NORTHERN DISTRICT OF CALIFORNIA**

5

6   CELLSPIN SOFT, INC.,

7          Plaintiff**,**

8          vs.                                **ORDER DENYING MOTION FOR RECUSAL
                                               PURSUANT TO SECTION 455**
9   FITBIT, INC.,

10  ---------------------------------------    Case No. 4:17-CV-05928-YGR

11  NIKE, INC.,

12  ---------------------------------------    Case No. 4:17-CV-05931-YGR

13  UNDER ARMOUR, INC.,                        Case No. 4:17-CV-05932-YGR

14  ---------------------------------------
    FOSSIL GROUP, ET AL.,                      Case No. 4:17-CV-05933-YGR

15  ---------------------------------------
    GARMIN INTERNATIONAL, INC.,                Case No. 4:17-CV-05934-YGR

16  ---------------------------------------
    NIKON AMERICAS, INC., ET AL.,              Case No. 4:17-CV-05936-YGR

17        Defendants**.**

18

19          Pending before the Court is a futile attempt to evade the Federal Circuit's review of this

20  Court's June 7, 2022, 83-page comprehensive order granting defendants' motions for summary

21  judgment.  (Dkt. No. 331.) [1]  Plaintiff's chosen vehicle is a motion for recusal of the undersigned

22  under 28 U.S.C. §§ 455(a)-(d). (Dkt. No. 366.)

23

24

25          [1]  These defendants include Fitbit, Inc. ("Fitbit"), Nike, Inc. ("Nike"), Under Armour, Inc.
26  ("Under Armour"), Fossil Group ("Fossil"), Garmin International, Inc. ("Garmin"), and Nikon
    Americas, Inc. ("Nikon").  Plaintiff's caption also extends its motion to defendant Moov, Inc.
27  ("Moov").  Judgment was not entered as to Moov.

28          All docket references are to Case No. 4:17-cv-5928-YGR unless otherwise indicated.

United States District Court
Northern District of California

In short, plaintiff's attack on the integrity of the judiciary, through the undersigned,[2] not only demonstrates a measure of desperation, but is divorced from the law and the facts. Reduced to its essence, and extended to its illogical conclusion, the motion would seek to have federal judges recuse after the appeal of their objective findings, based upon nothing but speculation and attenuation. The argument is extreme and meritless.

Notably, plaintiff's motion is also plagued by myriad procedural deficiencies. While the Court is under no obligation to address the meritless assertions in detail, it does so at exacting length to increase transparency[3] and reassure the public that members of the judiciary take seriously their obligation to be impartial and objective. Unfortunately, the judiciary cannot predict when lawyers and parties will grasp to bypass the normal avenues of appellate review hoping for the proverbial second bite at the apple.

Simply put, the undersigned has no material financial stake in the outcome of this case and there is no other reason why her impartiality might reasonably be questioned to justify recusal. Evidence does not exist to support a contrary result. Nor do bald attorney arguments divorced from law and fact compel a different finding. For the following reasons, the motion for recusal is **DENIED**.[4]

---

[2] Through convoluted allegations, the plaintiff also seeks to attack the business affiliations of the undersigned's husband. The undersigned's husband is only affiliated with this case by way of the undersigned's role as an officer of the court. While his name has been extensively highlighted in the record, the Court finds no reason to inject it further into this dispute.

[3] Plaintiff baldly suggests that the Court has been derelict by failing to submit its 2021 and 2022 financial disclosures. This attack on the Court's integrity is inconsistent with fact. The 2022 deadline has not passed. As to the 2021 fiscal year, the Court did timely submit a disclosure. Its public release has been temporarily stayed because the Administrative Office of the U.S. Courts, not the undersigned, found that the undersigned and her husband actually **over-disclosed**, further demonstrating the Court's commitment to transparency. That disclosure will ultimately be released and will not change the outcome of this motion.

[4] Fitbit, Nike, Under Armour, Fossil, and Nikon all filed briefs opposing the motion in their respective cases or the docket concerning Fitbit. Garmin filed an unopposed request for leave to file its opposition, which is granted. All oppositions are considered.

Since plaintiff failed to notice the motion for hearing consistent with Civil Local Rule 7-2, Fitbit noticed the motion for hearing on February 28, 2023. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that the motion is appropriate for decision without oral argument. Therefore, the hearing noticed for February 28, 2023 is

1    I.      **BACKGROUND**

2           The Court assumes the parties' familiarity with the factual underpinnings of this lawsuit,

3    which are largely irrelevant to the pending motion.

4           This lawsuit was commenced in 2017 when plaintiff filed over a dozen complaints alleging

5    infringement of one or more patents.  In December 2017, the undersigned related fourteen cases.

6    (Dkt. No. 18.)  Subsequently, on April 10, 2018, the Court dismissed plaintiff's claims finding that

7    the asserted patents at issue were directed to unpatentable subject matter pursuant to 35 U.S.C. §

8    101.  (Dkt. No. 79, 81.)  That order was appealed and subsequently reversed by the Federal

9    Circuit.  (Dkt. No. 108.)  Following remand, the cases proceeded through claim construction and

10   discovery.

11          Relevant to the pending motion, on February 3, 2021, Fitbit submitted an Amended

12   Corporate Disclosure Statement and Amended Certification of Interested Parties disclosing that "it

13   is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary

14   of Alphabet Inc., a publicly traded company."  (Dkt. No. 165.)  According to plaintiff's pending

15   motion, Google's[5] introduction into these proceedings via Fitbit gave rise to publicly known

16   circumstances which plaintiff now claims, over – months later, required the undersigned to recuse

17   herself from these patent cases.  Plaintiff did not move for disqualification and proceedings

18   continued.

19          In January 2022, the defendants moved for summary judgment of noninfringement.  A

20   joint hearing on the motions was held on April 22, 2022, where the nuances of the various motions

21   were addressed extensively.  After taking the motions for summary judgment under submission,

22   the Court issued a comprehensive omnibus order on June 7, 2022.  (Dkt. No. 331.)  That order

23   addressed the particularities of each motion brought by the defendants.  Where the order addressed

24   all pending claims, judgment was entered in favor of the defendants on June 15, 2022.

25

26   _____

     VACATED.

27          5  Plaintiff broadly uses "Google" to refer to myriad projects, investments, entities,

28   partnerships, and services.  Through this shotgun tactic, plaintiff has substantially failed to
     articulate the legal foundation throughout the vast majority of its filings.

1   Approximately one month later, plaintiff filed its notice of appeal on July 13, 2022.  (Dkt.

2   No. 346.)  Taking judicial notice of the appellate record, the appeal was docketed on July 15,

3   2022, and plaintiff filed an opening brief on December 16, 2022.

4   Nearly seven months after entry of judgment and after substantial progress on appeal,

5   plaintiff has now moved to recuse the undersigned pursuant to 28 U.S.C. §§ 455(a)-(d) and

6   requests that the Court vacate the entry of summary judgment in favor of the defendants due to the

7   alleged violations of section 455.  In short, the motion asserts that the Court has an appearance of

8   bias in favor Google or financial interests in Google.  Plaintiff bases these allegations on at least

9   three reasons: (1) the undersigned's husband's employment with McKinsey & Company, Inc.

10  ("McKinsey"); (2) the undersigned's husband's employment with Ajax Strategies Venture Capital

11  as an Operating Partner ("Ajax") where he purportedly handles over eight companies funded

12  and/or in partnership with Google; and (3) the undersigned's purported investments in Google and

13  the defendants through the Vanguard 500 Index Fund, Vanguard Total International Stock Index

14  Fund, and the McKinsey Special Situations Aggressive Long-Term fund ("Special Situations

15  Fund").  While plaintiff's motion attaches over 1500 pages of exhibits, the Court notes that

16  plaintiff does not cite to the documents with any degree of particularity.  As addressed below, the

17  accusations are frivolous and devoid of any evidentiary merit.  While unnecessary, this order

18  provides detail to support transparency and any appellate review.

19  **II.     LEGAL STANDARDS**

20  The standard for recusal is not in serious dispute.  The Court's duty to recuse here is

21  governed by 28 U.S.C. § 455.

22  First, a judge "shall disqualify [her]self in any proceeding in which [her] impartiality might

23  reasonably be questioned."  28 U.S.C. § 455(a).  In analyzing the Court's impartiality, the Ninth

24  Circuit "employ[s] an objective test: 'whether a reasonable person with knowledge of all the facts

25  would conclude that the judge's impartiality might reasonably be questioned.'"  *Clemens v. U.S.*

26  *Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Herrington v. County of Sonoma*, 834 F.2d

27  1488, 1502 (9th Cir. 1988)).  It is well-known that "the 'reasonable person' is not someone who is

28  'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'  The

United States District Court
Northern District of California

4

standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (internal citations omitted).

Second, a judge "shall also disqualify [her]self . . . [when she] knows that [s]he, individually or as a fiduciary, or [her] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). A "financial interest" is statutorily defined as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4). However, "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i).

Notably, "[j]udges are presumed to be impartial and, accordingly, parties seeking recusal bear the substantial burden of proving otherwise." *Stebbins v. Polano*, No. 21-cv-04184-JSW, 2021 WL 8532245, at *1 (N.D. Cal. Oct. 22, 2021) (internal quotations and citations omitted); *see also Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise.").

## III. DISCUSSION

### A. Jurisdiction

Before diving into the merits of the pending motion, the Court addresses jurisdictional matters. It is well-established that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). As acknowledged by the Ninth Circuit, this is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) (internal quotation marks and citation omitted). Since judgment has been

1   entered and plaintiff has filed an appeal, this Court has been divested of jurisdiction over the

2   summary judgment order.  Jurisdiction continues to exist over post-judgment proceedings

3   ancillary to issues raised on appeal.

4           To the extent plaintiff is seeking to disqualify the undersigned from post-judgment

5   proceedings such as cost motions that have not been decided, that request is properly before the

6   Court.  However, plaintiff asks for much more.  Plaintiff "moves to vacate entry of the joint

7   Summary Judgment Order in favor of all Defendants and all subsequent orders thereto."  (Dkt. No.

8   366 at 1.)  Procedurally, the request to vacate the summary judgment order is defective for at least

9   two reasons.

10          First, the summary judgment order is before the Federal Circuit.  The Court has no

11  authority to vacate the order because the appeal divested it of jurisdiction.  Plaintiff should have

12  filed a motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1.  That rule

13  would permit this Court to defer consideration of the motion, deny it, or state that it would grant it.

14  Notably, the rule and relevant standard is nowhere within plaintiff's motion.  Even though plaintiff

15  is not pro se and is proceeding through counsel, the Court generously construes a request for an

16  indicative ruling into plaintiff's filing to promote judicial economy for the Court and parties.

17          Second, requests to vacate are made pursuant to Federal Rule of Civil Procedure 60.

18  Under Rule 60, a district court "may relieve a party or its legal representative from a final

19  judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or

20  excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have

21  been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously

22  called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the

23  judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an

24  earlier judgment that has been reversed or vacated; or applying it prospectively is no longer

25  equitable; or (6) any other reason that justifies relief."  Plaintiff's vague gestures to Rule 60 in its

26  motion fails to identify the precise basis upon which it relies to vacate the summary judgment.

27  Once more, the Court generously construes counsel's motion as a request to vacate the judgment

28  "as void" in light of the conflicts asserted.

United States District Court
Northern District of California

6

1    For the reasons addressed below, the motion fails.  No conflict or extraordinary

2    circumstances exist to void the judgment.  The Court would also deny the motion if jurisdiction

3    existed over the summary judgment order.

4        **B.    The Motion is Untimely**

5        Another threshold issue, separate and apart from the jurisdictional issues identified, the

6    Court considers whether plaintiff's motion pursuant to section 455 is timely.  *United States v.*

7    *Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997).  The Court has little difficulty determining that it is

8    not.  This on its own is a sufficient basis to deny plaintiff's motion.

9        Section 455 does not have a statutory deadline.  Nevertheless, as the Ninth Circuit has

10   instructed, "[a]bsent a timeliness requirement, parties would be encouraged to withhold recusal

11   motions, pending a resolution of their dispute on the merits, and then if necessary invoke section

12   455 in order to get a second bite at the apple."  *Rogers*, 119 F.3d at 1380.  Such an open-ended

13   approach without any measure of deterrence "would result in increased instances of wasted

14   judicial time and resources and a heightened risk that litigants would use recusal motions for

15   strategic purposes."  *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991).  Notably,

16   "[w]here unexplained delay in filing a recusal motion suggests that the recusal statute is being

17   misused for strategic purposes, the motion will be denied as untimely."  *United States v. Mikhel*,

18   889 F.3d 1003, 1027 (9th Cir. 2018).  Further, "[w]hile no per se rule exists regarding the time

19   frame in which recusal motions should be filed after a case is assigned to a particular judge, if the

20   timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable

21   promptness after the ground for such a motion is ascertained."  *Preston*, 923 F.2d at 733.  Courts

22   have also long recognized that waiting to raise the issue until after an unfavorable order was on

23   appeal is sufficient grounds to deny a motion.  *See, e.g.*, *Oglala Sioux Tribe of Pine Ridge Indian*

24   *Rsrv. v. Homestake Min. Co*., 722 F.2d 1407, 1414 (8th Cir. 1983) ("[A] timeliness requirement is

25   appropriate, especially in this case where the Oglala Sioux were aware of the alleged grounds for

26   disqualification at the time the case was assigned to Judge Bogue, but the suggestion for

27   disqualification was not raised until this appeal."); *In re United Shoe Mach. Corp*., 276 F.2d 77,

28   79 (1st Cir. 1960) ("One of the reasons for requiring promptness in filing is that a party, knowing

United States District Court
Northern District of California

1    of a ground for requesting disqualification, cannot be permitted to wait and decide whether he

2    likes subsequent treatment that he receives.").

3           Plaintiff's motion is not reasonably prompt as demonstrated by plaintiff's own filings.

4    According to plaintiff's motion, Fitbit disclosed its affiliation with Google on February 3, 2021

5    after a well-known merger, by filing its amended certification on the docket.  Plaintiff is charged

6    with knowledge of this document as a user of ECF.  Notably, plaintiff's allegations concerning the

7    Court's financial interests and affiliations with Google are based on the undersigned's 2020

8    Financial Disclosure.  That disclosure was available through the balance of 2021 and 2022.  While

9    plaintiff highlights the 2020 Financial Disclosure, the investments at issue in the motion have been

10   publicly known since the 2012 Financial Disclosure and have not changed.  Remarkably, plaintiff

11   also extensively relies upon this Court's Questionnaire for Judicial Nominees to criticize

12   affiliations with McKinsey.  That questionnaire was submitted and has been publicly available

13   since 2011.  Both sources of public information predate Fitbit's disclosure.  While an affiliation

14   with Ajax developed after that disclosure was filed, plaintiff's own motion and evidence

15   demonstrate that the undersigned's husband was in the position nine months prior to the motion

16   being brought and that at a minimum plaintiff knew of the position in November (roughly one

17   month prior to substantially commencing appeal).  As set forth below, this is immaterial since

18   there are no financial interests or affiliations related to these proceedings.

19          Despite these public disclosures, plaintiff sat on the motion and strategically litigated this

20   case through summary judgment.  This is a dipositive fact the reply brief ignores in its entirety.[6]

21   After appealing that ruling, filing an opening brief on appeal, and triggering the defendants'

22   obligation to respond to the appeal, plaintiff then filed the present motion before the Court.  There

23   is little doubt that filing the motion nearly seven months after judgment was entered and after an

24   appeal has been substantially commenced is gamesmanship.  Indeed, plaintiff's blanket request to

25   vacate the judgment as to *all defendants*, not just Fitbit, illuminates plaintiff's true intention of

26

27          [6]  Plaintiff raises a futile argument that it did not know the Federal Circuit was going to
     decide *Centripetal Networks* until 2022.  The inference plaintiff seeks to make is that the decision
28   substantially altered the legal landscape.  As explained *infra*, that decision has no bearing on this
     motion.

securing an unwarranted second bite at the apple.

The procedural deficiencies of the motion are replete.  First, it was only filed in the action concerning Fitbit even though separate judgments were issued as to each defendant in each underlying action and relief was sought against all.  Second, the motion also fails to include a notice of motion as required by Civil Local Rule 7-2(b).[7]  This requirement exists to alert non-movants of their rights and obligations with respect to the movant's assertions.  Failing to comply is significant.  Consideration of the defendants' oppositions highlight the concern.

Third, proper motion practice requires identification of supporting evidence, not present here.  Throughout these proceedings, plaintiff has cited extensively to voluminous documents without explanation and proper pincites.  The Court noted as much in the summary judgment order:  "Cellspin's citations to swaths of documents without explanation does not create a genuine dispute of material fact."  (Dkt. No. 331 at 2:12-13.)  Despite the admonishment, plaintiff's counsel has once again submitted approximately 1500 pages in connection with the motion.  Plaintiff makes broad string cite references to its exhibits without any pincites.  This sends the Court and defendants on a fishing expedition to identify the relevance of a document that is not always apparent.  As noted below, some of the documents cited do not exist, others are illegible copies,[8] and many more do not stand for the proposition asserted even under a liberal construction.  Finally, plaintiff has not submitted any declaration to justify its lack of diligence, and instead, once again relies upon misplaced attorney argument divorced from fact and law.

For these reasons, the motion is untimely and can be denied.

**C.    Purported Bases for Recusal**

Substantial justification exists to deny the motion on procedural grounds and the Court

---

[7]  Under controlling rules, motions in this District must contain a notice that includes the date and time of a hearing, as well as "a concise statement of what relief or Court action the movant seeks."  Civ. L.R. 7-2(b)(1)-(3).

[8]  Plaintiff appreciated that substantial portions of its initial filing were illegible and filed a correction without withdrawing the original set of exhibits.  (Dkt. No. 371.)  Rather than create a legible filing in the first instance, plaintiff's correction required the Court to evaluate two sets of exhibits to verify the information being provided and discern why they were being corrected.

does not need to reach the accusations raised.  Nonetheless, to promote transparency and maintain the Court's credibility in light of plaintiff's sweeping assertions, the Court addresses the plaintiff's accusations and evidentiary submission at great lengths.  In short, the accusations have no merit. The order addresses affiliations with McKinsey and Ajax that are unrelated to these proceedings, as well as the Court's independent financial investments.

1. *Affiliations with McKinsey*

The Court begins by addressing whether the undersigned's prior familial affiliations with McKinsey have created financial interests in this case or create a reasonable appearance of impartiality to justify recusal in this case.  They do not.

Plaintiff writes that the undersigned's husband consults in the oil, gas, and energy sectors as a Senior Partner at McKinsey, where he has authored over 20 articles related to the oil and gas industries.  From there, plaintiff asserts that McKinsey has a strategic partnership with Google and has teamed up with Google to assist clients in the oil, gas, and energy sectors as demonstrated by various McKinsey blog postings.  Highlighting one such partnership, which is not directly tied to the undersigned's husband (even on information and belief), plaintiff alleges that McKinsey assisted an energy sector client in avoiding more forest fires and associated power outages in California after the wake of the Dixon Fire in 2021.[9]  According to the plaintiff "being a senior partner at McKinsey & Company . . . doing substantial business with Google looks inappropriate for Google to appear before [the undersigned].  Google and [the undersigned's] husband's firm provide for profit joint solutions to their clients, which creates the objective appearance that [the undersigned] would be biased in favor of Google."  (Dkt. No. 366 at 8.)  For the first time in reply, plaintiff asserts that the undersigned's husband sells Google services and that "his pay and bonus is dependent on his client's satisfaction and success through the use of Google services."  (Dkt. No. 375 at 12.)  Plaintiff's evolving theory for recusal is nothing but unsubstantiated speculation

---

[9]  The Court notes that the motion references Exhibit 5a to support this factual assertion. This appears to be missing from the record.  Ultimately, this is immaterial because plaintiff has not demonstrated that the undersigned's husband had any involvement with this project, nor is the Court aware of any of the work alleged.

1    divorced from any evidence.

2        First, the Court clarifies that the undersigned's husband has not been a Senior Partner at

3    McKinsey since July 31, 2021.  This is eleven months prior to the summary judgment order being

4    issued in this case.  Plaintiff's selective quote of the undersigned's nomination disclosures to

5    justify recusal does not persuade.  The May 2011 disclosure provided in full: "[m]y husband is a

6    senior partner at McKinsey.  Matters relating to McKinsey and, more broadly, *to my husband's*

7    *primary clients* would also likely require recusal."  (Emphasis supplied.)  This disclosure differs

8    significantly from plaintiff's reconstruction in its motion which claims that the undersigned

9    "disclosed that if a 'primary' client of her husband's consulting firm, McKinsey, became a party

10   before her, she would have to recuse herself."  (Dkt. No. 366 at 4.)  In short, McKinsey has never

11   been a party to these proceedings.  Despite the substantial commentary available online that the

12   plaintiff leverages in its motion, the plaintiff did not, *and cannot*, point to a single instance tying

13   the undersigned's husband to a Google project or partnership, including without limitation any

14   related to Fitbit or a party in these proceedings.  None exists.  Nor has plaintiff proffered any

15   admissible evidence that Google was a client, let alone a primary client or partner, of the

16   undersigned's husband and that he profited from such a relationship.  No such evidence exists.

17   Nor does any evidence exist that the parties to this infringement action were clients of my husband

18   in any capacity that would support recusal.[10]

19       In short, plaintiff carries a heavy burden to justify disqualification.  It has failed to

20   demonstrate that the undersigned or her husband have a material financial stake in the outcome of

21   this case due to McKinsey's affiliations with Google and there is no other reason why the

22   undersigned's impartiality might reasonably be questioned.[11]  The motion is denied on this basis.

_____

23

24       [10]  As a matter of practice, the Court consistently recuses on all matters that have
     concerned my husband's clients and this case would be no exception were there any basis to do so.

25

26       [11]  The motion sets forth essentially no foundation for alleged partnerships or projects
     concerning the undersigned's husband.  At most, it appears that Google was one of several cloud-
27   based service providers for McKinsey, providing services as part of the regular course of business.
     Consistent with Advisory Opinion 107, when a "service provider's transactions with the judge's
28   spouse or the spouse's business are in the regular course of business, routine in nature, and are

United States District Court
Northern District of California

2.      *Affiliations with Ajax*

Next, plaintiff alleges that the undersigned's husband has obtained financial benefits from Google since at least March of 2022 through his role as Operations Partner at Ajax.  The motion as presented raises two categories of affiliations to suggest that recusal is proper.  First, the motion alleges that the undersigned's husband has overseen the operations of three start-up companies funded by Google since at least March of 2022.  This specifically includes: (1) Planet Labs, Inc. ("Planet Labs"); (2) Natel Energy ("Natel"); and (3) Ripple Foods.  Second, the motion alleges that the undersigned's husband has handled several strategic partnerships with Google in his role as Operations Partner.  These partnerships include (1) Lime; (2) Voltus; (3) Streetlight Data; (4) Descartes Lab; and (5) Regrow.  Again, this argument is frivolous, lacks any merit, and makes substantial misrepresentations of the record provided.

To begin, it is true that the undersigned's husband has been an Operations Partner at Ajax since April 2022.  However, plaintiff seeks to create an inference that the undersigned's husband has equity in Ajax based solely on the title "Operations Partner."  Plaintiff is wrong.  The undersigned's husband is a contractor for Ajax with no equity in any Ajax portfolio.

In his role as an Operations Partner, he represents Ajax's interests by serving on the board of Natel and as a board advisor to another company not implicated in the motion.[12]  These are his only engagements.  Despite plaintiff's bald accusations, the undersigned's husband has no interest or relationship with Lime, Voltus, Streetlight Data, Descartes Lab, Regrow, and Ripple Foods.  Planet Labs, which is identified in the motion, is one of approximately sixty customers of Natel's software business.  He has no equity interest in Planet Labs, at most his affiliation is attenuated.[13]

_____

unaccompanied by special circumstances suggesting that the selection of the spouse or spouse's business may have been influenced by the judge's position, recusal is ordinarily not required."  This applies with equal force here.  Adopting plaintiff's contrary theory would mean the undersigned is required to recuse anytime a business integrates something as simple as a Google search into its internal platforms.  No authority supports such a grasping theory.

[12]  In furtherance of transparency, the company is Ojjo.  The undersigned knows of no affiliations with Google, Ojjo, and other parties in this case that would justify recusal.

[13]  While the foregoing is sufficient to dispense of the motion with respect to all Ajax

United States District Court
Northern District of California

1    Other evidentiary submissions are similarly deficient.  One, to create the appearance of a

2    non-existent personal interest to Ripple Foods, plaintiff relies upon a July 14, 2016, article from

3    AgFunder Network Partners to note that Ripple Foods raised $30 million from Google and other

4    investors.  Per plaintiff's own evidence, this alleged conduct pre-dates the undersigned's

5    husband's tenure by approximately six years.  No evidence supports any personal affiliation

6    because none exists.  Two, with respect to Streetlight Data, the sole exhibit relied upon is from

7    April 7, 2020, which would predate any personal affiliation with Ajax by two years.  No evidence

8    supports any personal affiliation because none exists.  Three, with respect to Lime's nexus to

9    Ajax, plaintiff relies upon a blog post from Lime that apparently touts the benefits it obtains from

10   Google.  No evidence supports any personal affiliation because none exists.  Four, as to Descartes

11   Lab, Regrow, and Voltus, no evidence supports any personal affiliation because none exists.

12   Once more, plaintiff carries a heavy burden to justify disqualification.  Relying on nothing

13   but speculation, it has failed to demonstrate that the undersigned or her husband have a material

14   financial stake in the outcome of this case due to Ajax's affiliations and there is no other reason

15   why the undersigned's impartiality might reasonably be questioned.  The motion is denied on this

16   basis.

17

18

19
_____

20   affiliations, the Court makes note of additional attenuated arguments for recusal that fail to
     persuade.  First, plaintiff speculates that Natel's foundation was improper and bears on this
21   litigation.  This is false.  Natel was funded in 2009 by a grant from the U.S. Department of Energy
     ("DOE"), which overlaps with the undersigned's husband's tenure as senior advisor to the U.S.
22   Secretary of Energy.  The undersigned's husband had no personal involvement with awarding a
     grant to Natel.  However, the DOE's funding of Natel from a decade prior is so attenuated, recusal
23   is not warranted, and the nexus to these proceedings is speculative at best.  Attenuated speculation
     is insufficient to support recusal.

24
     Second, plaintiff relies on a "Power Technology" article to suggest that Natel was funded
25   by Google in November 2019.  Not only was the article dated over two years before any
     connection to Ajax, plaintiff misrepresents the substance of the article.  As noted, plaintiff
26   represents that Google funded Natel as shown by the article.  However, the article only indicates
     that Google funded eleven start-ups.  Unrelated to this funding, the article then proceeds
27   generically to describe five companies that received funding during the COVID-19 pandemic,
     including Natel.  According to the article, Natel secured funding from two venture funds. It does
28   not establish that Google invested in Natel.  The undersigned and her husband have no knowledge
     of any investment by Google into Natel.

13

3.   *Financial Investments*

Lastly, plaintiff criticizes the Court for three investments that the undersigned has disclosed since her nomination to the bench in 2011.  These include a Vanguard 500 Index Fund, a Vanguard Total International Stock Index Fund, and the Special Situations Fund.  Each is addressed in turn.

a.   <u>Vanguard Funds</u>

Given the substantial overlap concerning the Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund, the Court addresses both together.  According to the plaintiff, Google is a Top 10 holding in the Vanguard Index Fund and public sources confirm that it includes significant shares of Nike, Under Armour, Garmin, and Fossil.  As to the Vanguard Total International Stock Index, plaintiff alleges that it is publicly known that Samsung and Nikon are significant holdings, and this is significant since Under Armour's accused devices are made by Samsung.  With respect to each fund, plaintiff argues that the undersigned somehow actively manages the investments.  Ultimately, this argument is divorced from law and fact, and does not justify recusal.[14]

As set forth above, judges must disqualify themselves from a case where it is known that the judge or his or her spouse has "a financial interest in the subject matter in controversy or in a party to the proceeding[.]" 28 U.S.C. § 455(b)(4).  However, the same statutory scheme expressly provides that "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i).  Similarly, Canon 3C(1)(c) of the Judicial Code of Conduct applicable to judges requires disqualification when the judge knowingly "has a financial interest in the subject matter in controversy or in a party to the proceeding," or when the judge has "any other interest that could be affected substantially by the outcome of the proceeding."  Again, pursuant to Canon

---

[14]  Plaintiff argues in reply that the defendants should have affirmatively denied the undersigned's financial relationships to aid public perception.  Again, the attorney argument, which is devoid of any citation to legal authority, is inconsistent with law placing a heavy burden on plaintiff as the party seeking recusal.  Despite having no obligation to respond, defendants went to great lengths to debunk plaintiff's new conspiracy to evade appeal.  The truth prevalent in those oppositions is one the plaintiff ignores in lodging new criticism at the defendants.

United States District Court
Northern District of California

3C(3)(c)(i), "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." What qualifies as a "mutual or common investment fund" is not defined.  While not binding, the Committee on Codes of Conduct Advisory Opinion No. 106 is instructive.[15]  That opinion lists six factors for consideration: "(1) the number of participants in the fund; (2) the size and diversity of fund investments; (3) the ability of participants to direct their investments; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the pace of turnover in fund investments; and (6) any ownership interest investors have in the individual assets of the fund." Moreover, "most mutual funds that are registered with the Securities and Exchange Commission and sold to the public as mutual funds will likely meet the criteria above."  (*Id.*)

Based upon undisputed facts,[16] the Vanguard investments at issue are prototypical examples falling into the safe harbors for mutual or common investment funds.  Both are registered with the SEC and are sold as mutual funds.  Each has separate portfolio managers.  Both funds are also diversified and extremely large.  For instance, the Vanguard 500 Index Fund investments in over 500 stocks across different sectors of the economy.  The reach of the Vanguard Total International Stock Index Fund is global, with almost 8,000 stocks across myriad markets and sectors.  Investors in both funds do not obtain any ownership interests in the funds' underlying assets, including by directly holding the stocks.  Furthermore, despite plaintiff's bald and self-serving suggestion, the undersigned does not manage, direct, or control the funds' investments.  Both funds clearly fall within the safe harbor exemption.

Plaintiff has not proffered any legal authority to support its illusory assertion that the investments at issue here are somehow not exempt, especially considering that the undersigned has no control over the management of the large and extremely diversified portfolios.  Instead, plaintiff places substantial reliance on the Federal Circuit's recent decision in *Centripetal*

---

[15]  *See* Guide to Judiciary Policy, Vol. 2, Pt. B, Sec. 106, https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02_0.pdf.

[16]  To the extent the parties' papers ask for the Court to take judicial notice of public information concerning the funds at issue, those requests are granted.  The documents are given their appropriate weight.

United States District Court
Northern District of California

*Networks, Inc. v. Cisco Systems, Inc.*, 38 F.4th 1025 (2022), which is far removed from the circumstances here.  In *Centripetal Networks*, a spouse of the judge *directly* held stock in one of the parties to the case and the judge continued to preside over the case once it became known that the spouse had a *direct* interest.  *Id*. at 1028-30.  Disclosing that interest and placing the stocks in a blind trust *after the fact* did not spare the judge from recusal.  *Id*.  The Federal Circuit had no issue finding that the direct stock ownership was a financial interest that required disqualification or divestment, and that the district court ran afoul of is statutory obligations by continuing to hold that known interest during the proceedings.  Here, there is no "financial interest" within the meaning of section 255 because the investments are exempt funds precluding the undersigned from directly holding stocks of any party to these proceedings.[17]  Notably, plaintiff's papers ignore that courts have been in accord in reaching the same finding with respect to Vanguard funds.[18]  There is no reason to reach a contrary result now.

    Echoing prior findings, the undersigned has no material financial stake in the outcome of

---

[17]   Plaintiff argues that the Court must hold stocks in its investments because the Court recused itself without explanation in *Geographic Location Innovations, LLC v. Health Mart Systems, Inc*., No. 21-cv-05155-YGR, Dkt. No. 21 (N.D. Cal. 2021).  According to the plaintiff, the Court must have recused because a defendant disclosed that it was owned by McKesson Corporation and McKesson is listed in the funds.  The prior recusal did not concern any financial interest.

[18]   *See, e.g*., *David v. GMAC Mortg., LLC*, No. C11-2914 PJH, 2011 WL 6078272, at *1 (N.D. Cal. Dec. 6, 2011) (concerning Vanguard 500 Index Fund); *Arunachalam v. Pazuniak*, No. 14-cv-05051-JST, Dkt. Nos. 57 at 6 and 57-2 (N.D. Cal. Jan. 08, 2015) (identifying Vanguard investments in motion papers); *Arunachalam v. Pazuniak*, No. 14-cv-05051-JST, 2015 WL 12839126, at *1-2 (N.D. Cal. Feb. 9, 2015) (finding funds with safe harbor); *Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc*., No. 12-cv-355-RGA, 2015 WL 1283196, at *4 (D. Del. Mar. 18, 2015) (concerning Vanguard Institutional Index); *Bank of Am., N.A. v. Martinson*, No. 10-cv-10-WMC, 2013 WL 12234207, at *1 (W.D. Wis. Jan. 3, 2013) (concerning Vanguard Institutional Index); *Huebner v. Midland Credit Mgmt*., No. 14-6046, 2015 WL 1966280, at *3 (E.D.N.Y. May 1, 2015) (concerning Vanguard Group, Inc. portfolios).

    In order to create an impression that judicial ethics have been substantially over-hauled to cast doubt on this line of authority, plaintiff relies upon the passage of the Courthouse Ethics and Transparency Act, Pub. L. No. 117-125, 136 Stat. 1205 (2022), which generally modified the accessibility and timeliness of financial disclosures and potential conflicts of interest.  The backdrop to this law was the failure of certain judges to disclose direct stock holdings in cases where they presided.  However, the law did not change section 455.  The undersigned holds no such interests that would have required further disclosure in these proceedings and has timely filed financial disclosures consistent with the undersigned's obligations.

1    this case because of the Vanguard investments and there is no other reason why her impartiality

2    might reasonably be questioned.  The motion for recusal is denied on this basis.

3                    *b.*        *Special Situations Fund*

4            Finally, plaintiff notes that the undersigned's 2020 Financial Disclosure identifies the

5    Special Situations Fund as an investment.  In short, plaintiff asserts that the Special Situations

6    Fund is opaque and that "[a] huge portion of this opaque investment could be in Big Tech stocks

7    like the defendants in this case."  (Dkt. No. 366 at 23.)  Because of this investment, plaintiff

8    argues that the Court should be recused from this case and all other "Big Tech" cases.  Again, this

9    argument fails.

10           To begin, the Court sets aside the obvious point that plaintiff does not have standing to

11   challenge the undersigned's ability to preside over other cases.  While plaintiff has no actual

12   evidence and proffers only speculation, the Court notes for transparency purposes that the Special

13   Situations Fund is managed by the McKinsey Investment Office ("MIO") and functions in essence

14   like a mutual fund where the undersigned has no knowledge or control of the investments being

15   made.  The only choice is deciding how much to invest.

16           Pursuant to MIO's public website, it is "a subsidiary of McKinsey & Company and a

17   registered investment adviser regulated by the Securities and Exchange Commission in the US,"

18   and it "invest[s] the retirement assets for the global McKinsey pension plans."[19]  Of note, "MIO's

19   investment operations are intentionally separated from McKinsey's consulting operations.  *MIO*

20   *does not trade individual stocks or bonds of any public or private company anywhere in the world*,

21   except in the specific case of credit-default swaps for counterparty hedging.  Our macro trading

22   strategies involve trading in major asset classes such as sovereign debt, commodities, foreign

23   exchange, equity indices, and credit indices."  (Emphasis supplied.)  Thus, investors such as the

24   undersigned do not directly own stocks, however, like the Vanguard funds discussed above,

25   individual unknown funds within the Special Situations Fund may separately hold securities.

26   Investors do not directly hold public stocks, do not have knowledge of the particular assets that the

27   _____

28        [19]  *See* https://miopartners.com/.

United States District Court
Northern District of California

fund invests in, are denied access to that information when requested, and have no influence on the assets that are pursued.  The undersigned and her husband have no control over the fund, have no reason to question the public representations made by MIO on its website, and have no knowledge of any underlying assets directly being held in our names.  Thus, plaintiff's suggestion that the fund lacks any public transparency and is comprised of the defendants' stock is misplaced.[20]  The examples outlined in Advisory Opinion No. 106 further demonstrate that investments into a mutual fund such as this is appropriate where there is no information available to investors about the assets and there is no direct control in the investments.

Again, the undersigned has no material financial stake in the outcome of this case because of the Special Situations Fund and there is no other reason why her impartiality might reasonably be questioned.  The motion for recusal is denied on this basis.

IV.    **CONCLUSION**

As is demonstrated by this Order, the pending motion lacks any substantive basis tethered to law or fact to support recusal or vacatur.  Thus, one can only surmise that plaintiff and its lawyers brought the motion for tactical advantage.  The Court will not reward such conduct.  The motion is denied.

This Order terminates Docket Number 366.


**IT IS SO ORDERED.**


Dated: February 15, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[20]  Plaintiff suggests that holding this investment is improper because a nominee agreed to divest her interest in the fund in connection with her confirmation to the Office of Management and Budget ("OMB").  The relevance for plaintiff's theory is attenuated.  OMB personnel are not governed by section 455 or the Judicial Code of Conduct, a point plaintiff concedes in reply.  In fact, the evidence relied upon confirms that the nominee was not provided with information concerning assets when requested.

18